**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**FILED IN CLERK'S OFFICE**
U.S.D.C. Atlanta

**JUN 1 9 2002**

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

**KENNY A., et al,**

    Plaintiffs,

vs.

**ROY BARNES, et al.,**

    Defendants.

**CIVIL ACTION FILE NO.**

**1:02-CV-1686**

**Superior Court of Fulton
County
Civil Action File
No. 2002-CV-54182**

## NOTICE OF REMOVAL

COME NOW Defendants and respectfully petition this Court, pursuant to 28 U.S.C. §§ 1441 and 1446 for removal, showing the following grounds:

1.

Petitioners were named as Defendants in a civil action now pending in the Superior Court of Fulton County, Georgia, which was filed as Civil Action No. 2002-CV-54182. Plaintiffs' Complaint purports to make a claim pursuant to 42 U.S.C. § 1983.

Defendant DeKalb County was served on May 13, 2002. Defendant Fulton County was served on May 13, 2002. Defendant Roy Barnes was served on June 18, 2002. Defendant Department of Human Resources of the State of Georgia was served on June 17, 2002. Defendant James Martin was served on June 17, 2002.

Defendants Fulton County Department of Family and Children Services, Beverly Jones, DeKalb County Department of Family and Children Services and Wayne Drummond received notice of the lawsuit via facsimile on June 18, 2002. Currently pending in the Fulton County Superior Court is Plaintiffs' motion for expedited discovery.

Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over claims arising under 42 U.S.C. § 1983. Accordingly, Plaintiffs' Complaint is subject to removal to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. This notice is filed within thirty (30) days of service of summons and complaint upon these Defendants.

2.

A true and correct copy of all pleadings filed to date in the Superior Court of Fulton County with regard to this matter are attached hereto and marked collectively as Exhibit A.

WHEREFORE, it is respectfully requested that the action now pending in the Superior Court of Fulton County in the State of Georgia, Civil Action No. 2002-CV-54182 be removed to the United States District Court for the Northern District of Georgia, Atlanta Division.

Respectfully submitted this 19th day of June, 2002.

ELIZABETH B. TAYLOR
Georgia Bar No. 699920

_____

VIVICA M. BROWN
Georgia Bar No. 513682
Attorneys for Defendant DeKalb County

_____

WILLIE J. LOVETT, JR.
Georgia Bar No.459585

_____

Rolesa B. Dancy
Georgia Bar No.099928

_____

Patricia A. Chandler
Georgia Bar No. 120649
Attorneys for Defendant Fulton County

_____

EDDIE SNELLING, JR.
Georgia Bar No.665725
Attorney for Defendant Roy Barnes, in
his official capacity as Governor of
the State of Georgia; Department of
Human Resources of the State of
Georgia; James Martin in his official
capacity as Commissioner of the
Department of Human Resources of the
State of Georgia; Fulton County
Department of Family and Children
Services; Beverly Jones in her official
capacity as Director of Fulton County
Department of Family and Children
Services; DeKalb County Department of
Family and Children Services; and Wayne
Drummond in his official capacity as
Director of the DeKalb County
Department of Family and Children
Services.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**KENNY A., et al,**

     Plaintiffs,

vs.

**ROY BARNES, et al.,**

     Defendants.

**CIVIL ACTION FILE NO.**

_____

**Superior Court of Fulton
County
Civil Action File
No. 2002-CV-54182**

## CERTIFICATE OF SERVICE

     This is to certify that I have this day served counsel in the foregoing matter with a copy of **NOTICE OF REMOVAL** by depositing a copy of the same in the United States mail in a properly addressed envelope with adequate postage thereon to ensure delivery.

     This ___19th___ day of June, 2002.

VIVICA M. BROWN
ASSISTANT COUNTY ATTORNEY
Georgia Bar No. 513682

**PERSONS SERVED:**

Marcia Robinson Lowry
Ira P. Lustbader
Jeffrey K. Powell
Stacy F. Antonucci
Children's Rights, Inc.
404 Park Avenue South, 11th Floor
New York, NY 10016

Don Keenan
Jane Okransinski
Keenan's Kids Law Center
148 Nassau Street, N.W.
Atlanta, Georgia 30303

# Civil Docket

Fulton County Superior Court
Juanita Hicks, Clerk

Case No. 2002CV54182
Fulton County

June 18th, 2002
2:11pm

KENNY A., BY HIS NEXT FRIEND, LINDA
WINN; KARA B., BY HER NEXT FRIEND,
ROSA DAVIS; MAYA C., BY HER NEXT
FRIEND, LINDA PACE; PHELECIA D., BY
HER NEXT FRIEND, ALESIA ADAMS; SABRINA
E., BY HER NEXT FRIEND, REBECCA
SILVEY; KORRINA E., BY HER NEXT
FRIEND, REBECCA SILVEY; TANYA E., BY
HER NEXT FRIEND, CAROL HUFF; PRISCILLA
G., BY HER NEXT FRIEND, MARILYN

Filed : 06/06/2002
Status: Filed
Type: OTHER CIVIL

Judge
    ISAAC JENRETTE

Court Reporter

| Date | | | Volume | Page |
| --- | --- | --- | --- | --- |

## Plaintiff Information

| PLAINTIFF NAME | ATTORNEY NAME |
| --- | --- |
| A, KENNY | Okrasinski, Jane Ga |

## Events & Orders of the Court

| | |
| --- | --- |
| 06/06/02 | PLAINTIFF'S ORIGINAL PETITION (E1) |
| | CW COMPLAINT CLASS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF |
| 06/06/02 | CASE INITIATION FORM (E2) |
| | CW |
| 06/06/02 | MOTION (E3) |
| | CW PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |
| 06/06/02 | MEMORANDUM (E4) |
| | CW MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS |
| | CERTIFICATE |

## Fee Payment Information

Total Payments: 4
Total Charged : $251.00
Total Paid    : $251.00

| 06/13/02 | Check | Rcpt # 51358 | $50.00 |
| --- | --- | --- | --- |
| 06/12/02 | Check | Rcpt # 51350 | $100.00 |
| 06/12/02 | Check | Rcpt # 51350-VOID | $-100.00 |
| 06/06/02 | Check | Rcpt # 51167 | $201.00 |

## Civil Docket

**Fulton County Superior Court**
Juanita Hicks, Clerk

Case No. 2002CV54182
Fulton County

June 18th, 2002
2:11pm

| Date | | | Volume | Page |
|---|---|---|---|---|

### Fee Information

| Fee Code | Plaintiff | Defendant |
|---|---|---|
| SUP.SS | $50.00 | $0.00 |
| SUP.SR | $1.00 | $0.00 |
| SUP.LL | $3.00 | $0.00 |
| SUP.CR | $1.00 | $0.00 |
| SUP.CF | $55.00 | $0.00 |
| SUP.ADR | $5.00 | $0.00 |
| AP | $88.00 | $0.00 |
| 6AP | $48.00 | $0.00 |
| | | |
| Less Deposits | $251.00 | $0.00 |
| | | |
| Balance | $0.00 | $0.00 |

# General Civil Case Filing Information Form (Non-Domestic)

**Court**    County  FULLTON _____    Date Filed  06/06/02
☒ Superior                                      MM-DD-YYYY
☐ State      Docket #  2002CV54182

FILED IN OFFICE
JUN - 6 2002
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

**Plaintiff(s)**

A.   KENNY _____
Last     First    Middle I. Suffix Prefix    Maiden

B.   KARA _____
Last     First    Middle I. Suffix Prefix    Maiden

C.   MAYA _____
Last     First    Middle I. Suffix Prefix    Maiden

D.   PHELICIA _____
Last     First    Middle I. Suffix Prefix    Maiden

**No. of Plaintiffs** ___9___

**Plaintiff/Petitioner's Attorney**    ☐ Pro Se

Okransinski, Jane _____
Last     First         Middle I.   Suffix

**Bar #** ___551200___

**Defendant(s)**

BARNES, ROY _____
Last     First    Middle I. Suffix Prefix    Maiden

DEPARTMENT OF HUMAN RESOURCES OF THE
STATE OF GEORGIA
Last     First    Middle I. Suffix Prefix    Maiden

MARTIN, JAMES _____
Last     First    Middle I. Suffix Prefix    Maiden

FULTON COUNTY DEPARTMENT OF FAMILY
AND CHILDREN SERVICES
Last     First    Middle I. Suffix Prefix    Maiden

**No. of Defendants** ___9___

SEE ATTACHED ADDENDUM FOR ADDITIONAL
PLAINTIFFS AND DEFENDANTS

## Check Primary Type (Check only ONE)

☐ Contract/Account

☐ Wills/Estate

☐ Real Property

☐ Dispossessory/Distress

☐ Personal Property

☒ Equity

☐ Habeas Corpus

☐ Appeals, Reviews

☐ Post Judgment Garnishment, Attachment, or
Other Relief

☐ Non-Domestic Contempt

☐ Tort (If tort, fill in right column)

☐ Other General Civil Specify _____

## If Tort is Case Type:
### (Check no more than TWO)

☐ Auto Accident

☐ Premises Liability

☐ Medical Malpractice

☐ Other Professional Negligence

☐ Product Liability

☐ Other Specify _____

_____

**Are Punitive Damages Pleaded?** ☐ Yes ☐ No



ORIGINAL

**IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA**



DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY GA

```
------------------------------------------------  x
KENNY A., by his next friend, Linda Winn;          )
KARA B., by her next friend, Rosa Davis;           )
MAYA C., by her next friend, Linda Pace;           )
PHELICIA D., by her next friend, Alesia Adams;     )
SABRINA E., by her next friend, Rebecca Silvey;    )
KORRINA E., by her next friend, Rebecca Silvey;    )
TANYA F., by her next friend, Carol Huff;          )
PRISCILLA G., by her next friend, Marilyn Weaver;  )
BRIANA H., by her next friend, Linda Pace;         )
on their own behalf and on behalf of all others    )
similarly situated,                                )
                        Plaintiffs,                 )
                                                   )
-versus-                                           )
                                                   )
ROY BARNES, in his official capacity as            )
Governor of the State of Georgia;                  )
DEPARTMENT OF HUMAN RESOURCES                      )
OF THE STATE OF GEORGIA;                           )
JAMES MARTIN, in his official capacity as          )
Commissioner of the Department of Human            )
Resources of the State of Georgia;                 )
FULTON COUNTY DEPARTMENT OF                        )
FAMILY AND CHILDREN SERVICES;                      )
BEVERLY JONES, in her official capacity as         )
Director of the Fulton County Department of        )
Family and Children Services;                      )
DEKALB COUNTY DEPARTMENT OF                        )
FAMILY AND CHILDREN SERVICES;                      )
WAYNE DRUMMOND, in his official                    )
capacity as Director of the DeKalb County          )
Department of Family and Children Services;        )
FULTON COUNTY; and                                 )
DEKALB COUNTY,                                     )
                                                   )
                        Defendants.                 )
------------------------------------------------  x
```

**CIVIL ACTION
FILE NO.** 2002CV54182

**COMPLAINT - CLASS ACTION
FOR DECLARATORY AND
INJUNCTIVE RELIEF**

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  NAMED PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.  DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.  CLASS ACTION ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VI.  FACTUAL ALLEGATIONS CONCERNING DEFENDANTS' SYSTEMIC
     LEGAL VIOLATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     A.  DANGEROUS AND INAPPROPRIATE OUT OF HOME PLACEMENTS  . . . 14
         1.  Shelters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
         2.  Other Out-Of-Home Placements . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     B.  INADEQUATE SERVICES TO CHILDREN . . . . . . . . . . . . . . . . . . . . . . . . . 24
         1.  Health Services  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
         2.  Educational Services  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
         3.  Permanency Planning Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
         4.  Independent Living and Transitional Services  . . . . . . . . . . . . . . . . . 28
     C.  INADEQUATE SELECTION, TRAINING AND SUPERVISION OF
         CASEWORKERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
     D.  EXCESSIVE CASEWORKER CASELOADS, TURNOVER
         AND LACK OF CONTINUITY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
     E.  INADEQUATE MANAGEMENT INFORMATION SYSTEM . . . . . . . . . . . . . 31
     F.  DENIAL OF ADEQUATE AND EFFECTIVE REPRESENTATION  . . . . . . . . 32
     G.  BREACH OF GEORGIA'S CONTRACT WITH
         THE FEDERAL GOVERNMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

VII.  FACTUAL ALLEGATIONS REGARDING NAMED PLAINTIFFS  . . . . . . . . . . . 34
     A.  KENNY A.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
     B.  KARA B.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
     C.  MAYA C. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
     D.  PHELICIA D. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
     E.  SABRINA E. AND KORRINA E..  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
     F.  TANYA F. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
     G.  PRISCILLA G. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
     H.  BRIANA H.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

VIII.  CAUSES OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

IX.  PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

# I. PRELIMINARY STATEMENT

### 1.

The named Plaintiff children, a Class of all Fulton and DeKalb County foster children, and a Subclass of African-American foster children, bring this Complaint against the Governor of Georgia and other state officials, agencies and entities responsible for the foster care system in Fulton and DeKalb Counties. Defendants' consistent failure to meet their legal obligations to foster children in state custody routinely dooms these foster children to physical, emotional and psychological harm, lost childhoods, and, too often, ruined lives.

### 2.

Foster care is intended to be a temporary measure to provide care, protection, treatment and services to foster children who are removed from their biological families, primarily due to abuse or neglect, and then placed in state custody. These foster children (also called "deprived" children once a Juvenile Court has ruled that they have been abused or neglected), may be placed in either foster family homes or group residential or institutional foster care placements, while they await either reunification with their biological families, or adoption or other permanent homes.

### 3.

Vulnerable foster children in Fulton and DeKalb Counties are victims of a foster care system that is dangerously overburdened, mismanaged and out of control. Among other things:

      a.    Caseworkers are responsible for a dangerously large number of foster children. Although national standards limit caseloads of foster care caseworkers to 12-15 cases, DeKalb County caseworkers are consistently expected to handle 35-50 cases, and Fulton caseworkers are assigned as many or even more foster children. Because of these excessive caseloads, it is impossible for

caseworkers to adequately monitor the safety and care of the foster children assigned to them, and foster children in these counties regularly go six months or more without a visit from their caseworker.

b.　A recent report prepared by the Georgia Department of Human Resources, summarizing a review of foster children's case files, concluded that caseworkers "do not understand how to incorporate or apply policies and procedures into daily practice" and "do not understand basic social work principles."

c.　Foster children are consistently placed in unsafe or inappropriate foster homes and residential facilities. Recent state data provided to the federal government reflects that the rate of abuse or neglect of foster children in Georgia is nearly twice the federal standard. Upon information and belief, the maltreatment rates in Fulton and DeKalb Counties are at or above the statewide level.

d.　Foster children are frequently left in dangerous emergency shelters for months and sometimes years at a time.  Other foster children are placed in the shelters over and over again.  Supervision in the shelters is grossly inadequate, the physical conditions are often overcrowded, unsanitary and in severe disrepair, and foster children are regularly deprived of basic services such as medical, dental and mental health care. Foster children living in the shelters are exposed to, and consistently involved in, dangerous activities, including violence, gang activity, sexual assault, prostitution, and illicit drug activity. The Governor's appointed child welfare monitor, the Georgia Child Advocate, reported in 2001 that the Fulton shelter is "unfit for the children who reside there," and that the DeKalb shelter "is grossly inadequate for use as an 'emergency shelter.' "

e.　Foster children are regularly shuffled from one inappropriate placement to another, which prevents them from building an attachment to any family and deprives them of any sense of security and trust in the adults in their lives. Data for fiscal year 2000 indicates that approximately 450 foster children in Fulton and DeKalb Counties had been moved among at least four different foster placements while in state custody.

f.　Foster children routinely languish in foster care for years, because Defendants fail to send foster children home promptly when it is safe to do so, and fail to place them for adoption promptly when they cannot safely be returned to their parents. At the end of fiscal year 2000, more than 900 Fulton and DeKalb County foster children – approximately one third of all foster children in custody – had been in state custody for four years or more.

g.     African-American foster children are frequently delayed or denied placement in adoptive homes on the basis of their race or color, despite the availability of willing and suitable adoptive parents, because their prospective parents are not also African-American. As a result, African-American foster children remain in state custody unnecessarily for long periods of time.

h.     As reported by the Child Advocate in 2001, "there is little that is more clear than the fact that mental health resources are critically deficient for Georgia's abused and neglected children." This deficiency consistently causes foster children in serious need of mental health services to further deteriorate psychologically and emotionally while in state custody.

i.     Foster children are denied adequate legal representation – no more than four attorneys are assigned to represent approximately 2000 deprived children in Fulton County Juvenile Court, and only two attorneys are assigned to represent approximately 1000 deprived children in DeKalb County Juvenile Court.

4.

For years, Georgia officials have been fully aware of pervasive, systemic problems in Fulton and DeKalb County foster care, but they have failed to take action to ensure that foster children in state custody are cared for and protected as required by law. Proposed reforms have failed to lead to any substantial improvements in the lives of Georgia's foster children, who continue to be harmed by the very system that is supposed to protect them.

5.

Defendants' continuing failure to provide foster children with safe care, adequate protection, appropriate treatment and necessary services violates the Constitutions of Georgia and the United States, as well as state and federal statutory law and common law. This suit seeks declaratory and injunctive relief to stop Defendants' on-going violations of the law and to ensure that Defendants provide proper care, protection, treatment and services to foster children in their custody as required

-3-

by law.

6.

Following additional factual development, Plaintiffs will seek a particularized order of permanent injunctive relief, identifying, among other things, professionally accepted standards that the Defendants must meet in order to satisfy their statutory and constitutionally mandated duties. If appropriate, the requested order also will propose a sunset provision under which the Court's oversight would terminate when the Defendants have remedied their violations.

## II. JURISDICTION AND VENUE

7.

This Court has jurisdiction of this matter pursuant to Art. VI, Sec. IV, Para. I of the Georgia Constitution and O.C.G.A. § 23-1-1.

8.

Venue in this case is proper under O.C.G.A. § 9-10-30 and § 9-10-31(a).

## III. NAMED PLAINTIFFS[1]

9.

Kenny A. is a minor in state custody as a deprived child and appears by his next friend Linda Winn. Defendants' violations of Kenny's rights and his resulting injuries are set forth below in paragraphs 105-115.

_____

[1]  All plaintiffs are referred to by pseudonyms to preserve the confidentiality of their identity.

-4-

10.

Kara B. is a minor in state custody as a deprived child and appears by her next friend Rosa Davis. Defendants' violations of Kara's rights and her resulting injuries are set forth below in paragraphs 116-124.

11.

Maya C. is a minor in state custody as a deprived child and appears by her next friend Linda Pace. Defendants' violations of Maya's rights and her resulting injuries are set forth below in paragraphs 125-135.

12.

Phelicia D. is a minor in state custody as a deprived child and appears by her next friend Alesia Adams. Defendants' violations of Phelicia's rights and her resulting injuries are set forth below in paragraphs 136-146.

13.

Sabrina E. and Korrina E. are minors in state custody as deprived children and each appears by her next friend Rebecca Silvey. Defendants' violations of Sabrina's and Korrina's rights and their resulting injuries are set forth below in paragraphs 147-151.

14.

Tanya F. is a minor in state custody as a deprived child and appears by her next friend Carol Huff. Defendants' violations of Tanya's rights and her resulting injuries are set forth below in paragraphs 152-163.

15.

Priscilla G. is a minor in state custody as a deprived child and appears by her next friend Marilyn Weaver. Defendants' violations of Priscilla's rights and her resulting injuries are set forth below in paragraphs 164-169.

16.

Briana H. is a minor in state custody as a deprived child and appears by her next friend Linda Pace. Defendants' violations of Briana's rights and her resulting injuries are set forth below in paragraphs 170-181.

## IV. DEFENDANTS

17.

Defendant Roy Barnes is the Governor of the State of Georgia and is sued in his official capacity. His principal place of business is in Fulton County, Georgia. Governor Barnes has the ultimate authority within the executive branch of the government of the State of Georgia to direct and control the operation of the Georgia Department of Human Resources, the Division of Family and Children's Services within DHR, and the Department of Family and Children Services ("DFCS") in Fulton County and DeKalb County.

18.

Defendant Department of Human Resources ("DHR") has its principal place of business in Fulton County, Georgia. DHR has the duty to administer or supervise all categories of public assistance, including foster care and adoption services, within the state; to administer or supervise all county DFCS; to prescribe qualifications of all DHR personnel; to act as the agent of the federal

-6-

government in the administration of the public child welfare program; and to comply with all requirements for receipt of federal grants-in-aid relating to public child welfare programs.

19.

Defendant James Martin is the Commissioner of DHR and is sued in his official capacity. He has his principal place of business in Fulton County, Georgia. Defendant Martin is the chief administrative officer of DHR and supervises, directs, accounts for, organizes, plans, administers and executes the functions vested in DHR. Defendant Martin is the appointing authority for both the Director of the Division of Family and Children Services within DHR, which has day-to-day operating responsibility for public child welfare services throughout the state, and the Directors of county DFCS, including Fulton and DeKalb County DFCS.

20.

Defendant Fulton County Department of Family and Children Services has its principal place of business in Fulton County, Georgia. Fulton County DFCS is part of DHR and is charged with the administration of all forms of public assistance in Fulton County, including the care and treatment of dependent and neglected children.

21.

Defendant Beverly Jones is sued in her official capacity as Director of the Fulton County DFCS. She has her principal place of business in Fulton County, Georgia. Defendant Jones is the executive and administrative officer of Fulton County DFCS and is responsible for its operation and personnel.

22.

Defendant DeKalb County Department of Family and Children Services has its principal place of business in DeKalb County, Georgia. DeKalb County DFCS is part of DHR and is charged with the administration of all forms of public assistance in DeKalb County, including the care and treatment of dependent and neglected children.

23.

Defendant Wayne Drummond is sued in his official capacity as Director of the DeKalb County DFCS. He has his principal place of business in DeKalb County, Georgia. Defendant Drummond is the executive and administrative officer of DeKalb County DFCS and is responsible for its operation and personnel.

24.

Defendant Fulton County is a body corporate, can be sued, and is subject to the jurisdiction of this court. Reasonable compensation for the services and related expenses of counsel appointed by the Juvenile Court of Fulton County to represent a foster child in deprivation or termination-of-parental-rights proceedings are a charge upon the funds of Fulton County. Fulton County also provides funding in an amount set by the County for the operation of the Fulton County emergency shelter which houses foster children.

25.

Defendant DeKalb County is a body corporate, can be sued, and is subject to the jurisdiction of this court. Reasonable compensation for the services and related expenses of counsel appointed by the Juvenile Court of DeKalb County to represent a foster child in deprivation or termination-of-

parental-rights proceedings are a charge upon the funds of DeKalb County. DeKalb County also

provides funding in an amount set by the County for the operation of the DeKalb County emergency

shelter which houses foster children.[2]

## V. CLASS ACTION ALLEGATIONS

26.

This action is properly maintained as a class action pursuant to O.C.G.A. § 9-11-23(a)(1) (the

character of the rights sought to be enforced for the class are common).

27.

The Class consists of all children who have been, are or will be alleged or adjudicated deprived

who (1) are or will be in the custody of any of the DFCS Defendants; and (2) have or will have an

open case in Fulton County DFCS or DeKalb County DFCS.[3] The Subclass consists of all children in

the Class who are African-American and who have had, or are subject to the risk of having, their

adoption delayed or denied on the basis of their race or color.

28.

The Class and Subclass are sufficiently numerous so that it is impracticable to bring all Plaintiffs

before the Court. The Class includes approximately 2000 foster children who currently have an open

---

[2] Hereinafter "DFCS Defendants" includes Defendants Roy Barnes, DHR, James Martin, Fulton County DFCS, Beverly Jones, DeKalb County DFCS, and Wayne Drummond; "Fulton DFCS Defendants" includes Defendants Roy Barnes, DHR, James Martin, Fulton County DFCS and Beverly Jones; and "DeKalb DFCS Defendants" includes Defendants Roy Barnes, DHR, James Martin, DeKalb County DFCS and Wayne Drummond.

[3] Hereinafter, children in "foster care" and "foster children" refer solely to children who meet the definition of the Class.

case in Fulton County DFCS and approximately 1000 foster children who currently have an open case in DeKalb County DFCS. The vast majority of Class members are African-American, and the Subclass includes at least hundreds of Class members who are African-American and who are or will be awaiting adoption.

29.

The named Plaintiffs will fairly ensure the adequate representation of the interests of the members of the Class and Subclass. The interests of the named Plaintiffs are not antagonistic to each other or to those of the Class members, as the named Plaintiffs and the Class members all seek declarative and injunctive relief to stop the same systemic patterns, customs and/or practices and legal violations alleged on their behalf. The interests of Plaintiffs Sabrina E., Korrina E. and Priscilla G. are not antagonistic to each other or to those of Subclass members, as these named Plaintiffs and the Subclass members all seek declarative and injunctive relief to stop the same systemic policies, patterns, customs and/or practices and legal violations alleged on their behalf.

30.

Each named Plaintiff child appears by a next friend, and each next friend is sufficiently familiar with the facts and circumstances surrounding the child's situation to fairly and adequately represent the child's interests in this litigation.

31.

Plaintiffs and Class members are represented by attorneys employed by Children's Rights, Inc., a privately funded, non-profit organization with extensive national experience in complex class action litigation involving child welfare systems. They are also represented by Atlanta attorneys Don Keenan

-10-

and Jane Okrasinski, who have extensive experience litigating the rights of children, including Georgia

foster children. Attorneys Keenan and Okrasinski are associated with the Keenan's Kids Law Center,

a privately funded, non-profit organization created to represent children who suffer due to systemic

deficiencies in Georgia's child welfare system. Plaintiffs' counsel have the resources, expertise, and

experience to prosecute this action.

32.

The character of the Plaintiffs' rights sought to be enforced on behalf of themselves and the

Class and Subclass is common. The questions of law and fact raised by the claims of the named

Plaintiffs are common and typical of those raised by the claims of the Class, and the questions of law

and fact raised by the race-based claims of Plaintiffs Sabrina E., Korrina E. and Priscilla G. are

common and typical of those raised by the members of the Subclass. Questions of law and fact

common to Plaintiffs, the Class and Subclass predominate over any individual issues of law or fact.

33.

All of the named Plaintiffs and Class members are in need of adequate child welfare services,

must rely on DFCS Defendants for those services, and are harmed by these Defendants' systemic

failure to fulfill their legal obligations to provide safe care, adequate treatment, and necessary services.

34.

All of the named Plaintiffs and Class members are entitled to effective representation in their

deprivation and termination-of-parental rights proceedings in Juvenile Court and are harmed by the

failure of Defendants Fulton County and DeKalb County to provide adequate and effective

representation by failing to fund a sufficient number of attorneys to provide such representation.

-11-

35.

Plaintiffs Sabrina E., Korrina E. and Priscilla G. and members of the Subclass are further harmed by DFCS Defendants' practice of delaying and denying African-American foster children's adoption on the basis of their race or color because the suitable families who want to adopt these foster children are not African-American.

36.

The harms suffered by all of the named Plaintiffs are typical of the harms suffered by the Class members, and the harms suffered by Plaintiffs Priscilla G., Sabrina E. and Korrina E. are typical of those suffered by the Subclass members.

37.

Common questions of fact include, but are not limited to:

a.     whether, contrary to law and reasonable professional standards, DFCS Defendants fail to provide Plaintiffs and Class members with safe, stable, and appropriate foster care placements; services that are necessary to prevent them from deteriorating physically, psychologically or emotionally while in government custody; and timely and appropriate services necessary to ensure that they are either safely reunited with their families or promptly placed in permanent homes;

b.     whether DFCS Defendants delay or deny the adoption of Plaintiffs Sabrina E., Korrina E., Priscilla G. and Subclass members on the basis of their race or color; and

-12-

    c.      whether Defendants Fulton County and DeKalb County fail to ensure that

Plaintiffs and Class members receive adequate and effective legal representation

in Juvenile Court.

38.

Common questions of law include, but are not limited to:

    a.      whether the actions and inactions of DFCS Defendants violate the rights of the

Plaintiffs and Class members under the Due Process Clause of the Georgia

State Constitution; the First, Ninth, and Fourteenth Amendments to the United

States Constitution; O.C.G.A. §§ 15-11-13, 15-11-58, 20-2-690.1, 49-5-12;

the Adoption Assistance and Child Welfare Act of 1980, as amended by the

Adoption and Safe Families Act of 1997, 42 U.S.C. §§ 620-628, 670-679a

(collectively the "Adoption and Assistance Act") and regulations promulgated

thereunder; and the Early and Periodic Screening, Diagnosis and Treatment

program of the federal Medicaid Act ("EPSDT");

    b.      whether under O.C.G.A. § 9-2-20(b) and Georgia common law the actions

and inactions of DFCS Defendants violate the rights of and breach the

obligations owed to the Plaintiffs and Class members as third party beneficiaries

to the "State Plan" contracts between Georgia and the federal government

executed pursuant to Titles IV-B, IV-E and XIX of the Social Security Act;

    c.      whether under Georgia common law the manner in which Defendants operate

and provide for the operation of the shelters in Fulton and DeKalb Counties has

-13-

created and continues to create a nuisance;

d.   whether DFCS Defendants' actions and inactions violate the rights of Sabrina

E., Korrina E., Priscilla G. and the Subclass members, under the Multiethnic

Placement Act of 1994, as amended by the Inter-Ethnic Adoption Provisions

of 1996, 42 U.S.C. §§ 671(a)(18), 674, 1996b, and under the Equal

Protection Clause of the Georgia State Constitution; and

e.   whether the actions and inactions of Fulton County and DeKalb County violate

the rights of Plaintiffs and Class members to adequate and effective

representation before the Juvenile Courts under the Due Process Clause of the

Georgia State Constitution and O.C.G.A. § 15-11-98(a).

## VI.  FACTUAL ALLEGATIONS CONCERNING DEFENDANTS' SYSTEMIC LEGAL VIOLATIONS

A.   DANGEROUS AND INAPPROPRIATE OUT OF HOME PLACEMENTS

39.

DFCS Defendants have engaged in a policy, pattern, custom and/or practice of placing foster

children in inappropriate and dangerous placements, including emergency shelters, that fail to provide

them appropriate protection, care, treatment and services.  These Defendants' policies, patterns,

customs and/or practices, alleged in paragraphs 40-69, injure and create a risk of imminent harm to

Plaintiffs and Class members.  DFCS Defendants have been and are fully aware of these policies,

patterns, customs and/or practices, but have failed to act to prevent, correct or alter them, and the harm

and risk of harm to children in the Class is foreseeable.  Through these actions and inactions, DFCS

-14-

Defendants have failed to exercise professional judgment and have acted with deliberate indifference to the welfare, care and protection of these foster children and to these foster children's legal rights.

1.     Shelters

40.

DFCS Defendants routinely place foster children in dangerous and inappropriate "emergency" shelters, which harms them or places them at imminent risk of harm.  In Fulton County, Fulton DFCS operates the Dulaney House, as well Lipscomb Hall and Darnell Hall on the Oak Hill campus (collectively the "Fulton Shelter").  In DeKalb County, DeKalb DFCS operates the Victoria Simmons Emergency Center (the "DeKalb Shelter.")  (The Fulton Shelter and the DeKalb Shelter are collectively referred to as the "Shelters").  The Shelters are funded in whole or in part by Defendants Fulton County and DeKalb County.  As a result of the failure of Defendants Fulton and DeKalb Counties to adequately fund the Shelters and DFCS Defendants' failure to ensure that they are safe and appropriate settings for children, the operations of the Shelters create a continuous condition that hurts, inconveniences or damages the Plaintiffs and Class members who reside there.

41.

DFCS Defendants frequently place foster children for months and sometimes years at a time in the Shelters, which are intended for emergency short-term care only.  These Defendants also regularly place foster children in the Shelters on multiple occasions.

42.

The Shelters are consistently overcrowded.  While the Fulton Shelter was designed and/or approved to house approximately 85 children, it has housed as many as 118 children.  The DeKalb

Shelter, which was designed and/or approved to house approximately 35 children, has housed as many as 55 or more children. Foster children have had to sleep on the floor because beds were not available.

43.

The physical conditions in the shelters are often unsanitary and in serious disrepair, and have recently included vermin, holes in the walls and broken beds.

44.

Contrary to accepted professional standards, Fulton DFCS Defendants routinely place infants and toddlers at the Fulton Shelter, sometimes for extended periods of time, without appropriate staffing and care. This institutional placement of infants and toddlers without a consistent caretaker causes foreseeable and too often permanent damage to foster children's ability to form emotional attachments.

45.

The Shelters are located in dangerous neighborhoods where drug trafficking, gang activity, prostitution and other criminal activities are pervasive. DFCS Defendants' control over access into and out of the shelters is grossly inadequate. Shelter staff consistently leave foster children unsupervised both inside the facilities and on the surrounding grounds. Residents can leave the shelter buildings and grounds at will, and strangers, including drug dealers and pimps, have had virtually open access to the shelter grounds and, in some instances, to the resident foster children themselves.

46.

Within the Shelters, DFCS Defendants regularly mix violent or aggressive children, including children with histories of sexual or assaultive offenses, with non-violent and particularly vulnerable foster

-16-

children, including those who have been sexually abused or have significant developmental disabilities, resulting routinely in victimization of the more vulnerable foster children.

47.

As a result of inadequate supervision and security, foster children frequently buy and use drugs on or near the Shelter grounds, with the knowledge of Shelter staff. Foster children residing in the Shelters also have been and continue to be beaten-up, raped and sexually exploited, and involved in gang activity, both inside the Shelter facilities and in the adjacent neighborhoods.

48.

As a result of inadequate supervision and security, sexual activity regularly occurs among foster children placed at the Shelters, and sexually transmitted infections are a virtual epidemic among Shelter residents.

49.

As a result of the inadequate supervision and security, and the dangerous conditions inside the Shelters, many foster children, including younger foster children, repeatedly run away from the Shelters. The absence of these foster children is not promptly noticed by Shelter staff and may or may not be reported to police, because such decisions are made by the Shelter staff, who frequently fail to exercise reasonable professional judgment.

50.

Many of the foster children in the Shelters have serious mental or behavioral health care needs that DFCS Defendants consistently fail to meet. This failure directly injures these foster children and leads to their emotional and psychological deterioration while in government custody. This failure also

-17-

adds to the combustible environment in the Shelters and too often leads to increased violence in these facilities.

51.

DFCS Defendants routinely fail to enroll Shelter residents who are of compulsory school age in public school and ensure that Shelter residents attend school even when they remain in the Shelters for months at a time. As a result, foster children living in the Shelters regularly fall behind in school and lose opportunities for educational development. What little schoolwork is provided by Shelter staff "in-house" is frequently not grade-appropriate for many of the residents. Shelter residents entitled to special education services are consistently denied access to such services.

52.

DFCS Defendants consistently fail to provide appropriate structured activities for the Shelter residents. As a result, foster children "hang out" most of the day with few or no constructive programs available to them. The foster children's idleness, coupled with the lack of staff supervision and security, foreseeably leads to violence among residents, depression and frustration, drug use and other misconduct, injuring or creating a risk of immediate injury for every child in the Shelters.

53.

DFCS Defendants frequently fail to adequately screen the staff at the Shelters for references, prior experience and criminal backgrounds.

54.

DFCS Defendants too often fail to provide adequate training or supervision of the Shelter staff, who regularly fail to exercise appropriate, professional judgment in their care and protection of the

-18-

foster children placed in the Shelters. Shelter staff frequently push, grab and physically interfere with residents, as well as verbally provoke the youngsters by making disparaging remarks about the foster children themselves or their families.

55.

As a result of the failure to adequately screen and train Shelter staff, instead of directing, controlling or supervising the foster children in their care, Shelter staff consistently call the police when foster children commit minor infractions of Shelter rules, such as cursing and failing to follow staff directions. Residents charged with such offenses are often then removed from the Shelter and detained by the juvenile authorities in locked detention facilities, sometimes for extended periods of time. As a result, foster children routinely cycle in and out of the Shelters and locked detention facilities for many months and sometimes years, without receiving necessary services and treatment, injuring them and causing them to deteriorate emotionally and psychologically while in government custody.

56.

Routinely, foster children with no history of criminal, delinquent or unruly behavior end up engaging in such conduct while residing in one of the Shelters, because of the failure of DFCS Defendants, as the foster children's custodian, to provide them with adequate safety, care and services.

2.    Other Out-Of-Home Placements

57.

DFCS Defendants regularly place foster children in other dangerous and inappropriate placements, in addition to the Shelters, where they are harmed or subject to the risk of imminent harm.

-19-

58.

DFCS Defendants endanger foster children in their custody by failing to ensure that, before any child is placed in a foster home, the foster home and foster parents are adequately investigated and found to meet minimum standards that are consistent with those recommended by national organizations that set such standards.

59.

DFCS Defendants consistently apply different standards to foster homes managed directly by DFCS and foster homes managed by private agencies with whom DFCS contracts. Among other things, DFCS Defendants regularly waive licensing requirements governing the maximum number of foster children allowed in their own directly managed foster homes and facilities, but do not typically permit contract agencies to grant such waivers.

60.

DFCS Defendants routinely fail to adequately monitor foster children, foster homes and foster parents on an on-going basis for their safety and quality of care. Too often, Fulton and DeKalb County foster children and families go months -- often six or more months -- without a caseworker visiting their homes, leaving the foster children totally unprotected from abuse or neglect in the foster placement, and allowing their service needs to go unmet. DFCS Defendants also regularly fail to promptly close foster homes where foster children have been subjected to abuse or neglect while living with foster families.

61.

As a result of DFCS Defendants' failure to appropriately screen, approve, monitor and close foster homes, Fulton and DeKalb County foster children have regularly been, and continue to be at

imminent risk of being placed in dangerous foster homes and facilities where they are abused and neglected. The rate of abuse or neglect of foster children while in state custody is nearly twice the federal government standard, and on information and belief, the rate of maltreatment of foster children in Fulton and DeKalb Counties is at least as high as the statewide figure.

62.

DFCS Defendants have failed to develop the number and types of placements necessary to allow them to place each foster child in a safe environment that is capable of meeting the child's individual needs. This drastic shortage of appropriate foster placements is particularly egregious for adolescents; children with significant medical, mental health or behavioral needs; teenage mothers and their children; and sibling groups.

63.

DFCS Defendants routinely leave foster children who need a therapeutic placement in Shelters, locked detention facilities or other placements that are unable to provide the foster children with necessary therapy and services. These foster children who are denied a needed therapeutic placement regularly suffer deterioration of their mental and emotional health and consequently in their behavior. This deterioration too often leads to the disruption of placements and to foster children being shuffled from one inappropriate placement to another, and frequently the placement of foster children in restrictive settings, such as psychiatric institutions and detention facilities, that unnecessarily deprive them of their liberty.

-21-

64.

DFCS Defendants frequently separate teen mothers in foster care from their children, without exercising reasonable professional judgment concerning the best interests of the mother or child, and without taking reasonable steps when appropriate to allow the mother to live with and care for the child in an appropriately supportive placement.   These Defendants routinely fail to provide the mother and child frequent and meaningful visitation.  This separation deprives the teen mothers of their legal right to make child-rearing decisions, deprives the teen mothers and their children of the opportunity to develop and nurture an emotional attachment, and causes them both severe psychological and emotional injury.

65.

DFCS Defendants too often separate siblings who are in foster care.  DFCS Defendants regularly fail to provide frequent and meaningful visitation between the separated siblings.  The separation of the siblings and denial of visitation between them deprive foster children of their right to associate with their family members and causes them serious psychological and emotional harm.

66.

DFCS Defendants routinely fail to ensure that caseworkers and other DFCS staff have adequate information about foster children's individual needs and about the characteristics of foster placements necessary to ensure that placements are appropriate for the individual child.   As a result of this failure and the systemic shortage of appropriate placements for foster children, DFCS Defendants employ a slot-driven placement system, in which foster children are regularly assigned foster placements based on the availability of a bed or slot, and not based on the capacity of the placement to provide for the foster child's needs.

-22-

67.

DFCS Defendants consistently mix violent or aggressive children, including children with histories of sexual or assaultive offenses, in the same foster homes with non-violent and particularly vulnerable foster children, including those who have been sexually abused or have significant developmental disabilities, frequently resulting in or creating an imminent risk of victimization, harm or even death of the more vulnerable foster children.

68.

DFCS Defendants routinely fail to ensure that foster care providers, including foster parents, are provided relevant information concerning a foster child in their care, such as health and education records, at the time of placement. As a result, foster parents are frequently unaware of and unequipped to meet the child's serious needs. In addition, DFCS caseworkers are frequently inaccessible to foster parents, and regularly fail to promptly respond to requests by foster parents for services necessary to allow them to adequately care for Class members. DFCS Defendants consistently fail to ensure that foster parents are provided with supportive services that would help prevent placements from disrupting and prevent foster children from being unnecessarily transferred from one placement to another.

69.

As a direct result of DFCS Defendants' failure to provide relevant information and supportive services to foster parents, and their failure to place foster children in placements that can meet their needs, placements disrupt and foster children are frequently moved from one inappropriate placement to another. DFCS Defendants regularly move foster children to new placements abruptly and without needed supportive transition services, exacerbating the injury caused by the move itself. These

-23-

disruptions and multiple moves often deprive foster children of the emotional security and stability they need, which often impairs their ability to form attachments, increases their behavioral problems and causes them significant psychological and emotional pain and injury.

B.      INADEQUATE SERVICES TO CHILDREN

70.

DFCS Defendants have engaged in a policy, pattern, custom and/or practice of denying foster children needed health, education and independent living services, as well as services necessary to ensure placement in a permanent home, which deprives these foster children of appropriate protection, care and treatment. These Defendants' policies, patterns, customs and/or practices, alleged in paragraphs 71-85, injure and create a risk of imminent harm to Plaintiffs and Class members. DFCS Defendants have been and are fully aware of these policies, patterns, customs and/or practices, have failed to act to prevent, correct, or alter them, and the harm or risk of harm to Plaintiffs and members of the Class is foreseeable. Through these actions and inactions, DFCS Defendants have failed to exercise professional judgment in providing services needed by the foster children in their custody and have acted with deliberate indifference to the foster children's welfare, care, and protection and to the foster children's legal rights.

1.      Health Services

71.

DFCS Defendants routinely fail to provide necessary and adequate health services to children in foster care, including but not limited to appropriate and timely professional assessment of and needed treatment for medical, mental health, behavioral health, dental, vision and hearing conditions.

-24-

72.

The denial of timely and appropriate mental and behavioral health services by DFCS

Defendants too often results in disruptions of foster placements when a foster child's untreated

condition causes the child's behavior to deteriorate, and also results in the placement of some foster

children in restrictive facilities that unnecessarily deprive them of their liberty.

73.

DFCS Defendants' denial of health services to foster children has caused and creates the

imminent risk of causing Plaintiffs and Class members pain and injury, and deterioration in their physical,

emotional or psychological well-being while in state custody.

2.      Educational Services

74.

When children enter foster care or a new foster placement that requires a change in school,

DFCS Defendants regularly delay enrolling or sending foster children of compulsory school age to

school. As a result, many foster children, especially foster children placed in the Shelters, have gone

extended periods of time without being enrolled in or attending school.

75.

DFCS Defendants routinely fail to provide foster children with necessary education-related

casework services, including monitoring a child's educational progress, obtaining needed educational

assessments, and taking necessary steps within their authority to ensure that each foster child is in an

appropriate educational program. DFCS Defendants regularly fail to ensure that foster children in need

of special education services get access to and receive such services.

-25-

76.

DFCS Defendants' failure to provide education-related services has caused or creates the imminent risk of causing Plaintiffs and Class members of compulsory school age to be absent from school and to be deprived of educational opportunities and development.

3.      Permanency Planning Services

77.

DFCS Defendants routinely fail to meet statutory timetables and mandates for providing foster children in their custody with services necessary to ensure their prompt placement in a permanent home, referred to as "permanency planning" services, which include the continuing process of determining whether a child can be safely returned home, identifying and providing appropriate services to facilitate the child's return home when safe and appropriate, and, if reunification is inappropriate, taking the steps needed to place the child with an alternative permanent family, usually through adoption.

78.

DFCS Defendants consistently fail to involve foster children and their families adequately in the development and revision of the "case plan" for each foster child, which plan is required to document permanency planning activities and goals.

79.

DFCS Defendants frequently fail to provide foster children and their biological parents with the services they need to make prompt, safe reunification possible, and to arrange and facilitate regular, meaningful visitation between foster children and their parents, when reunification remains the goal.

-26-

80.

DFCS Defendants consistently fail to exercise reasonable professional judgment to determine when a foster child's permanency goal needs to be changed, and instead retain reunification as the child's plan beyond statutorily mandated time periods. DFCS Defendants routinely fail to file petitions to terminate parental rights within statutorily mandated time limits. DFCS Defendants regularly fail to provide necessary documentation setting forth the compelling reasons why an otherwise statutorily mandated petition to terminate parental rights should not be filed. These failures cause many children to remain in foster care for years without being legally free to be adopted, depriving these foster children of the opportunity to be placed with a permanent adoptive family.

81.

For those foster children who cannot be returned safely to their parents, DFCS Defendants too often fail to take and document reasonable and appropriate steps to identify, recruit, process, approve and place foster children with adoptive families. As a result, far too many children remain in foster care for years and often for the remainder of their childhoods.

82.

DFCS Defendants regularly fail to conduct a timely search for relatives and to recruit them as long term placements when children first enter foster care. Instead DFCS Defendants frequently rip foster children away from stable, loving foster families who are willing to adopt them and with whom they have lived for extended periods of time, often years, in order to place them with relatives with whom the child has no significant relationship. This practice unnecessarily and traumatically severs the strong emotional bonds and attachments foster children form with their caretakers.

83.

DFCS Defendants have a policy, pattern, custom and/or practice of delaying or denying the adoption of African-American foster children – Subclass members – by willing and suitable, non-African-American, prospective adoptive parents, even if the prospective parents are already caring for the child, because the race of the foster child *is not the same as the race of the prospective adoptive* parents. As a result, African-American foster children are delayed and/or denied adoptive placements with non-African-American families that are or would be provided to similarly situated non-African-American foster children. This practice limits and often denies African-American foster children the opportunity to be adopted into permanent homes.

84.

The failure of DFCS Defendants to fulfill their permanency planning obligations, including their obligation not to delay or deny an adoption on the basis of a child's race or color, causes children to remain in foster care for unnecessarily long periods of time in contravention of the purpose of temporary state custody, and has caused, or creates a risk of causing, Plaintiffs and Class members unnecessary emotional, psychological and psychiatric harm and deprivation of their liberty.

4.      Independent Living and Transitional Services

85.

DFCS Defendants consistently fail to provide foster children age 16 and older who cannot return home or be adopted, with legally mandated independent living and transitional services to enable them to live on their own when they are discharged from state custody at age eighteen. As a result, foster children are routinely discharged from state custody, or are at risk of being discharged from state

-28-

custody, without the training and life skills needed to live on their own, which harms or creates an imminent risk of harm to these foster children.

C.    INADEQUATE SELECTION, TRAINING AND SUPERVISION OF CASEWORKERS

86.

DFCS Defendants have engaged in a policy, pattern, custom and/or practice of failing to train caseworkers concerning the adequate care and treatment of foster children, of failing to provide appropriate supervision of caseworkers, and of failing to hold DFCS staff accountable for their failure to exercise reasonable professional judgment in making decisions concerning the care and treatment of foster children. These Defendants' policies, patterns, customs and/or practices, alleged in paragraphs 87-89, injure and create a risk of imminent harm to Plaintiffs and Class members. DFCS Defendants have been and are fully aware of these policies, patterns, customs and/or practices, have failed to act to prevent or correct or alter them, and the harm and risk of harm to Plaintiffs and children in the Class is foreseeable. Through these actions and inactions, DFCS Defendants have failed to exercise professional judgment in providing the training, supervision and management needed to ensure foster children's safety and well-being and have acted with deliberate indifference to the welfare, care and safety of these foster children and to these foster children's legal rights.

87.

DFCS caseworkers and supervisors in Fulton and DeKalb Counties too often do not have the educational background, social work experience or other skills needed to provide appropriate care and treatment to foster children, many of whom have significant emotional, behavioral, medical, and educational needs.

-29-

88.

DFCS Defendants consistently assign caseworkers to foster children's cases before they

receive adequate training.  Once assigned to cases, caseworkers do not receive the additional training,

supervision and support necessary for them to adequately monitor foster placements, ensure that foster

children and their foster and biological families receive needed services, and engage in case planning

and case management consistent with the law and reasonable professional standards.

89.

DFCS Defendants also consistently fail to ensure adequate supervision of foster care casework;

fail to appropriately discipline incompetent caseworkers; and fail to hold caseworkers accountable for

casework practice that is inconsistent with the law and reasonable professional judgment.

D.    EXCESSIVE CASEWORKER CASELOADS , TURNOVER AND LACK OF
CONTINUITY

90.

DFCS Defendants routinely fail to employ a sufficient number of caseworkers to handle foster

children's cases.  In DeKalb County, DFCS caseworkers frequently have caseloads of 35-50 cases

each, and in Fulton County, caseworkers are commonly assigned even higher caseloads, more than two

or three times higher than the range of 12-15 cases recommended under accepted national standards.

91.

As a result of these excessive caseloads, caseworkers regularly fail to see some foster children

for months at a time and fail to arrange for the services needed by these foster children and their

biological and foster families.

92.

Foster children are consistently shuffled from one caseworker to another, in part because DFCS Defendants have not acted to correct circumstances when there is excessive caseworker turnover, and because they have implemented and maintained a system that mandates the transfer of foster children's cases to different caseworkers at several points in their cases.

93.

DFCS Defendants routinely allow foster children's cases to remain unassigned for significant periods of time, and fail to ensure that there is an appropriate transition when cases are transferred and that receiving caseworkers have complete information.

94.

As a result of DFCS Defendants' practice of failing to act to remedy circumstances in which there are excessive caseloads and turnover, and their failure to ensure continuity of planning and casework activities, caseworkers consistently fail to adequately monitor foster children's safety and well-being and to meet their known needs.

E.     INADEQUATE MANAGEMENT INFORMATION SYSTEM

95.

DFCS Defendants have engaged in a policy, pattern, custom and/or practice of failing to maintain information systems that contain and provide the information necessary for them to reach informed decisions concerning foster children's best interests and to plan for foster children's needs consistent with reasonable professional judgment.  As a result, these Defendants deny adequate protection, care, treatment, and services to Plaintiffs and members of the Class.

-31-

96.

Information systems maintained by DFCS Defendants concerning foster children frequently fail to contain accurate or timely information and fail to provide adequate security to protect the integrity of the data contained therein. These information systems too often fail to adequately and reliably track individual foster children; identify a child's actual physical placement; permit DFCS Defendants to reliably match foster children with appropriate, available placements and services; and provide sufficient information necessary to plan for foster children's needs. As a result, foster children are harmed and are continually at risk of suffering harm while in foster care because government employees responsible for their care cannot determine where they are or what services they require.

97.

Information systems maintained by DFCS Defendants concerning foster children are insufficient to properly assess whether these Defendants are fulfilling their legal obligations to Plaintiffs and the Class members. Among other things, these Defendants cannot accurately ascertain caseworker caseloads, caseworker turnover, numbers of placements for individual foster children, or numbers of maltreatment reports for particular foster homes or facilities.

F.      DENIAL OF ADEQUATE AND EFFECTIVE REPRESENTATION

98.

Fulton and DeKalb County Juvenile Courts appoint child advocate attorneys to represent the vast majority of foster children who are the subject of petitions alleging they have been abused or neglected (called "deprivation petitions"). This attorney/client relationship continues after the child is determined to be abused or neglected ("deprived") until the child is placed out of foster care and out of

state custody, or until a petition for termination of parental rights is filed which frees the child to be

adopted.   When a petition to terminate the parental rights of a child is filed, a child advocate attorney is

appointed pursuant to O.C.G.A. § Section 15-11-98 (a).

99.

In Fulton County, there are no more than four child advocate attorneys who are assigned to

represent approximately 2,000 foster children, including foster children who are the subject of a petition

to terminate parental rights.  In DeKalb County, there are two child advocate attorneys appointed to

represent approximately 1,000 such children.

100.

On information and belief, the number of child advocate attorneys, and consequently their

workloads, are determined by the budgets established by Defendants Fulton County and DeKalb

County, which provide the funds for the child advocate attorneys.  The funding provided by Defendants

Fulton and DeKalb County is wholly inadequate to financially provide for the number of attorneys

actually needed to effectively represent Plaintiffs and members of the Class.

101.

As a result of the workloads of the child advocate attorneys assigned to represent Plaintiffs and

members of the Class, these lawyers are routinely unable to consult with their clients prior to court

appearances and are unable to provide effective and adequate counsel or zealous representation.

102.

As a direct result of the inadequate funds Defendants Fulton County and DeKalb County make

available to cover the cost of providing attorneys to foster children in Juvenile Court, Plaintiffs and

-33-

members of the Class are denied adequate and effective legal representation and a meaningful

opportunity to be heard in the Juvenile Court.

G.    BREACH OF GEORGIA'S CONTRACT WITH THE FEDERAL GOVERNMENT

103.

The federal government has approved the State Plans submitted by the State of Georgia to

receive federal financial assistance under Titles IV-B, IV-E and XIX of the Social Security Act to help

fund the State's child welfare, foster care and adoption, and Medicaid programs respectively.  These

State Plans are contracts into which the State of Georgia enters for the express benefit of Plaintiffs and

Class members, who are third party beneficiaries of these contracts. DFCS Defendants are directly

responsible for fulfilling the obligations undertaken by the State of Georgia when it entered into these

State Plan contracts, including but not limited to the obligation to administer the programs in accordance

with specific relevant state statutes, policies and all applicable federal statutes, regulations and other

official issuances of the United States Department of Health and Human Services.  Defendants have

breached their obligations under these State Plan contracts.

## VII.  FACTUAL ALLEGATIONS REGARDING NAMED PLAINTIFFS

104.

As a result of the actions and omissions alleged in paragraphs 105-181, Defendants have failed

to exercise professional judgment in providing services and placements needed by the Named Plaintiff

children in foster care and have acted with deliberate indifference to these foster children's welfare,

care, and protection and to these foster children's legal rights.  Defendants' actions and omissions have

injured and continue to injure and create a risk of imminent harm to these Named Plaintiff children.

-34-

A.    KENNY A.

105.

Kenny A. is a two-year-old boy who is in foster care, has been adjudicated deprived, and has an open case in Fulton County DFCS. Kenny and his older sister, Mary, came into foster care when Kenny was nine months old. They were removed from their mother's custody because of neglect. Kenny currently lives in a family foster home.

106.

Fulton DFCS Defendants have failed to develop and implement a viable case plan that will allow Kenny A. to leave foster care and secure a safe and appropriate permanent home in accordance with reasonable professional standards and the law. Fulton DFCS Defendants have denied Kenny a permanent family home by failing to provide him with adequate permanency planning services in a manner consistent with the exercise of reasonable professional judgement and law. In June 2001, Kenny's former foster family, the W.'s, informed Fulton County DFCS Defendants they were moving out of state and asked Fulton DFCS Defendants to identify a new placement for Kenny. Mrs. W. even offered to stay in Georgia after her family moved in order to care for Kenny until a new placement was located and until Kenny had undergone an appropriate transition to the new home.

107.

For months, Fulton DFCS Defendants failed to take the steps needed to recruit and identify an appropriate adoptive or foster family home for Kenny, although Mrs. W. repeatedly informed Defendant Beverly Jones and other employees or agents of Fulton DFCS Defendants that she would be leaving Georgia.

-35-

108.

At Mrs. W.'s request, an agency that contracts with Fulton DFCS Defendants identified a suitable couple that was willing and eager to adopt Kenny and his sister. Fulton DFCS Defendants initially agreed to this adoptive placement for both children.

109.

Subsequently, in December 2001, Fulton DFCS Defendants reversed their position and informed Kenny's prospective adoptive parents that they would not be permitted to adopt Kenny and Mary, because a distant relative in another state, who had never met Kenny, had expressed an interest in adopting him. In making this decision, Fulton DFCS Defendants failed to exercise professional judgment in assessing how realistic the relative placement was and how Kenny would be affected by the simultaneous loss of his relationship with the W.'s and his loss of an opportunity for an adoptive home. The decision further harmed Kenny by depriving him of an opportunity to be adopted with his sister into a loving home at a young age.

110.

In February 2002, approximately eight months after the W.'s had initially informed Fulton County DFCS that Kenny needed to be placed in a new home, Fulton DFCS Defendants finally placed him in the home of an unrelated, elderly, single foster mother. Fulton DFCS Defendants failed to provide Kenny with adequate services to facilitate his transition to this new home, notwithstanding that a significant transitional period was necessary because of his strong attachment to the W.'s.

111.

Kenny's attachment to the W.'s, and the trauma caused by his removal from their home, were intensified by Fulton DFCS Defendants' delay in identifying a new placement for him.

112.

Recently, Fulton DFCS Defendants moved Kenny to a third foster family home, where his sister Mary is placed, who herself has been shuffled through approximately seven foster placements. Fulton DFCS Defendants once again failed to provide Kenny with necessary services to facilitate his transition to this new home.

113.

Kenny and Mary have been separated from each other for most of the time that they have been in foster care. While they were separated, Fulton DFCS Defendants failed to arrange for them to have regular and consistent visitation with each other.

114.

Upon information and belief, Fulton DFCS Defendants currently plan again to move Kenny to place him with a distant relative, thereby once again disrupting any bond or attachment he has formed with his caregiver. As a result of his many moves and Fulton DFCS Defendants' failure to provide him with permanency planning services, he is at risk of having significant difficulties forming attachments in the future.

115.

Fulton DFCS Defendants failed to provide the W.'s with any medical records concerning Kenny when he was initially placed with them. In addition, from the date of his first placement with the

-37-

W.'s in November 2000, until the date he was removed from their care in February 2002, Kenny's child advocate attorney had no contact with Kenny or the W.'s except one telephone call. Kenny has been and continues to be denied adequate and effective legal representation in the Fulton County Juvenile Court.

B.    KARA B.

116.

Kara B. is a 14-year-old girl who is in foster care, has been adjudicated deprived, is legally free for adoption, and has an open case in DeKalb County DFCS. She initially came into care when she was approximately five years old because her mother left her alone in a hotel room. She is currently living in a residential treatment facility.

117.

Kara suffers from Conduct Disorder, Post-Traumatic Stress Disorder, and Depression. For years, DeKalb DFCS Defendants failed to provide Kara with necessary treatment to address her severe emotional and behavioral problems, many of which developed or worsened while she has been in foster care.

118.

DeKalb DFCS Defendants have shuffled Kara through approximately 10-15 placements since she entered foster care, most of which have disrupted because the foster parents were not trained or equipped to address Kara's serious emotional, psychiatric, and psychological needs.

119.

While Kara was placed in foster family homes, her caseworkers failed to visit her regularly. As

-38-

a result, DeKalb DFCS Defendants failed to remove her promptly from foster homes where she was maltreated, including several homes in which her foster parents discriminated between her and their biological children, such as by serving Kara different food on different dishes than the other children received.

120.

When she was approximately eleven years old, Kara spent almost a year on the run from a foster placement that was unsafe and unable to meet Kara's need for treatment and supervision. During this period, Kara did not attend school and was a victim of child prostitution.

121.

Between her disrupted foster family home placements, DeKalb DFCS Defendants have placed Kara many times in the DeKalb Shelter, although she repeatedly has run from this facility because of inadequate security and staff supervision.

122.

Kara is currently placed in a residential treatment facility for severely disturbed children. While placed at this facility, Kara was sexually abused by a staff member. DeKalb DFCS Defendants placed Kara in this facility only after she had been in foster care for several years, despite her known need for this level of care. The delay was due to DeKalb DFCS Defendants' failure to complete the paperwork needed to establish Kara's eligibility for residential therapeutic services.

123.

Kara will probably be released from her current residential treatment facility shortly and is at imminent risk of being placed in yet another inappropriate setting as a result of the shortage of less

restrictive therapeutic placements and DeKalb DFCS Defendants' demonstrated failure to secure a

placement that can meet her needs. Kara is also at risk of being returned to the DeKalb Shelter, from

which she is likely to run again, because at the shelter her safety will be in jeopardy and she will not

have access to necessary mental health services or the structured and supervised environment she

needs.

124.

Kara recognizes her need for a structured, therapeutic setting, which she has communicated to

DeKalb DFCS Defendants. Kara has deteriorated psychologically and emotionally while in foster

care, and is at imminent risk of further deteriorating upon her release from her current placement if she

is not placed in an appropriate, therapeutic setting.

C.    MAYA C.

125.

Maya C. is a sixteen-year-old girl who is in foster care, has been adjudicated deprived, and has

an open case in DeKalb County DFCS. She came into foster because of physical abuse. Maya has

been in foster care for approximately nine months, and her current foster placement is the DeKalb

Shelter, where she has stayed for most of her time in foster care.

126.

Maya's "room" at the shelter consists of a dimly-lit cubicle, containing a bed, a small cabinet

and several shelves. Maya's cubicle provides inadequate light, space and privacy for her to study or

read. These poor living conditions have impeded and continue to impede her emotional well-being and

development. For many months, Maya had no place to secure her property and as a result many of her

-40-

possessions have been stolen, including a number of clothing items that were supposedly in the care of shelter staff.

127.

Maya is regularly exposed to dangerous, unsanitary and unhealthy conditions in the shelter facilities and on the shelter grounds, and often sees roaches in the shelter.

128.

Maya has been routinely placed at risk of harm by the failure of the shelter staff to appropriately supervise shelter residents and by the staff's abusive tactics. Maya has been placed at risk of harm due to the numerous fights among other residents that have occurred in her presence and that have not been appropriately handled by staff, including one altercation where a resident hurled a hot iron at another, barely missing Maya's head. On another occasion, a staff member unnecessarily used physical force to compel Maya to get out of her bed.

129.

As a result of the inadequate supervision and security measures in place at the shelter, Maya has left the facility at will without the permission or knowledge of shelter staff, subjecting her to the dangerous conditions and criminal activity prevalent in the surrounding neighborhood.

130.

Since entering care, Maya has been denied appropriate educational services. Despite her repeated requests, DeKalb DFCS Defendants failed to enroll Maya in school for several weeks after she initially came into care. Although Maya has been an honor student, DeKalb DFCS Defendants have enrolled her in an "alternative school" that fails to provide her with an adequately challenging

-41-

curriculum.

### 131.

Instead of taking the necessary steps to identify an appropriate foster family placement for Maya, her caseworker has recommended that Maya be placed in a residential drug treatment program, despite the fact that she has passed repeated drug screens. Maya's caseworker has failed to visit her on a regular basis and has failed to ensure her safety or discern her needs.

### 132.

DeKalb DFCS Defendants have failed to develop and implement a viable case plan that will allow Maya to leave foster care and secure a safe and appropriate permanent home in accordance with reasonable professional standards and law. Although the plan is to reunify Maya with her mother, DeKalb DFCS Defendants have failed to arrange regular visits between Maya and her mother.

### 133.

Maya does not believe she has ever met her child advocate attorney, does not recall any person claiming to represent her at her deprivation hearings, and has been denied adequate and effective assistance of counsel in her foster care proceedings in the Juvenile Court.

### 134.

DeKalb DFCS Defendants have failed and continue to fail to provide Maya with independent living or transitional services that will help prepare her to live on her own when she is discharged from state custody. Recently, as a result of shelter staff's failure to exercise reasonable professional judgment, Maya was placed in a locked juvenile detention facility for an extended period of time because she allegedly committed minor infractions of shelter rules.

-42-

135.

While at the shelter, Maya has been offered very few structured or enriching activities so that she has little to do much of the time. As a result of her placement in the DeKalb Shelter, Maya has deteriorated emotionally and psychologically. She has become very depressed and is in constant fear for her own safety which has led to substantial anxiety.

D.    PHELICIA D.

136.

Phelicia D. is a twelve-year-old girl who is in foster care, has been adjudicated deprived, and has an open case in Fulton County DFCS. Phelicia came into foster care in 2000 at age 10 because she had been abused and neglected and was a victim of child prostitution. She currently resides in a residential treatment facility.

137.

Phelicia has been diagnosed as suffering from Depression with Psychotic Features, and Post Traumatic Stress Disorder resulting from the sexual abuse she suffered as a young child and her subsequent sexual exploitation. Phelicia has a history of violent behavior and has stated she wants to kill herself.

138.

Because Fulton DFCS Defendants had no appropriate placement available for Phelicia when she initially came into care, she was left in a locked, juvenile detention facility for an unreasonable period of time.

139.

Fulton DFCS Defendants failed to provide Phelicia with a prompt professional psychiatric and psychological assessment when she came into foster care. While in care, she has reported that little green men were hiding under her bed and has had delusions that she was pregnant and gave birth to a child.

140.

Fulton DFCS Defendants have failed and continue to fail to provide Phelicia with adequate mental health services to meet her severe mental health needs. Fulton DFCS Defendants have failed to consistently provide her with her prescribed medications, by failing to re-fill her prescriptions or failing to transfer her medicine when she has been moved between foster placements.

141.

Fulton DFCS Defendants have shuffled Phelicia through numerous inappropriate placements, including repeated lengthy stays at the Fulton Shelter, several group homes, and a residential treatment facility that treats and houses children who are sexually aggressive in close proximity to those who have been victimized by sexual abuse and exploitation – a dangerous setting for a girl with Phelicia's history.

142.

Phelicia is currently placed in an inappropriate residential facility housing much older children, despite the fact that Fulton DFCS Defendants have been made aware by an advocate for Phelicia that a facility is available for her that treats children with her serious mental health needs who have been subject to sexual abuse.

-44-

143.

Fulton DFCS Defendants have failed to ensure that Phelicia is consistently enrolled in and attending school. She has experienced numerous disruptions in her schooling since she came into foster care, because Fulton DFCS Defendants have failed to promptly enroll her in public school when she moved from one placement to another, and failed to ensure that she was attending school for much of the time that she was living in the Fulton Shelter. Although Fulton DFCS Defendants have knowledge that Phelicia functions significantly below grade level, they have failed to obtain a complete assessment of her educational needs or to ensure that she is enrolled in an appropriate educational program.

144.

Fulton DFCS Defendants have failed and continue to fail to provide any regular visits between Phelicia and her mother, and to provide family support services to allow Phelicia to maintain critical family ties with her mother.

145.

Fulton DFCS Defendants have failed to develop and implement a viable case plan that will allow Phelicia to leave foster care and secure a safe and appropriate permanent home in accordance with reasonable professional standards and law. Fulton DFCS Defendants have failed and continue to fail to take reasonable steps and to provide services to timely and safely reunite Phelicia with her mother, or, if that is not possible, to take reasonable steps to place her in a permanent adoptive home, as required by law and reasonable professional standards.

-45-

146.

Phelicia does not see her caseworker on a regular basis and she has gone as long as several months without a caseworker visit.

E.    SABRINA E. AND KORRINA E.

147.

Sabrina E. and Korrina E. are siblings who are currently ages three and one, respectively. They are in foster care, have been adjudicated deprived, are legally free for adoption, and have an open case in DeKalb County DFCS.  Sabrina came into care shortly after she was born, and Korrina has been in foster care since birth, because of neglect.  They currently live together in a family foster home.

148.

DeKalb DFCS Defendants have denied and delayed and continue to deny and delay the placement of Sabrina and Korrina, who are African-American., because of their race and/or color.

149.

In January 2002, Mr. and Mrs. S., who are Caucasian and Hispanic respectively, initially expressed interest in adopting Sabrina and Korrina, who were available for adoption at that time. DeKalb DFCS Defendants refused to take the necessary steps to place Sabrina and Korrina with Mr. and Mrs. S. because the prospective couple was not African-American.

150.

Sabrina and Korrina remain in foster care, and there is no family whom DeKalb DFCS

Defendants have approved to adopt them.  Sabrina and Korrina have been and continue to be harmed

emotionally and psychologically because DeKalb DFCS Defendants have failed to provide them with

adequate permanency planning services in a manner consistent with the exercise of reasonable

professional judgment and law, and have deprived them of a permanent family home as a result of their

refusal to place them with appropriate and willing non-African-American adoptive parents.

151.

DeKalb DFCS Defendants have failed to develop and implement a viable case plan that will

allow Sabrina and Korrina to leave foster care and secure a safe and appropriate permanent home in

accordance with reasonable professional standards and law.

F.    TANYA F.

152.

Tanya F. is a fifteen-year-old girl who is in foster care, has been adjudicated deprived, is legally

free for adoption, and has an open case in Fulton County DFCS.  Tanya was removed from her home

over eight years ago because of neglect. Tanya currently lives in a family foster home.

153.

As a result of her history of sexual abuse and neglect, Tanya has serious emotional, psychiatric,

and psychological problems.  She suffers from Oppositional Defiant Disorder and from depression.

She is also developmentally delayed with an IQ in the 50s.

154.

A professional assessment conducted while Tanya was in foster care determined that she was in need of a specialized therapeutic placement to address her history of sexual abuse. Fulton DFCS Defendants have failed to secure such a placement for her. Instead, Fulton DFCS Defendants have shuffled Tanya through at least seven placements, most of which have disrupted because they could not meet her special needs. As a result of her multiple placements, Tanya now has difficulty forming positive relationships with others.

155.

Tanya has been placed several times in an overcrowded residential facility for adolescents, which is directly operated by Fulton DFCS Defendants. This facility failed to provide Tanya necessary services to address her mental health problems and developmental delays.

156.

For much of her time at this residential facility, Fulton DFCS Defendants failed to ensure that Tanya was enrolled in and attending school or receiving the special education and related services to which she is entitled. Tanya is currently not enrolled in school and has thus missed the greater part of this school year.

157.

Because of a lack of adequate supervision and security measures at this residential facility, on numerous occasions Tanya left the facility's grounds and remained absent for extended periods of time without staff knowing her whereabouts. On one of these occasions, Tanya was a victim of child prostitution.

-48-

158.

Despite recommendations from health care professionals that Tanya requires long-term therapy and intensive case management, Fulton DFCS Defendants have failed and continue to fail to provide her with regular therapy and counseling to address her emotional needs and help her cope with her history of sexual abuse. As a result, Tanya continues to deteriorate psychologically while in foster care.

159.

During her more than eight years in foster care, Fulton DFCS Defendants have failed to develop and implement a viable case plan that will allow Tanya to leave foster care and secure a safe and appropriate permanent home in accordance with reasonable professional standards and law. Fulton DFCS Defendants delayed any attempt to free Tanya for adoption until 1998 and have since failed to take necessary steps to find an adoptive home for her. Fulton DFCS Defendants have determined Tanya to be "unadoptable," and plan to have her remain in foster care until she is an adult. Fulton DFCS Defendants' failure to place Tanya in a permanent family setting has caused her emotional and psychiatric harm.

160.

While in foster care, Tanya became pregnant, and in December 2001, she gave birth to a baby girl. On information and belief, Fulton DFCS Defendants took custody of Tanya's child at birth and placed the child at the Fulton Shelter for several months, placing the baby in a grossly inappropriate and harmful setting and denying Tanya the right to care for her baby and make basic child-rearing decisions on a daily basis. The separation was not necessary to protect the health, safety or welfare of Tanya or her child.

-49-

161.

Fulton DFCS Defendants recently placed Tanya and her baby in a foster home, but, because Fulton DFCS Defendants have failed to provide a therapeutic placement equipped to address Tanya's serious mental health needs, there is a significant risk that this placement will disrupt and that Tanya will again be separated from her baby.

162.

In addition, Fulton DFCS Defendants have failed to provide Tanya with regular and complete dental examinations since she came into care.

163.

Inconsistent with the exercise of reasonable professional judgment, since 1998 Fulton DFCS Defendants have separated Tanya from her sisters, who have also been in foster care. Fulton DFCS Defendants have failed to facilitate regular visits between Tanya and her sisters, and Tanya has not seen her sisters for at least a year. Consequently, Tanya has been deprived of familial ties with her sisters.

G.   PRISCILLA G.

164.

Priscilla G. is an eleven-month-old girl who is in foster care, has been adjudicated deprived, and has an open case in DeKalb County DFCS. Priscilla has been in foster care since birth because of her mother's violent and criminal history. Upon information and belief, she currently resides with a relative.

165.

Priscilla has had at least four different DFCS caseworkers in the eleven months since she has

been in foster care. As a result, there has been a lack of continuity and coordination in her casework

services. DeKalb DFCS Defendants have delayed taking necessary actions on her behalf, such as filing

a petition to terminate the parental rights of her mother, who was convicted of attempted murder of two

of her other children and has had no contact with Priscilla since birth.

166.

DeKalb DFCS Defendants have delayed and denied and continue to delay and deny the

adoption of Priscilla, on the basis of her race and/or color. Priscilla, who is African-American, was

placed with Caucasian foster parents for approximately ten months. Priscilla's foster parents first

informed DeKalb DFCS Defendants that they wished to adopt Priscilla several months ago, but

DeKalb DFCS Defendants  refused to take the necessary steps to allow this adoption to proceed.

167.

Priscilla formed a strong emotional bond with these foster parents, who have been certified as

foster-adoptive parents, and she has been and continues to be harmed emotionally and psychologically

by DeKalb DFCS Defendants' delay and denial of her adoptive placement with them.

168.

Recently, DeKalb DFCS Defendants began arranging short visits between Priscilla and a

distant relative, with whom Priscilla has had no previous contact. The distant relative frequently

canceled these scheduled visits. Only a few visits took place until very recently, when DeKalb DFCS

Defendants removed Priscilla from her foster home and placed her with this distant relative. Upon

-51-

information and belief, there is no plan for this relative to adopt Priscilla.

169.

DeKalb DFCS Defendants' continued delay and denial of Priscilla's adoption on the basis of

her race has harmed her and continues to expose her to an imminent risk of trauma and significant

emotional and psychiatric harm.

H.   BRIANA H.

170.

Briana H. is a fourteen-year-old girl who is in foster care, has been adjudicated deprived, and

has an open case in DeKalb County DFCS. She came into foster care because of physical abuse. She

has been in foster care for approximately one year, and currently lives in the DeKalb Shelter.

171.

Briana is developmentally delayed, with an IQ in the 50s, and has been diagnosed as suffering

from Adjustment Disorder, With Depressed Mood. She often does not want to get out of bed in the

morning, appears to be depressed much of the time, and has threatened to commit suicide. DeKalb

DFCS Defendants have failed to provide Briana with appropriate mental health services, despite their

knowledge of her serious emotional, psychological, and psychiatric problems.

172.

Notwithstanding a June 2001 psychological evaluation recommending that Briana be placed in

a structured, therapeutic setting for children with special needs, DeKalb DFCS Defendants have placed

her in the DeKalb Shelter for the majority of the time that she has been in foster care.

173.

While placed at the DeKalb Shelter, Briana was sexually assaulted by an older male shelter resident. This was a direct result of the absence of adequate supervision by the shelter staff.

174.

While living at the DeKalb Shelter, Briana also has been in numerous fights with other residents, including one altercation when she was injured and sustained multiple abrasions. Shelter staff have failed to adequately prevent these altercations or to intervene appropriately when necessary.

175.

Briana has repeatedly left the DeKalb Shelter without the knowledge of shelter staff as a result of inadequate security and supervision at the facility. On one occasion, Briana and other shelter residents left the facility and got into a fight with other children in the neighborhood.

176.

Shelter staff members have repeatedly reported Briana to the police, often for minor infractions of shelter rules. As a result, DeKalb DFCS Defendants have shuffled Briana back and forth between the shelter and locked juvenile detention facilities.

177.

At the shelter, Briana is denied the opportunity to engage in meaningful and constructive activities or programs, impeding her development and exacerbating her depression. She has also been denied appropriate dental services while living in the shelter.

178.

DeKalb DFCS Defendants failed to enroll Briana in public school for several months, and the so-called in-house educational program at the shelter failed to provide any program to meet her special educational needs.

179.

For a short time, DeKalb DFCS Defendants placed Briana in an inappropriate family foster home, where she was solicited to engage in prostitution by another child in the home. As a result, Briana refused to stay with this family and was returned again to the shelter.

180.

While in the custody of DeKalb DFCS Defendants, Briana has been physically injured and has deteriorated emotionally and psychologically. Her behavioral problems have increased, and her depression has become more severe.

181.

DeKalb DFCS Defendants have failed to develop and implement a viable case plan that will allow Briana to leave foster care and secure a safe and appropriate permanent home in accordance with reasonable professional standards and law.

## VIII.  CAUSES OF ACTION

182.

Counts IV, V, VIII, XV,  XVI, and XVII are brought pursuant to 42 U.S.C. § 1983.

<u>COUNT I</u>
(<u>Permanent Injunctive Relief</u>)
(Asserted by all Plaintiffs and Class and Subclass members against all Defendants)

183.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

184.

Plaintiffs and Class and Subclass members seek permanent injunctive relief under O.C.G.A.

§ 9-5-1 and § 9-5-8 .

185.

Defendants' actions and inactions have caused and continue to cause, or create the risk of

imminently causing, each named Plaintiff, Class and Subclass member irreparable harm.  Plaintiffs and

the members of the Class and Subclass have no adequate remedy at law.

186.

As stated herein, the Defendants' customs, policies, and practices have deprived and threaten

to deprive Plaintiffs and Class and Subclass members of their fundamental right to physical and

emotional safety and other fundamental rights while in government custody.  The well-being of these

foster children remains in imminent danger as a result of Defendants' actions and inactions.

187.

Plaintiffs and Class and Subclass members therefore request that the Court enjoin the

Defendants from violating their statutory and constitutional rights as alleged herein.

188.

Following additional factual development, Plaintiffs and Class and Subclass members will seek a particularized order of permanent injunctive relief, identifying, among other things, professionally accepted standards that the Defendants must meet in order to satisfy their statutory and constitutionally mandated duties. If appropriate, the requested order also will propose a sunset provision under which the Court's oversight would terminate when the Defendants have remedied their violations.

### COUNT II
### (Declaratory Judgment)
(Asserted by all Plaintiffs and Class and Subclass members against all Defendants)

189.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

190.

Plaintiffs and Class and Subclass Members seek a declaratory judgment under O.C.G.A. § 9-4-1 et seq. to afford relief from uncertainty and insecurity regarding their rights, status, and legal relations as foster children in government custody.

191.

A real and actual controversy exists in that the Plaintiffs and Class and Subclass Members have suffered from or face the imminent risk of suffering from the loss of their fundamental rights as stated herein. Moreover, the scope of their statutory and constitutional rights is uncertain.

192.

The Plaintiffs and Class and Subclass Members therefore request that the Court declare that:

a. Foster children have a constitutional and statutory right to live in safe and appropriate housing while in government custody, consistent with the exercise of reasonable professional judgment;

b. Foster children have a constitutional and statutory right to have plans timely created and implemented to find them permanent homes in order to be promptly removed from government custody, consistent with the exercise of reasonable professional judgment;

c. Foster children have a constitutional and statutory right not be have their adoptions delayed or denied on the basis of their race or color;

d. Foster children have a constitutional and statutory right to appropriate health care services while in government custody, consistent with the exercise of reasonable professional judgment;

e. Foster children have a constitutional and statutory right to receive appropriate educational services while in government custody, consistent with the exercise of reasonable professional judgment;

f. Foster children have a constitutional right to adequate and effective counsel when Fulton County or DeKalb County undertakes to provide legal representation for them and a constitutional and statutory right to adequate and effective counsel upon filing of a petition to terminate parental rights;

g.   Foster children have a constitutional and statutory right to maintain family relationships absent compelling reason, consistent with the exercise of reasonable professional judgment;

h.   Foster children have a constitutional and statutory right to enjoy the protections afforded them under the federal and state statutes set forth herein, consistent with the exercise of reasonable professional judgment; and

i.   The Defendants have deprived the Plaintiffs and Class and Subclass members of the foregoing rights in the manner stated herein, resulting in harm, grave danger and the continuing threat of grave danger to these foster children.

## COUNT III
### (Substantive Due Process Under The Georgia State Constitution)
(Asserted by all Plaintiffs and Class members against DFCS Defendants)

193.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

194.

The foregoing actions and inactions of DFCS Defendants constitute a failure to exercise an affirmative duty to protect the welfare of all Plaintiffs and Class members, which is a substantial factor leading to, and proximate cause of, the violation of the constitutionally protected liberty and privacy interests of all of the Plaintiffs and Class members.  The forgoing actions and inactions of DFCS Defendants constitute a policy, pattern, practice and/or custom that is inconsistent with the exercise of reasonable professional judgment and amounts to deliberate indifference to the serious and constitutionally protected rights and liberty and privacy interests of all Plaintiffs and Class members.  As

-58-

a result, all Plaintiffs and Class members have been and are being deprived of the substantive due process rights conferred upon them by Article I, Section I, Paragraph I of the Georgia State Constitution. Defendants have arbitrarily and capriciously deprived Plaintiffs and Class members of their due process rights in the absence of any countervailing state interest.

195.

These substantive due process rights include, but are not limited to: the right to protection of their person and from unnecessary harm while in government custody; the right to a living environment that protects foster children's physical, mental and emotional safety and well-being; the right to services necessary to prevent foster children from deteriorating or being harmed physically, psychologically, or otherwise while in government custody, including but not limited to the right to safe and secure foster care placements, appropriate monitoring and supervision, appropriate planning and services directed toward ensuring that the child can leave foster care and grow up in a permanent family, and adequate medical, dental, psychiatric, psychological, and educational services; the right not to be deprived of liberty by retention in government custody or locked detention facilities beyond necessity; the right to treatment and care consistent with the purpose of the assumption of custody by DFCS Defendants; the right not to be retained in custody longer than is necessary to accomplish the purposes to be served by taking the child into custody; and the right to receive care, treatment and services determined and provided through the exercise of accepted, reasonable professional judgment.

<u>COUNT IV</u>

<u>(Substantive Due Process Under The United States Constitution)</u>
(Asserted pursuant to 42 U.S.C. § 1983 by all Plaintiffs and Class members against Defendants Roy
Barnes, James Martin, Beverly Jones and Wayne Drummond)

196.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

197.

The foregoing actions and inactions of Defendants Roy Barnes, James Martin, Beverly Jones
and Wayne Drummond in their official capacities constitute a failure to exercise an affirmative duty to
protect the welfare of all Plaintiffs and Class members, which is a substantial factor leading to, and
proximate cause of, violation of the constitutionally protected liberty and privacy interests of all of the
Plaintiffs and Class members. The forgoing actions and inactions of Defendants Roy Barnes, James
Martin, Beverly Jones and Wayne Drummond in their official capacities constitute a policy, pattern,
practice and/or custom that is inconsistent with the exercise of reasonable professional judgment and
amounts to deliberate indifference to the serious and constitutionally protected rights and liberty and
privacy interests of all Plaintiffs and Class members. As a result, all Plaintiffs and Class members have
been and are being deprived of the substantive due process rights conferred upon them by the
Fourteenth Amendment to the United States Constitution. Defendants have arbitrarily and capriciously
deprived Plaintiffs and Class members of their due process rights in the absence of any countervailing
state interest.

-60-

198.

These substantive due process rights include, but are not limited to: the right to protection from unnecessary harm while in government custody; the right to a living environment that protects foster children's physical, mental and emotional safety and well-being; the right to services necessary to prevent foster children from deteriorating or being harmed physically, psychologically, or otherwise while in government custody, including but not limited to the right to safe and secure foster care placements, appropriate monitoring and supervision, appropriate planning and services directed toward ensuring that the child can leave foster care and grow up in a permanent family, and adequate medical, dental, psychiatric, psychological, and educational services; the right not to be deprived of liberty by retention in government custody or locked detention facilities beyond necessity; the right to treatment and care consistent with the purpose of the assumption of custody by DFCS Defendants; the right not to be retained in custody longer than is necessary to accomplish the purposes to be served by taking the child into custody; and the right to receive care, treatment and services determined and provided through the exercise of accepted, reasonable professional judgment.

## COUNT V
### (First, Ninth, and Fourteenth Amendments to the United States Constitution)
(Asserted pursuant to 42 U.S.C. § 1983 by all Plaintiffs and Class members against Defendants Roy Barnes, James Martin, Beverly Jones and Wayne Drummond)

199.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

-61-

200.

The foregoing actions and inactions of Defendants Roy Barnes, James Martin, Beverly Jones and Wayne Drummond in their official capacities constitute a failure to exercise an affirmative duty to protect the welfare of all Plaintiffs and Class members, which failure is a substantial factor leading to, and proximate cause of, violation of the constitutionally protected liberty interests, privacy interests and associational rights of all of the Plaintiffs and Class members. The foregoing actions and inactions of Defendants Roy Barnes, James Martin, Beverly Jones and Wayne Drummond in their official capacities constitute a policy, pattern, practice and/or custom that is inconsistent with the exercise of reasonable professional judgment and also amounts to deliberate indifference to the serious and constitutionally protected rights and needs of the Plaintiffs and Class members. As a result, Plaintiffs and Class members are being deprived of their liberty interest, privacy interests and associational rights conferred on them by the First, Ninth, and Fourteenth Amendments to the United States Constitution not to be deprived of a child-parent or a child-sibling family relationship absent compelling reasons.

## COUNT VI
### (Right to a Properly Screened and Supervised Home: O.C.G.A. § 49-5-12)
(Asserted by all Plaintiffs and Class Members against DFCS Defendants)

201.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

202.

As a result of the foregoing actions and inactions of DFCS Defendants, Plaintiffs and Class members who have been, are or will be in family foster homes have been deprived, or are at imminent risk of being deprived, of the right to have their welfare safeguarded while in a foster home as a result of

-62-

such Defendants' failure to thoroughly investigate the home in which they are placed and the character

of the persons residing there and to supervise the home during the placement, in violation of O.C.G.A.

§ 49-5-12(j).

## COUNT VII
### (Right to Case Plans and Their Implementation and Permanent Placement: O.C.G.A. § 15-11-58)
(Asserted by all Plaintiffs and Class Members against DFCS Defendants)

203.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

204.

As a result of the foregoing actions and omissions of DFCS Defendants, Plaintiffs and Class

members are being deprived of rights conferred on them by O.C.G.A. § 15-11-58(c), (j) and (m).

These rights include, but are not limited to: the right to a timely written case plan containing mandated

elements, and to the implementation of these plans; the right to have a petition to terminate parental

rights filed, or have a compelling reason documented why such a petition has not been filed, in

accordance with specified, statutory standards and time frames; and the right to planning and services

to obtain a permanent placement at the earliest possible time, including documentation of the steps

taken to secure permanency.

## COUNT VIII
### (The Federal Adoption Assistance Act)
(Asserted pursuant to 42 U.S.C. § 1983 by all Plaintiffs and Class members against Defendants Roy Barnes, James Martin, Beverly Jones and Wayne Drummond)

205.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

206.

As a result of the foregoing actions and omissions of Defendants Roy Barnes, James Martin, Beverly Jones and Wayne Drummond in their official capacities, these Defendants are engaging in a policy, pattern, practice, and/or practice of depriving all Plaintiffs and Class members of rights conferred on them by the federal Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997 (collectively the "Adoption Assistance Act") and the regulations promulgated under the Act, 45 C.F.R. Parts 1355-1357. These rights include, but are not limited to:  the right to timely written case plans containing mandated elements, and to the implementation of these plans; the right to placement in foster homes or other settings that conform to national professional standards and are subject to a uniformly applied set of standards; the right to have a petition to terminate parental rights filed, or have a compelling reason documented why such a petition has not been filed, in accordance with specified, statutory standards and time frames; the right of foster children whose permanency goal is adoption to planning and services to obtain a permanent placement, including documentation of the steps taken to secure permanency; the right to services to facilitate the child's return to his family home or the permanent placement of the child; the right to services that protect foster children's safety and health; the right to have health and educational records reviewed, updated, and supplied to foster parents or foster care providers with whom the child is placed at the time of placement; the right to receive services in a child welfare system that has an information system adequate to permit the state to make fully informed decisions concerning each foster child's best interests; and, in the case of a child who has reached 16 years of age, the right to services needed to help the child prepare for the transition from foster care to independent living. 42 U.S.C.§§ 671(a)(10);

-64-

671(a)(16); 671(a)(22); 672(b) and (c); 675(1); 675(5)(D); 675(5)(E); 622(b)(10)(B); 45 C.F.R. §

1355.20.

## COUNT IX
### (Right to Care, Protection, Training, Education and Physical, Mental and Moral Welfare; O.C.G.A. § 15-11-13)
(Asserted by all Plaintiffs and Class members against DFCS Defendants)

207.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

208.

As a result of the foregoing actions and inactions of DFCS Defendants, these Defendants have

failed to provide for the care, protection, training, education, and physical, mental and moral welfare of

all Plaintiffs and Class members, all of whom the Juvenile Court has placed in the custody of such

Defendants pursuant to O.C.G.A. § Title 15, Chapter 11, Article 1. This failure violates the legal duty

these Defendants owe to Plaintiffs and Class members pursuant to O.C.G.A. § 15-11-13, and the

violation of this duty harms such children, or places them at imminent risk of harm.

## COUNT X
### (Right to Schooling: O.C.G.A. § 20-2-690.1)
(Asserted by all Plaintiffs and Class Members against DFCS Defendants)

209.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

210.

As a result of the foregoing actions and inactions of DFCS Defendants, which have control or

charge of Plaintiffs and the Class members of school age, these Defendants have failed to enroll and

-65-

send the Plaintiffs and Class members to a school, or provide home-schooling, that meets statutory standards, or have placed the Plaintiffs and Class members at risk of such failure. Through this failure, these Defendants violate the legal duty they owe to these foster children pursuant to O.C.G.A. § 20-2-690.1, and the violation of this duty harms such children or places them at imminent risk of harm..

## COUNT XI
### (Nuisance: Georgia Common Law)
(Asserted by all Plaintiffs and Class members against all Defendants)

211.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

212.

Defendants have been given notice and an ample opportunity to rectify their manner of operation of the Fulton and DeKalb Shelters. Defendants have been more than negligent in their operation of these facilities, which is creating a continuous condition that hurts, inconveniences or damages the Plaintiffs and Class members who reside there. The injury the shelter operation causes these residents is different from any harm the Fulton and DeKalb Shelters may cause the general public, and the conditions in the shelters impair the health and safety of these residents. By failing to rectify the manner of operation of the Fulton and DeKalb Shelters that has injured Plaintiffs and Class members who reside there, Defendants have violated legal duties they owe these foster children.

213.

As a result of Defendants' foregoing actions and inactions, the manner in which the Fulton and DeKalb Shelters have been operated have created and maintained and continue to create and maintain a public nuisance or, in the alternative, a private nuisance that harms Plaintiffs and Class members who

-66-

reside in those facilities, and poses a risk of harm to Plaintiffs and Class Members who are at imminent

risk of being placed in the Shelters.

COUNT XII
(Breach of Contract: O.C.G.A. § 9-2-20(b) and Georgia Common Law)
(Asserted by all Plaintiffs and Class members against DFCS Defendants)

214.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

215.

Under Titles IV-B, IV-E and XIX of the Social Security Act, states receive certain federal

reimbursements so long as they enter into plans approved by the United States Department of Health

and Human Services and comply with their terms. The State of Georgia receives federal funding under

Titles IV-B, IV-E and XIX of the Social Security Act and has submitted such plans, which are legal

contracts between the federal government and the state (a Georgia "State Plan"). In the State Plan

contracts, the state agrees to provide child welfare, foster care, adoption and health services to

Plaintiffs and Class members in accordance with specific statutes and policies and all applicable federal

regulations and other official issuances of the United States Department of Health and Human Services.

216.

As a result of the foregoing actions and inactions of DFCS Defendants, these Defendants have

breached and continue to breach their obligations under the State Plan contracts, and all Plaintiffs and

Class members, as the intended third party beneficiaries to the Georgia "State Plan" contracts, are

being denied their rights to the services and benefits that the State of Georgia is obligated to provide to

them under such contracts, and are harmed thereby.

-67-

## COUNT XIII
### (Inadequate and Ineffective Legal Representation:
### Due Process Under Georgia State Constitution and O.C.G.A. § 15-11-98(A)
(Asserted by all Plaintiffs and Class members against Defendants Fulton County and DeKalb County)

217.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

218.

As a result of the foregoing actions and inactions of Defendants Fulton County and DeKalb County, all Plaintiffs and Class members have been deprived of their right to adequate and effective representation in their deprivation and termination-of-parental-rights proceedings before the Juvenile Courts of Fulton and DeKalb Counties in violation of Georgia Constitution, Art. I, § 1, Par. 1, and, with respect to foster children who are the subjects of a petition to terminate parental rights, in violation O.C.G.A. § 15-11-98(a),  causing each child serious injury and harm.

## COUNT XIV
### (Equal Protection Under the Equal Protection Clause of the Georgia Constitution)
(Asserted by Plaintiffs Sabrina E., Korrina E., Priscilla G. and Subclass Members against DFCS Defendants)

219.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

220.

The foregoing actions and inactions of DFCS Defendants constitute a policy, pattern, practice and/or custom that is inconsistent with the exercise of reasonable professional judgment and amounts to deliberate indifference to the serious and constitutionally protected fundamental right of the Plaintiffs

-68-

who assert this claim and Subclass members to not have their adoptive placements delayed or denied on the basis of their race or color.

221.

DFCS Defendants intentionally discriminate against the Plaintiffs asserting this claim and Subclass members on the basis of their race or color by delaying or denying them adoptive placements that are or would be provided to similarly situated non-African-American foster children. As a result, Plaintiffs asserting this claim and Class members have been and are being deprived of their rights to equal protection conferred upon them by Article I, Section I, Paragraph II of the Georgia State Constitution. Defendants have arbitrarily and capriciously deprived these Plaintiffs and Subclass members of their right to not have their adoptive placements delayed or denied on the basis of their race or color in the absence of any countervailing state interest.

## COUNT XV
### (The Multiethnic Placement Act and the Inter-ethnic Adoption Provisions of 1996)
(Asserted pursuant to 42 U.S.C. § 1983 by Plaintiffs Sabrina E. and Korrina E., and Priscilla G., and Subclass Members against Defendants Roy Barnes, James Martin, Beverly Jones and Wayne Drummond)

222.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

223.

As a result of the foregoing actions and inactions of the Defendants Roy Barnes, James Martin, Beverly Jones and Wayne Drummond in their official capacities, these Defendants are engaging in a policy, pattern, practice, and/or custom of depriving the Plaintiffs asserting this claim and other Subclass

members of the rights conferred upon them by the federal Multiethnic Placement Act of 1994, as

amended by the Inter-ethnic Adoption Provisions of 1996, 42 U.S.C. §§ 671(a)(18), 674, 1996b.

These rights include, but are not limited to, the right not to have their adoptive placements delayed or

denied on the basis of their race or color.

COUNT XVI

(Federal Early Periodic Screening, Diagnosis and Treatment Program ("EPSDT") of the Medicaid
Act)

(Asserted pursuant to 42 U.S.C. § 1983 by all Plaintiffs and Class members against Defendants Roy
Barnes, James Martin, Beverly Jones and Wayne Drummond)

224.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

225.

As a result of the foregoing actions and omissions of Defendants Roy Barnes, James Martin,

Beverly Jones and Wayne Drummond in their official capacities, these Defendants are engaging in a

policy, pattern, practice, and/or custom of denying Plaintiffs and Class members of the rights conferred

upon them by the Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") program of the

federal Medicaid Act. These rights include but are not limited to the right to receive any and all

treatments deemed necessary by a qualified medical professional conducting any of the periodic health

examinations required by EPSDT.

-70-

## COUNT XVII
(Procedural Due Process Under the United States Constitution)
(Asserted pursuant to 42 U.S.C. § 1983 by all Plaintiffs and Class members against Defendants Roy Barnes, James Martin, Beverly Jones and Wayne Drummond)

226.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

227.

The foregoing actions and inactions of Defendants Roy Barnes, James Martin, Beverly Jones and Wayne Drummond in their official capacities, constitute a failure to exercise an affirmative duty to protect the welfare of all Plaintiffs and Class members, which is a substantial factor leading to, and proximate cause of, the violation of the constitutionally protected liberty and privacy interests of all of the Plaintiffs and Class members. The forgoing actions and inactions of these Defendants constitute a policy, pattern, practice and/or custom that is inconsistent with the exercise of reasonable professional judgment and amounts to deliberate indifference to the serious and constitutionally protected rights and liberty and privacy interests of all Plaintiffs and Class members. As a result, children in the Class are being deprived of federally-created and state-created liberty or property rights without due process of law. The federal law entitlements to which children have a constitutionally protected interest arise from the Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997, 42 U.S.C. §§ 620-27, 670-679a, and regulations promulgated thereunder, the Multiethnic Placement Act of 1994, as amended by the Interethnic Placement Act of 1996, 42 U.S.C. §§ 671(a)(18), 674, 1996b, and the Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") program of the federal Medicaid Act. The state law entitlement to which Plaintiff children

-71-

have a protected interest arise from the right to have their welfare safeguarded while in a foster home

pursuant to O.C.G.A. § 49-5-12(j).

COUNT XVIII

(Litigation Expenses)

(Asserted by All Plaintiffs and Class members against all Defendants)

228.

Each and every allegation of the Complaint is incorporated herein as if fully set forth.

229.

Plaintiffs are entitled to recover their expenses of litigation, including reasonable attorneys' fees,

pursuant to 42 U.S.C. §§ 1920 and 1988, and their costs pursuant to O.C.G.A. § 9-4-9.

### IX. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff children respectfully request that this Honorable Court:

A.      Assert jurisdiction over this action;

B.      Order that Plaintiffs may maintain this action as a class action pursuant to O.C.G.A. § 9-
11-23(a)(1).;

C.      Declare unconstitutional and unlawful pursuant to O.C.G.A. § 9-4-2(a):

1.      DFCS Defendants' violation of all Plaintiffs' and Class members' rights under the

Due Process Clause of the Georgia State Constitution;

2.      Defendant Roy Barnes', James Martin's, Beverly Jones' and Wayne Drummond's

violation of all Plaintiffs' and Class members' rights under the Due Process Clause

of the United State Constitution;

-72-

3.      Defendant Roy Barnes, James Martin, Beverly Jones and Wayne Drummond's violation of all Plaintiffs' and Class members' rights under the First, Ninth and Fourteenth Amendments to the United State Constitution;

4.      DCFS Defendants' violation of all Plaintiffs' and Class members' rights under O.C.G.A. § 49-5-12;

5.      DCFS Defendants' violation of all Plaintiffs' and Class members' rights under O.C.G.A. § 15-11-58;

6.      Defendant Roy Barnes', James Martin's, Beverly Jones' and Wayne Drummond's violation of all Plaintiffs' and Class members' rights under the federal Adoption Assistance and Child Welfare Act, as amended by the Adoption and Safe Families Act of 1997, and regulations promulgated thereunder;

7.      DCFS Defendants' violation of all Plaintiffs' and Class members' rights under O.C.G.A. § 15-11-13;

8.      DCFS Defendants' violation of all Plaintiffs' and Class members' rights under O.C.G.A. § 20-2-690.1;

9.      All Defendants' creation of a public or, in the alternative, a private nuisance through the operation of the Shelters, in violation of all Plaintiffs' and Class members' rights under Georgia common law;

10.      DCFS Defendants' breach of all Plaintiffs' and Class members' rights under the State Plan contracts, pursuant to Georgia common law and O.C.G.A. § 9-2-20(b);

-73-

11.     Defendant Fulton County's and DeKalb County's violation of all Plaintiffs' and Class members' rights to adequate and effective representation under the Georgia State Constitution and O.C.G.A. § 15-11-98(A);

12.     Defendant Roy Barnes', James Martin's, Beverly Jones' and Wayne Drummond's violation of the rights of Plaintiffs Sabrina E., Korrina E. and Priscilla G. and Subclass members under the Equal Protection Clause of the Georgia State Constitution;

13.     Defendant Roy Barnes', James Martin's, Beverly Jones' and Wayne Drummond's violation of the rights of Plaintiffs Sabrina E., Korrina E. and Priscilla G. and Subclass members under the federal Multiethnic Placement Act of 1994 and the Inter-ethnic Adoption Provisions of 1996;

14.     Defendant Roy Barnes', James Martin's, Beverly Jones' and Wayne Drummond's violation of the rights of all Plaintiffs' and Class members under the Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") program of the federal Medicaid Act; and

15.     Defendant Roy Barnes', James Martin's, Beverly Jones' and Wayne Drummond's violation of all Plaintiffs' and Class members' procedural due process rights under the United States Constitution.

D.     Permanently enjoin Defendants from subjecting members of the Plaintiff Class and Subclass to practices that violate their rights, pursuant to O.C.G.A. § 9-5-1 and § 9-5-8;

E.     Order appropriate remedial relief to ensure Defendants' future compliance with their legal

-74-

obligations to Plaintiffs;

F.    Award to the Plaintiffs the reasonable costs and expenses incurred in the prosecution of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. §§ 1920 and 1988, and O.C.G.A. § 9-4-9;

G.    Grant such other and further equitable relief as the court deems just, necessary and proper to protect the Plaintiffs, Class members and Subclass members from further harm by Defendants.

DATED:      June 6, 2002
                Atlanta, GA

Respectfully submitted,

By:   *Marcia Robinson Lowry w/ express permission /90*
      Marcia Robinson Lowry
      Ira P. Lustbader
      Jeffrey K. Powell
      Stacy F. Antonucci
      CHILDREN'S RIGHTS, INC.
      404 Park Avenue South, 11th Floor
      New York, NY 10016
      (212) 683-2210

By:
      Don Keenan
      Georgia Bar No. 410650
      Jane Okrasinski
      Georgia Bar No. 551200
      KEENAN'S KIDS LAW CENTER
      148 Nassau Street, N.W.
      Atlanta, GA 30303
      (404) 523-2200

      **COUNSEL FOR PLAINTIFFS**

ORIGINAL

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

FILED IN OFFICE

JUN - 6 2002

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

-----------------------------------------------------x

KENNY A., by his next friend, Linda Winn;  )
KARA B., by her next friend, Rosa Davis;  )
MAYA C., by her next friend, Linda Pace;  )
PHELICIA D., by her next friend, Alesia Adams;  )
SABRINA E., by her next friend, Rebecca Silvey;  )
KORRINA E., by her next friend, Rebecca Silvey;  )
TANYA F., by her next friend, Carol Huff;  )
PRISCILLA G., by her next friend, Marilyn Weaver;  )
BRIANA H., by her next friend, Linda Pace;  )
on their own behalf and on behalf of all others  )
similarly situated,  )
                Plaintiffs,  )
  )
  )
-versus-  )
  )
  )
ROY BARNES, in his official capacity as  )
Governor of the State of Georgia;  )
DEPARTMENT OF HUMAN RESOURCES  )
OF THE STATE OF GEORGIA;  )
JAMES MARTIN, in his official capacity as  )
Commissioner of the Department of Human  )
Resources of the State of Georgia;  )
FULTON COUNTY DEPARTMENT OF  )
FAMILY AND CHILDREN SERVICES;  )
BEVERLY JONES, in her official capacity as  )
Director of the Fulton County Department of  )
Family and Children Services;  )
DEKALB COUNTY DEPARTMENT OF  )
FAMILY AND CHILDREN SERVICES;  )
WAYNE DRUMMOND, in his official  )
capacity as Director of the DeKalb County  )
Department of Family and Children Services;  )
FULTON COUNTY; and  )
DEKALB COUNTY,  )
  )
  )
                Defendants.  )

-----------------------------------------------------x

PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION
Civil Action No. 2002CV 54182

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

NOW COME KENNY A., et al., Plaintiffs above-named, who move this Court to certify this action as a class action pursuant to O.C.G.A. § 9-11-23(a)(1).

This action seeks declaratory and injunctive relief to stop violations of the state and federal rights of foster children in Fulton and DeKalb Counties, and to ensure that these foster children receive care, protection, treatment, and services as required by law. The Defendants are Roy Barnes, in his official capacity as Governor of the State of Georgia; the Georgia Department of Human Resources ("DHR"); James Martin, in his official capacity as Commissioner of DHR; Fulton County Department of Family and Children's Services ("Fulton County DFCS"); Beverly Jones, in her official capacity as Director of Fulton County DFCS; DeKalb Department of Family and Children's Services ("DeKalb County DFCS"); Wayne Drummond, in his official capacity as Director of DeKalb County DFCS; Fulton County; and DeKalb County. [1]

The proposed Class is defined as follows:

> All children who have been, are or will be alleged or adjudicated deprived who (1) are or will be in the custody of any of the DFCS Defendants; and (2) have or will have an open case in Fulton County DFCS or DeKalb County DFCS.

---

[1] Hereinafter "DFCS Defendants" includes Defendants Roy Barnes, DHR, James Martin, Fulton County DFCS, Beverly Jones, DeKalb County DFCS, and Wayne Drummond.

For purposes of Count XIV and Count XV of the Complaint, the proposed

Subclass is defined as follows:

> All children in the Class who are African-American and who have had, or
> are subject to the risk of having, their adoption delayed or denied on the
> basis of their race or color.

Plaintiffs meet the statutory and other legal requirements to maintain this action on

behalf of the Class and Subclass, as is more fully demonstrated in the Memorandum of

Law filed herewith.

DATED:     June 6, 2002
           Atlanta, GA

Respectfully submitted,

By: _Marcia Robinson Lowry w/ permission /190_
Marcia Robinson Lowry
Ira P. Lustbader
Jeffrey K. Powell
Stacy F. Antonucci
CHILDREN'S RIGHTS, INC.
404 Park Avenue South, 11th Floor
New York, NY 10016
(212) 683-2210

By: _____
Don Keenan
Georgia Bar No. 410650
Jane Okrasinski
Georgia Bar No. 551200
KEENAN'S KIDS LAW CENTER
148 Nassau Street, N.W.
Atlanta, GA 30303
(404) 523-2200

**COUNSEL FOR PLAINTIFFS**