**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| KENNY A., by his next friend, Linda Winn, et al., | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. 1:02-CV-1686-MHS |
| v. | ) ) | |
| SONNY PERDUE, et al., | ) ) ) | |
| Defendants. | ) | |

## STATE DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ORDER AUTHORIZING INTERVIEWS/INSPECTION

### I.     INTRODUCTION

Plaintiffs' Motion for Order Authorizing Interviews/Inspection of the

DeKalb County Children's Center, operated by WestCare Foundation, Inc.

(hereinafter "WestCare") is the latest in a series of last minute, end of discovery

maneuvers designed to frustrate the purposes of this Court's Order of July 30,

2004, which placed a limitation on the amount and timing of updated fact and

expert discovery, and to add additional discovery requirements which will

ultimately result in a further delay of these proceedings.

As will be discussed in more detail below, the motion should be denied as

sought for one or more of the following reasons:

(1)   The motion violates the dictates and spirit of this Court's July 30, 2004, Order, Local Rule 26.2 of this Court, and Fed. R. Civ. P. 34; in addition, along with other expansions of discovery being sought by Plaintiffs, the granting of the motion will result in a significant delay of the proceedings.

(2)   The motion is unfounded and unnecessary given the reasonable, good faith responses to incidents at WestCare by State Defendants.

(3)   In the event that the Court determines that an inspection of WestCare is necessary, State Defendants would respectfully invite the Court to conduct the inspection.

(4)   In the event that the Court chooses to order an inspection and/or interviews by Plaintiffs' expert or counsel, State Defendants would request sufficient advance notice of such inspection and/or interviews in order to ensure that safety and security concerns can be accommodated, and that counsel for State Defendants be provided a right to be present at any and all stages of such inspection and/or interviews.  State Defendants would also request a reasonable opportunity to retain their own expert, file a report, and engage in expert discovery as authorized by Fed. R. Civ. P. 26 in the event that Plaintiffs' motion is granted.

1407042_1.DOC

II.    STATEMENT OF PRIOR PROCEEDINGS AND EVENTS

A.    Plaintiffs' Motion for Interviews/Inspection was filed after the end of a specified period for limited supplemental discovery, could have been filed earlier given Plaintiffs' knowledge of events, and is part of Plaintiffs' larger effort to conduct more expansive discovery.

As this Court is well aware, after expedited initial discovery, the close of the first round of regular discovery, and the filing of motions for summary judgment by Defendants, Plaintiffs moved for a scheduling order to permit an additional period of discovery for the purpose of "updating" documents and responses, conducting a supplemental case record and investigative file review, and deposing additional persons to fill in any "gaps" in discovery between the end of the initial discovery period and the time of trial.  Following a conference in chambers on May 27, 2004, this Court issued its Order on July 30, 2004, re-opening discovery "for the limited purpose of updating discovery previously obtained in this case." (Order of July 30, 2004 at 2, attached hereto as State Defs.' Ex. 1).  The parties were ordered to serve updated discovery responses by specified dates, were permitted to serve new requests for production and interrogatories no later than August 30, 2004, and were authorized to conduct additional depositions of fact witnesses relating only to such updated discovery between September 20 and November 19, 2004.  (Order of July 30, 2004 at 3-4.)  Supplemental expert reports based on the updated case and investigative file reviews were due on November 1,

2004, with any responses due November 19, 2004. (Id. at 7.) The period of December 3, 2004 to January 14, 2005, was reserved for serving written discovery relating to the supplemental expert reports and taking depositions of the experts who authored such reports. (Id.)

During the course of supplemental fact discovery ordered by the Court, a period of time which has now expired, Plaintiffs insisted, on an almost daily basis, for documents to be delivered both in accordance with this Court's July 30 Order and in an manner outside the scope of that Order. State Defendants have in good faith responded to such requests and have produced literally thousands of additional pages of documents, often foregoing what would have been appropriate objections based upon the limitations of the July 30 Order.[1]

Although the July 30 Order specifically excluded the necessity for updating any discovery responses for requests relating to the operation of the since-closed Fulton and DeKalb County emergency shelters (Order of July 30, 2004, at 3 n.1), State Defendants began producing documents to Plaintiffs concerning the operation of WestCare early in the supplemental discovery period, a fact admitted

---

[1] State Defendants have not attached the correspondence between counsel for Plaintiffs and State Defendants since the entry of this Court's July 30 Order so as not to unduly burden the Court; however, the Court should be aware that such correspondence fills two 3-inch notebooks and could be provided in the event the Court desires to review the significant efforts made by State Defendants to appease Plaintiffs in this case.

by Plaintiffs in letters to State Defendants, but omitted from mention in their

pending motion.

> State Defendants have already produced documents during the course
> of discovery concerning Plaintiffs at this WestCare facility, including,
> for example, documents showing that children stay at the facility for
> expanded periods of time, far in excess of the 23-hour placement
> mandate. *See, e.g.*, "Children at WestCare 8/19/04," 14-9D00001
> (identifying 10 children, who at one time or another, had been at the
> facility awaiting placement).

(See Letter from Ira P. Lustbader to Mark H. Cohen of 9/2104, at 3, attached

hereto as State Defs.' Ex. 2.)[2] State Defendants acknowledged their previous

production of documents relating to WestCare over the summer months and

committed to producing even more documents by the end of September. (See

Letter from Mark H. Cohen to Ira P. Lustbader of 9/23/04, at 2, attached hereto as

State Defs.' Ex. 3.)

Despite the production of documents related to WestCare by State

Defendants, and Plaintiffs' prior knowledge of many of the "incidents" referred to

in their pending motion, no mention was made to State Defendants or the Court of

any need to expand the July 30, 2004, Order to authorize: (1) the identification of

---

[2] That same letter references a copy of an email to Penny Cooper previously
provided by State Defendants in an earlier document production and cited in
Plaintiffs' pending motion.

an additional expert, or (2) Plaintiffs' desire to inspect WestCare or conduct interviews of any residents therein.

On September 24, 2004, Plaintiffs served the registered agent for WestCare a subpoena duces tecum for certain documents. (See Letter from Gordon Hamrick to Michael Langford of 9/24/04, attached hereto as State Defs.' Ex. 4.) After that service, counsel for Plaintiffs coordinated with WestCare's private counsel about the receipt of documents in accordance with that subpoena. (See Letter from Douglas C. Gray to J. Timothy Mast (McKenna, Long & Aldridge LLP) of 10/7/04, attached hereto as State Defs.' Ex. 5.)

State Defendants' first knowledge of Plaintiffs' interest in inspecting the WestCare facility came two months after the Court-ordered deadline for new discovery requests and after the passage of the Court's deadline for submission of supplemental expert reports, as reflected in the November 4, 2004, letter which is filed under seal as Exhibit 25 to Plaintiffs' Brief in Support of the Motion for Order Authorizing Inspection/Interviews. Although Plaintiffs were fully aware that supplemental fact discovery in the case was to expire on November 19, 2004,[3]

---

[3] In fact, eight depositions were scheduled between November 4-19, 2004, of which two were cancelled on short notice by Plaintiffs due to a purported illness of one of their New York attorneys, and which have been rescheduled with the consent of State Defendants outside the period for fact discovery for Plaintiffs'

this letter demands: (1) without notice to anyone affiliated with WestCare, an unannounced inspection of the facility by an unidentified expert retained by Plaintiffs[4] (even though Plaintiffs knew WestCare, a private facility under contract with the Georgia Department of Human Resources ("DHR"), was represented by Mr. Mast, having negotiated WestCare's production of documents directly with Mr. Mast in connection with Plaintiffs' subpoena), (2) interviews with children who would be then in residence at WestCare as well as with certain children identified by Plaintiffs as no longer at WestCare but at other placements (and to be located by State Defendants), and (3) that any such interviews be conducted by the new and unnamed expert without any attorney or other representative of State Defendants in attendance.[5] State Defendants were given a total of two business days to accede to this demand. No request to permit entry upon property in the control of a party or non-party was served in accordance with Fed. R. Civ. P. 34(a) or 45.

---

convenience (without waiving State Defendants' right to object to any *new* discovery sought by Plaintiffs after the expiration of the Court's deadline).
[4] Plaintiffs' first indication of their need for an additional expert (at that point unnamed) came *after* the date Plaintiffs filed their supplemental expert report in accordance with this Court's July 30 Order.
[5] But see this Court's Order of July 13, 2002 (attached hereto as State Defs.' Ex. 9), in which State Defendants' counsel was given a right to be present at any interview of a staff member or resident at the former Fulton and DeKalb County emergency shelters.

In addition, Plaintiffs, for the first time in the two-and-one-half years this case has been pending, also informally demanded private access to an unspecified number of class members who reside in 33 separately identified congregate care placements or foster care homes, as well as 40 additional class members who are in a variety of unspecified placements (to be identified by State Defendants). Plaintiffs gave State Defendants four business days to comply with this demand, and three weeks (including the Thanksgiving holiday) in which to set up potentially hundreds of meetings located in anywhere from 33 to 73 separate locations throughout the State of Georgia, at which State Defendants could have no representative present. The period of time that these events were to occur, under Plaintiffs' demand, was within the same period of time already reserved by the Court for supplemental expert discovery.

By letter dated November 8, 2004, State Defendants notified Plaintiffs as to the unreasonableness and untimeliness of their request, not to mention the fact that Plaintiffs were fully aware that the WestCare facility was a private entity represented by other counsel who had not been contacted. (See Ex. 14 to Pls.' Brief in Supp. of Mot. Authorizing Interviews/Inspection.) Plaintiffs thereafter apparently decided to inform Mr. Mast, WestCare's attorney, of their demand,

albeit not in the manner contemplated by the Federal Rules of Civil Procedure.

See Fed. R. Civ. P. 34(c), 45.  Plaintiffs' motion shortly followed.[6]

> B.   WestCare is not operating as an emergency shelter; it is
> licensed to treat children who are awaiting further placements;
> and incidents occurring at WestCare have been reasonably
> responded to by DHR officials.

In an effort to obfuscate the facts surrounding the operation of WestCare, as

well as State Defendants' reasonable responses to certain incidents which have

occurred at WestCare, Plaintiffs attempt to personally smear State Defendants by

suggesting that WestCare now operates as a type of "emergency shelter" which

was voluntarily closed by State Defendants in DeKalb County in March 2003,

thereby "breaking a promise" made to this Court.[7]  A brief review of the actual

facts undermines Plaintiffs' characterizations.

---

[6] It should be noted that Plaintiffs admit in a footnote to their brief that their request
for inspection and interviews at WestCare is only a portion of their effort to gain
untimely access to numerous other class members at the different placements noted
above.  (See Pls.' Brief at 25 n.23.)  While Plaintiffs indicate an intention to "make
further efforts to resolve this issue directly with State Defendants," they have not
done so at this time, and State Defendants have made it very clear that it is
impossible to comply with such a request during the time constraints imposed upon
the parties by the Court's July 30, 2004, Order.  (See Pls.' Exh. 14.)
[7] Plaintiffs' counsel has combined their unfounded accusations with the issuance of
press releases designed to further inflame the situation.  See, e.g.,
http://www.childrensrights.org/PDF/11-17-04.pdf.

Prior to March 2003, DeKalb County operated an emergency children's center, which was closed. The DeKalb County Children's Center thereafter was opened as a means of moving children into an appropriate placement as quickly as possible. (See Affidavit of Walker E. Solomon, II ("Solomon Aff.") ¶ 5, attached hereto as State Defs.' Ex. 6.) The DeKalb Children's Center contains a temporary assessment center as well as cottages for long-term therapeutic care. (Id.) Pursuant to a contract with DeKalb County Department of Family and Childrens Services, WestCare operates the Children's Center. (Id. at ¶ 6.)

WestCare is a 52-bed licensed child caring institution that consists of 44 beds used for treatment of 12-17 year olds in need of treatment for emotional and behavioral problems. (See Affidavit of Martin J. Rotter ("Rotter Aff.") ¶ 5, attached hereto as State Defs.' Ex. 7.) WestCare also operates the assessment center for children initially coming into the custody of the Division of Family and Children Services ("DFCS") to receive an appropriate assessment prior to being moved to an appropriate placement. (Id.) Eight of the 52 beds are currently used for children whose assessments and placements require more than 23 hours to complete. (Id.)

On or about January 9, 2004, the Office of Regulatory Services ("ORS") of the Georgia Department of Human Resources conducted an on-site visit of

WestCare due to an incident involving certain male residents which was reported to ORS by WestCare itself.[8]  (Rotter Aff. ¶ 4.)  As a part of its investigation, ORS learned that a number of children in WestCare's assessment center program had been staying longer than 23 hours, which is considered a "placement" for federal reporting purposes.  (Id. ¶ 6; Solomon Aff. ¶ 9.)  ORS informed WestCare that in order to continue to have children remain in the assessment center beyond the 23-hour period, proper licensure would have to be obtained for supportive services. (Rotter Aff. ¶ 7.)  An on-site visit by ORS the next month confirmed that a number of children were still residing in the assessment center longer than 23 hours.  (Id. ¶ 8.)  WestCare proceeded to fulfill the requirements for obtaining a child care institution license for the assessment center on March 16, 2004.  (Id. ¶ 9.)

On or about May 27, 2004, ORS conducted an investigation into a complaint self-reported by WestCare and made by a female resident that a member of the facility's maintenance staff had engaged in inappropriate sexual contact with that resident.  (Id. ¶ 10.)  The results of that investigation revealed that, although a local background check had been performed by WestCare, a full national criminal background check for the maintenance worker had not been performed, which

---

[8] Aside from investigations by ORS, WestCare is actively monitored by Walker Solomon, DeKalb County DFCS Director, by his case managers and program administrators, and by a private consultant retained by DHR.  Solomon Aff. ¶ 10.

would have revealed a prior criminal record; the investigation also uncovered WestCare's failure to report an allegation made against the same worker earlier that year.  (Id.; Solomon Aff. ¶ 14.)  In response, the maintenance worker was fired and shortly thereafter WestCare replaced the program director at the facility.  (Solomon Aff. ¶¶ 15, 25.)  In addition, ORS assessed a civil penalty against WestCare for the regulatory violations.  (Rotter Aff. ¶ 10; Solomon Aff. ¶ 15.)  All WestCare employees have now undergone a complete local and national criminal background check.  (Solomon Aff. ¶ 16.)

On September 22, 2004, DHR Commissioner B. J. Walker was contacted by DeKalb County Chief Juvenile Court Judge Robin Nash about two incidents on September 20 and 21, 2004 which occurred at the WestCare facility (these are the incidents involving the DeKalb school officials referred to by Plaintiffs).[9]  (See Affidavit of Steven E. Love ("Love Aff.") ¶ 5, attached as State Defs.' Ex. 8; Rotter Aff. ¶ 11; Solomon Aff. ¶ 17.)  A decision was quickly made to put together a team to conduct an unannounced inspection of WestCare to determine whether

---

[9] The claims made by the DeKalb school officials to Judge Nash are disputed, at least in part, by DeKalb DFCS Director Solomon, who was never contacted by any school official or law enforcement officer concerning any perceived safety concerns at WestCare. (Solomon Aff. ¶ 22.)  Nevertheless, as stated herein, the DHR Commissioner and high ranking DFCS officials took the claims seriously and made special efforts to ensure that children at the facility were not at risk. (Solomon Aff. ¶ 20, Rotter Aff. ¶ 11; Love Aff. ¶ 5).

any of the children in the facility were at risk. (Love Aff. ¶ 5; Solomon Aff. ¶ 20.)

That team included the Acting Director of DFCS, the DFCS Deputy Director, the

ORS Director, the DFCS Social Services Director, the DFCS Field Operations

Director, and the Director of the DeKalb County DFCS office. (Love Aff. ¶¶ 5-7;

Solomon Aff. ¶ 21.) The inspection which occurred on September 25, 2004,

included a physical inspection of the facilities, as well as interviews of both staff

and residents. (Love Aff. ¶ 8; Rotter Aff. ¶ 11; Pls.' Ex. 23 at 23-9 to 23-12.) At

the time of the unannounced visit, it appeared that there were no children present at

the assessment center in excess of 23 hours, even though WestCare is now licensed

to handle any "overflow" of children from the assessment center.[10] (Pls.' Ex. 23 at

23-14 to 23-15.)

After the inspection and interviews, the DHR team met and concluded that

the children at WestCare were not at risk and were safe at the facility. (Love Aff. ¶

9; Rotter Aff. ¶ 11; Solomon Aff. ¶ 21.) Commissioner Walker and Acting DFCS

---

[10] The issue of the length of stay for children at WestCare is not an issue under the control or responsibility of WestCare; DeKalb County DFCS is responsible for locating and matching placement for the children. (Solomon Aff. ¶ 12.) The earlier problem in some children staying beyond the 23-hour period was due to two factors. First, some children were difficult to assess within the time necessary to move then to an appropriate placement. (Id. ¶ 10.) Second, many of the children staying beyond the 23-hour period at WestCare had disruptions at prior placements. (Id.) Actions taken by DeKalb DFCS have alleviated both problems without forcing children into inappropriate placements. (Id. at ¶¶ 10-11.)

Director Love determined that the facility should not be shut down and that children should not be barred from the facility. (Love Aff. ¶ 9.) Walker and Love determined that both ORS and the DeKalb County DFCS office should intensify their monitoring of WestCare, and that a new Request for Proposals (RFP) for the operation of the facility should be accelerated. (Id.) Although WestCare has made some improvement in past months, DeKalb DFCS Director Solomon, who is working on the development of the new RFP, still has concerns about WestCare's performance (WestCare is on a month-to-month contract) due to issues raised by the consultant retained by DHR to monitor WestCare's performance on a quarterly basis, and WestCare's operations will continue to be scrutinized by Solomon and the consultant. (Solomon Aff. ¶¶ 22-26.)

### III.   ARGUMENT AND CITATION OF AUTHORITIES

A.   Plaintiffs' motion violates this Court's July 30, 2004, Order, Local Rule 26.2 of this Court, and Fed. R. Civ. P. 34, and it constitutes the first in a series of new discovery requests that will result in a significant delay of these proceedings.

The re-opening of discovery by this Court on July 30 was for the limited purpose of updating discovery previously obtained. As shown by Exhibit 25 to Plaintiffs' brief in support of their motion, Plaintiffs waited until two weeks before the end of this supplemental discovery period (and two months after the deadline for serving new discovery requests) to seek agreement from State Defendants to

1407042_1.DOC

-14-

undertake what would have been a second "re-opening" of discovery. However, unlike the limited discovery ordered by the Court on July 30, Plaintiffs were not seeking to "update discovery previously obtained in this case," but rather were seeking to gain consent within a ridiculously short period of time for an unprecedented expansion of discovery, to wit: (1) an unannounced inspection of WestCare by a new and unidentified expert retained by Plaintiffs for such purpose, (2) interviews by such expert, outside the presence of any attorneys,[11] of children both residing at WestCare and others who at one time were present at WestCare, and (3) access to class members who reside or had resided in 33 separate congregate care placements or foster care homes (regardless of whether those placements or homes were still open), as well as 40 additional class members who are in a variety of unspecified placements, for interviews by one or more Plaintiffs' counsel, again without the presence of a representative or a counsel for State Defendants. Agreement was demanded for all of these last-minute requests within a matter of days. The WestCare inspection and interviews were sought to be conducted two weeks thereafter, and all the remaining interviews of what could

---

[11] Although Plaintiffs originally sought to have their expert interview these children "without attorneys from either side," (Pls.' Ex. 25 at 2), Plaintiffs' motion now asks that their counsel also be authorized to meet "in private" with any such child. Counsel for State Defendants would be barred from being present at any such requested interviews under either of Plaintiffs' options.

number hundreds of children at untold numbers of settings were to be completed between the Thanksgiving and Christmas holidays. With respect to the WestCare inspection and interviews, Plaintiffs did not bother to contact the attorney for WestCare to gain that private facility's permission, even though Plaintiffs previously negotiated the production of documents with that private counsel in accordance with a subpoena previously served on WestCare.

Plaintiffs' motion with respect to WestCare, which is but "Round One" of what they admit is more to come, violates the limited terms of the re-opening of discovery authorized by this Court's July 30, 2004, Order. As is evident by State Defendants' Exhibits 2 and 3 to this Response, Plaintiffs have been aware of incidents involving over-23-hour stays by children at WestCare and other specific incidents of which they now complain, for months, and could have sought the relief they now seek much earlier within the period authorized for additional fact discovery. Plaintiffs instead purposefully waited to spring their next unprecedented phase of expanded discovery upon State Defendants, and are now only beginning to parcel out their motions to the Court. Plaintiffs' effort is violative of this Court's Order and is the beginning of a slippery slope which, if acceded to, will necessarily delay the proceedings in this case.

Plaintiffs' motion also violates at least two local rules of this Court. Although not so styled, Plaintiffs' motion, filed two days from the conclusion of the period permitted for fact discovery, in reality constitutes a motion to extend the discovery period, which violates Local Rule 26.2B:

> Motions requesting extensions of time for discovery must be made prior to the expiration of the existing discovery period and will be granted only in exceptional cases where the circumstances on which the request is based did not exist or the attorney or attorneys could not have anticipated that such circumstances would arise at the time the Joint Preliminary Report and Discovery Plan was filed.

LR 26.2B, N.D.Ga. In this case, Plaintiffs have already sought (out of time) a re-opening of discovery, which was granted for a limited purpose. Plaintiffs were made aware of incidents occurring at WestCare through supplemental document productions, and could have sought additional discovery on these issues months ago. Given the facts which are discussed in this Response, as well as the fact that the previous period for limited discovery has now expired, this is hardly the "exceptional case" contemplated by the local rule where yet another expansion of discovery is warranted.

In addition, Plaintiffs' motion violates Local Rule 26.2C, which states in pertinent part:

> Any party who desires to use the testimony of an expert witness shall designate the expert sufficiently early in the discovery period to permit the opposing party the opportunity to depose the expert and, if

> desired, to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery
>
> Any party who does not comply with the provisions of the foregoing paragraph shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

LR 26.2C, N.D.Ga. Plaintiffs should not be permitted at this late date to name another expert, when a request to name an additional expert could have been made earlier based upon information in possession of Plaintiffs. See APA Excelsior III, L.P. v. Windley, 329 F. Supp. 1328, 1337-38 (N.D. Ga. 2004) (Story, J.) (permission to name expert witness denied at late date when information as to need should have been apparent earlier in discovery). It should be noted that Plaintiffs refused to even name their additional expert in their November 4, 2004, letter seeking consent for their one-sided interviews and inspection. It was only in their pending motion, filed after the deadline for submission of Plaintiffs' supplemental expert report, that Plaintiffs revealed the name of this additional expert.

Of course, if Plaintiffs are permitted at this late date to retain another expert, time must also be allotted for such expert to submit a report in accordance with Fed. R. Civ. P. 26(a)(2)(B), for State Defendants to obtain their own expert and to file their own report, and for additional expert discovery to occur after the filing of

the reports under Fed. R. Civ. P. 26(a)(4). This would necessitate an extension of dates for expert discovery and trial established in the July 30 Order.

Plaintiffs' motion also flies in the face of Fed. R. Civ. P. 34(a)(2), which authorizes a party to serve a request to permit entry upon property in possession or control of the party upon whom the request is served. The procedure for making such request is stated in Rule 34(b), and includes the setting forth of a reasonable time, place, and manner of making the inspection. The party upon whom the request is made shall serve a written response within 30 days after service, or in a shorter period of time as directed by the court. If objection is made to any part of the request, the party submitting the request may move for an order under Rule 37(a) with respect to any objection. Persons not parties may likewise be compelled to submit to an inspection as provided in Rule 45. See Fed. R. Civ. P. 34(c).

Plaintiffs' pending motion is an attempt at an "end around" of the specific requirements of Rule 34. As recognized by this Court:

> Under Rule 34, a party may obtain documents or permission to enter land for inspection by serving requests upon another party. A motion to the Court is not the proper method for obtaining the information plaintiff seeks. Rather, plaintiff must serve the requests upon defendant.

Bolin v. United States, No. 1:99-CV-335-MHS, 1999 U.S. Dist. LEXIS 19854, at *2 (N.D. Ga. July 16, 1999) (Shoob, J.). Plaintiffs never served a request for

inspection upon State Defendants or WestCare, and should not be permitted to evade the Federal Rules of Civil Procedure by the untimely filing of the pending motion.[12]

B.  Given State Defendants' responses to prior issues involving WestCare, the Motion for Inspection/Interviews is unnecessary.

Plaintiffs' attempt in their motion to cast aspersions upon State Defendants and to falsely accuse them of "breaking their promise" to the Court is unconscionable. As shown by the Affidavits of Mssrs. Love, Rotter, and Solomon, children are not at risk at WestCare, and State Defendants have responded to incidents there in a swift and reasonable manner.

When ORS learned of children staying in the assessment center portion of WestCare in excess of 23 hours, ORS's actions led WestCare to obtain a child care institution license for the assessment center, so that any child awaiting appropriate placement could receive necessary services. Plaintiffs failed to mention this fact in their supporting documents because to do so would have undermined their alleged main support for the need for an inspection, which is that WestCare has been

---

[12] Plaintiffs' letter to State Defendants on November 4, 2004, is not a Rule 34 request, but a demand that State Defendants consent to unreasonable terms that go beyond the scope of a proper Rule 34(a) request for inspection. Their pending motion is, in reality, a failed attempt at a "motion to compel" under Fed. R. Civ. P. 37(a)(2)(B), which can be filed only after the serving of a proper request to inspect property under Rule 34(a) and an objection to any or all of that request.

operating a "shelter." In fact, when children have previously remained at WestCare in excess of 23 hours waiting for a proper placement to become available, the actions of ORS and DeKalb DFCS resulted in WestCare providing the appropriate services for these children. Thus, after the child care institution license was obtained for the assessment center, no child at WestCare was ever in a situation analogous to that which existed when the DeKalb County emergency shelter was in existence. Indeed, when State Defendants' DFCS team conducted an unannounced on-site inspection of the WestCare facility in September 2004, there was no indication that any child was present at the assessment center beyond the 23-hour period. DeKalb County DFCS is closely monitoring the situation to ensure that no such sustained occurrences take place.

With respect to the other incidents complained of (all of which are now dated), State Defendants took reasonable actions to respond. As a result of the complaint against the maintenance worker for inappropriate contact with a resident, the worker was terminated and ORS imposed a civil penalty upon WestCare. When Judge Nash expressed concern to the DHR Commissioner about the DeKalb school official's reports of alleged activity at WestCare, the Commissioner assembled a team of high-ranking officials to conduct an unannounced inspection of the facility and interviews of residents and staff. These

officials concluded that children at WestCare were safe and not at risk. Finally,

efforts are underway to issue an RFP to find other providers who may be able to

operate the facility while, at the same time, WestCare's operation of the facility is

under regular supervision of DeKalb County DFCS and the monitor retained by

DHR.

There is no credible evidence to justify a private inspection of WestCare by

Plaintiffs' counsel and their newly named expert.

C.   In the event that the Court considers an inspection of WestCare is necessary, State Defendants would respectfully ask that the Court itself, rather than Plaintiffs' expert or counsel, conduct the inspection and/or interviews.

State Defendants firmly believe that they have, in good faith, responded to

the concerns that have been raised with the operation of WestCare fully and

effectively. Plaintiffs' untimely and unauthorized attempt to gain this Court's

permission to have a private and unaccountable inspection and interview of

residents and staff will result in additional disputes as to "who said what to whom,"

with the Court attempting to separate the wheat from the chaff.

If this Court has any concerns with the safety of children currently at

WestCare, State Defendants would invite the Court itself to conduct any inspection

and/or interviews it would deem appropriate at any time. State Defendants are

confident that, if the Court has any concerns remaining about the safety of children

at WestCare, it will be satisfied once it visits the facility.  State Defendants have little confidence in the results obtained by any inspection conducted by Plaintiffs' counsel or their own new expert, particularly if it is performed in secret without being witnessed by counsel or representatives of State Defendants.

      D.    <u>In the event that the Court permits Plaintiffs' expert and/or counsel to conduct an inspection of WestCare and/or interviews with staff and residents, State Defendants request that advance notice be given of any such inspection/interviews and that counsel for State Defendants have the right to be present at all such events.</u>

Plaintiffs' insistence on having an unannounced inspection of the WestCare facility and private interviews of residents and staff is unprecedented and unsupportable.  First, an unannounced inspection raises potential concerns of security of the facility as well as health and safety of the residents.  Advance notice is necessary to ensure that these concerns are appropriately addressed. Unannounced visits from third parties have the potential to be disruptive to both employees and residents from both a staffing and security standpoint, not to mention potentially antagonistic to the clinical goals established for the children.

Plaintiffs' argument that their new expert and attorneys should have the same right to an unannounced visit as State Defendants is disingenuous.  State Defendants are the regulators directly responsible for the children at the facility, and state regulations specifically authorize such inspections of such regulated

facilities by appropriate DHR officials. <u>See</u> Ga. Comp. R. & Regs. 290-9-2-.11 (application for license constitutes consent for DHR staff to enter premises at any time during normal business hours to determine compliance with regulations). That authorization does not authorize inspections by a private party.

Second, State Defendants should have the right to have representatives and counsel present at any interviews being conducted by Plaintiffs' counsel and/or expert. The credibility of the entire process would be undermined should Plaintiffs get unfettered and unsupervised access to staff and residents. Indeed, when the Court permitted the inspection of the Fulton and DeKalb County emergency shelters, State Defendants were given the express "right to be present at any interview of a staff member or a shelter resident" as long as the interview was not impeded. (State Defs.' Ex. 9 at 9.) State Defendants also had the right to be present for the shelter inspections. (<u>Id.</u> at 8.) The same right should be granted to State Defendants should any similar inspection and/or interviews be ordered at WestCare.

Finally, if Plaintiffs are given the right at this late date in the proceedings to name a new expert, in fairness, State Defendants request a reasonable period of time for State Defendants to retain their own expert to review the facility and treatment at WestCare, for the parties to file supplemental expert reports, and for

the parties to conduct supplemental expert discovery of the new experts, in accordance with the requirements of Fed. R. Civ. P. 26(a)(2)(B) and (a)(4).

IV.   CONCLUSION

Accordingly, for the above reasons, State Defendants respectfully urge the Court to deny Plaintiffs' Motion for Order Authorizing Interviews/Inspection.  In the alternative, State Defendants would respectfully request that the Court itself conduct any inspection or interviews deemed necessary or, if an inspection and/or interviews by Plaintiffs' new expert or attorneys is permitted, that State Defendants have the right to have representatives and counsel present at any inspection or interview at the facility, and that an extension of time be granted to permit State Defendants to retain their own expert, for the parties to file reports, and for additional expert discovery in accordance with Fed. R. Civ. P. 26.

This 29th day of November, 2004.

Respectfully submitted,

THURBERT E. BAKER
Attorney General
Georgia Bar No. 033887

KATHLEEN M. PACIOUS
Deputy Attorney General
Georgia Bar No. 558555

(Signatures continued on next page)

JOHN C. JONES
Senior Assistant Attorney General
Georgia Bar No. 401250

Department of Law
State of Georgia
40 Capitol Square, S.W.
Atlanta, GA  30334-1300
Telephone: 404/463-8850
Facsimile: 404/651-5304

Suite 921
315 West Ponce de Leon Avenue
Decatur, GA  30030
Telephone: 404/373-2531
Facsimile: 404/373-3620

Troutman Sanders LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308
Telephone: 404/885-3597
Facsimile: 404/962-6753

EDDIE SNELLING, JR.
Senior Assistant Attorney General
Georgia Bar No. 665725

JEFFERSON JAMES DAVIS
Special Assistant Attorney General
Georgia Bar No. 210650

MARK H. COHEN
Special Assistant Attorney General
Georgia Bar No. 174567

**Attorneys for State Defendants**

## CERTIFICATION AS TO FONT

Pursuant to N.D. Ga. Local Rule 7.1 D, I hereby certify that this document is submitted in Times New Roman 14 point type as required by N.D. Ga. Local Rule 5.1(b).

Mark H. Cohen

CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and

foregoing **State Defendants' Response to Plaintiffs' Motion for Order**

**Authorizing Interviews/Inspection**, properly addressed upon the following

counsel of record in the manner indicated below:

Marcia Robinson Lowry, Esq.
Ira P. Lustbader, Esq.
Douglas C. Gray, Esq.
Children's Rights, Inc.
404 Park Avenue South, 11th Floor
New York, NY 10016
(By UPS Next Day Delivery)

Jeffrey O. Bramlett, Esq.
Gordon L. Hamrick, IV, Esq.
Bondurant, Mixson & Elmore, LLP
3900 One Atlanta Center
1201 W. Peachtree Street
Atlanta, GA 30309
(By Hand Delivery)

Willie J. Lovett, Jr., Esq.
Rolesia Butler Dancy, Esq.
Office of the County Attorney
141 Pryor Street, S.W., Suite 4038
Atlanta, GA 30303
(By Hand Delivery)

Vivica M. Brown, Esq.
Senior Assistant County Attorney
The Maloof Center, 5th Floor
1300 Commerce Drive
Decatur, GA 30030
(By Hand Delivery)

J. Timothy Mast, Esq.
McKenna, Long & Aldridge LLP
303 Peachtree Street, N.E.
Suite 5300
Atlanta, GA 30308
(By Hand Delivery)

This 29th day of November, 2004.

_Mark H. Cohen_

Mark H. Cohen