

FILED IN CLERK'S OFFICE
U.S. ___ Atlanta

DEC - 2 2004

LUT
By: ___, Clerk
Deputy Clerk



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

```
-------------------------------------------x
KENNY A., by his next friend,              )
Linda Winn; et al.,                        )
                                           )
                    Plaintiffs,            )
                                           )
        vs.                                )    Civil Action No. 1: 02-CV- 1686-MHS
                                           )
Sonny Perdue, in his official              )
capacity as Governor of the                )
State of Georgia; et al.                   )
                                           )
                    Defendants.            )
-------------------------------------------x
```

## REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' MOTION
## FOR ORDER AUTHORIZING INTERVIEWS/INSPECTION

Marcia Robinson Lowry (*pro hac vice*)
Ira P. Lustbader (*pro hac vice*)
Douglas C. Gray (*pro hac vice*)
Erik S. Pitchal (*pro hac vice*)
CHILDREN'S RIGHTS
404 Park Avenue South, 11th Floor
New York, NY 10016
(212) 683-2210
FACSIMILE (212) 683-4015

Jeffrey O. Bramlett
Georgia Bar No. 075780
Gordon L. Hamrick
Georgia Bar No. 322075
BONDURANT, MIXSON &
    ELMORE, LLP
3900 One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA 30309
(404) 881-4100
FACSIMILE (404) 881-4111

# Table of Contents

Preliminary Statement ................................................................................... 1

Argument ......................................................................................................... 4

    1.  The Relief Sought Is Timely and Should Not Be
       Used by State Defendants as a Basis for Delaying Trial ............ 4

    2.  Under the Facts Presented, Formal Discovery
       Requests Would Have Been Inappropriate and
       Unavailing and There Is No Basis For Requiring
       Them as a Prerequisite to this Motion ........................................ 8

    3.  State Defendants' Self-Serving Assertions That They
       Reacted Appropriately to Certain Concerns Involving
       WestCare Provide No Basis Whatsoever for
       Precluding Plaintiffs' Requested Access to Class
       Members and the WestCare Facilities ....................................... 11

    4.  The Procedures Proposed by Plaintiffs for Conduct
       of the Interviews/Inspection Are Appropriate ......................... 12

Conclusion .................................................................................................... 15

Table of Authorities

*APA Excelsior III L.P. v. Windley*, 329 F. Supp. 1328
(N.D. Ga. 2004) .................................................................................. 8

*McKesson v. Islamic Republic of Iran*, 185 F.R.D. 70
(D.D.C. 1999) ................................................................................... 15

*Morales v. Turman*, 59 F.R.D. 157 (E.D. Tex. 1972) .................................... 10

*New York State Assoc. v. Casey*, 706 F.2d 956
(2d Cir. 1983) ................................................................................... 10

Fed. R. Civ. P. 34 .................................................................................. 9

Fed. R. Civ. P. 45 .................................................................................. 9

Local Rule 26.2B .............................................................................. 7, 8

Local Rule 26.2C .................................................................................. 8

Plaintiffs Kenny A. *et al.* respectfully submit this brief in reply to the opposition of State Defendants and Third-Party WestCare Georgia, Inc. ("WestCare"; collectively, "Respondents") and in further support of their Motion for an order authorizing private interviews by Plaintiffs' consulting expert with certain Plaintiff foster children currently or recently placed at the WestCare Assessment Center and the DeKalb Children's Center (together, the "WestCare facilities") and a contemporaneous walk-through inspection by Plaintiffs' consulting expert of the facilities (the "Motion"). The Motion also seeks an order permitting these same Plaintiff foster children to speak in private with the undersigned attorneys, if they so desire.

## **Preliminary Statement**

State Defendants and WestCare do not seriously dispute the factual underpinnings of Plaintiffs' Motion. Respondents instead argue that the Motion is untimely; that the relief requested is unnecessary because of the self-proclaimed adequacy of certain actions State Defendants assert were taken to address problems at the WestCare facilities; and that the relief requested is overbroad. These arguments are without merit and should be rejected.

*First*, Respondents contend that the Motion is untimely because of prior notice to Plaintiffs of certain of the facts underlying it. Yet Plaintiffs were not able to obtain certain of the most compelling facts underlying the Motion until the weeks before it was

filed. These include, among other new evidence, reports of dangerous conditions from public safety officers accompanying children to the WestCare Assessment Center in late September (first identified by Plaintiffs through third-party discovery in late October); testimony from depositions of DFCS management taken in early November identifying actions taken in response to the September incidents; and certain policy changes, including most notably the diversion of children already in foster care in DeKalb county to group homes instead of the WestCare Assessment Center.

State Defendants also argue that the relief sought, if granted, will necessarily require an extension of the February 14, 2005 trial date. Plaintiffs submit that they will proceed under the existing trial date if the relief sought is granted, and the focused and self-contained discovery sought will not prejudice any party's ability to proceed under the current schedule. Disposition of this important case, filed on behalf of abused and neglected minor children, has already been delayed several times and should not and need not be delayed further.

*Second*, Respondents claim that the motion is premature in that it was not preceded by formally captioned discovery requests to State Defendants and WestCare and otherwise inappropriately packaged. This "form over substance" argument fails because it ignores the unavailability of traditional discovery modes for the relief sought;

-2-

that Plaintiffs first requested the relief at issue in this Motion in writing from State Defendants; that State Defendants objected to that relief in its entirety prior to this Motion; and that the Court has inherent power to manage discovery, scheduling and trial preparations in this civil rights case as circumstances require.

*Third,* State Defendants, after conceding much of the factual presentation made by Plaintiffs reflecting mounting and serious child safety issues at the WestCare facilities, claim in their brief and in new carefully-worded affidavits to have "responded to incidents [at WestCare] in a swift and reasonable manner" (*see* State Defendants' Br. at 20), and further argue that this somehow *precludes* Plaintiffs' request for access to their clients and the WestCare facilities to make their own determination on these issues. This argument is frivolous. The extent to which Plaintiff foster children may have been harmed and may be suffering harm presently and in the future – whether as a result of their placement in the WestCare facilities or State Defendants' reactions to the events of late September and/or by the continued gross shortage of foster placements for children in the DFCS system – is exactly what Plaintiffs are seeking to determine through the requested access to class members and inspection.

*Finally,* Respondents' objections to the scope of procedures requested by Plaintiffs for interviews and an attendant walk-through inspection by Plaintiffs'

-3-

consulting expert, and apparently also attorney-client discussions between Plaintiff foster children and their attorneys, are unfounded.  Plaintiffs' consulting expert and/or counsel are entitled to private interviews with class members.  Moreover, the record amply supports granting Plaintiffs the same unannounced access as provided to State Defendants under state regulations – the very unannounced access State Defendants' senior managers themselves used in September 2004 concerning WestCare and children living there.

Plaintiffs' Motion overwhelmingly supports the requested access to class members and the WestCare facilities and should be granted in its entirety.

## Argument

### 1.   The Relief Sought Is Timely and Should Not Be Used by State Defendants as a Basis For Delaying Trial

After a 10-page recitation of the facts that in many respects accords with Plaintiffs' factual presentation, State Defendants argue at length that the relief sought (i) is untimely under the Local Rules and the Court's July 30, 2004 Order and (ii) if granted, should delay trial.  (State Defendants' Br. at 14-20.)  These arguments are easily defeated.

The core of State Defendants' argument is the contention that Plaintiffs were on notice of at least some of the concerning (and now largely admitted) facts about

conditions at the WestCare facilities earlier in the supplemental discovery period, and

thus the Motion is untimely.[1]  The time-line largely speaks for itself on this issue:

- On or about August 30, 2004, Plaintiffs for the first time received limited documentation from State Defendants bearing on the overstays issue, though by that time children appear to have been routinely overstaying the 23-hour mark for at least eight months.

- On October 1, 2004, State Defendants produced certain by then long-overdue Office of Regulatory Services ("ORS") documents regarding the facilities that detailed additional concerning occurrences at WestCare, including a May 2004 incident involving substantiated sexual abuse of a resident by a WestCare employee who had a prior felony record that WestCare did not adequately check and who had been the subject of a prior resident complaint (a complaint that WestCare failed to report in accordance with state regulations). (*See* Reply Ex. 1; *see also* Plaintiffs' Br. at 16-17.)[2]

- On October 20, 2004, in response to a September 24 document subpoena, WestCare produced documents identifying for the first time an extraordinary number of runaways from the WestCare facilities in September of this year. (*See* Motion Ex. 13.)

- Thereafter, on October 21, 2004, following a document inspection at the Office of the Child Advocate the prior week, Plaintiffs first came into possession of a memorandum detailing the events of September 20, 2004 from the perspective of a public safety officer who refused to leave children at the WestCare facilities because conditions were so unsafe. (*See* Motion Ex. 22.)

---

[1] WestCare's response to the Motion echoes this argument. (WestCare Br. at 3-4.)

[2] Plaintiffs originally called for production of ORS documents for all private providers, including WestCare, in a document request served on April 16, 2003. (*See* Reply Ex. 2, Plaintiffs' Seventh Request for Production of Documents, Request No. 18.)  Despite a number of follow-up requests and purported supplementations of their responses to this request (including the Court-ordered August 2, 2004 supplementation), State Defendants failed to produce *any* ORS documents relating to WestCare until October 1, 2004, and only then in response to a targeted demand letter. (Reply Ex. 3, Letter from Ira Lustbader to Mark Cohen dated September 23, 2004.)

- It was not until the deposition of DeKalb DFCS Director Walker Solomon on October 26, 2004 – three weeks prior to the filing of the Motion – that Plaintiffs were in a position to question any State Defendant witness with relevant knowledge about the documents obtained to date, with telling results, including the revelation of a high-level unannounced DFCS site visit in response to the September incidents. During the course of a November 3 deposition of DeKalb DFCS Deputy Director Katherine Herren, Plaintiffs learned for the first time of State Defendants' decision to divert foster children whose placements disrupt away from the WestCare Assessment Center and into scattered group homes and other placements on an expedited basis and without further assessment. (*See* Motion Ex. 30 at 4.)

- On November 4, Plaintiffs served State Defendants with a letter requesting access to the WestCare facilities and to certain of the Plaintiff foster children currently and recently placed there. (Motion Ex. 25.) On November 8, State Defendants rejected the proposal. (Motion Ex. 14.)

- It was not until November 9 – only eight days prior to the filing of the Motion – that State Defendants first produced documents relating to the events of September 2004, including the e-mail exchange between Judge Nash and Commissioner Walker (*see* Motion Ex. 4) and the September 22, 2004 memorandum setting forth re-placement procedures for children coming from disrupted placements (*see* Motion Ex. 24).[3]

Given the critical evidence of escalating safety concerns at WestCare in September

2004 that Plaintiffs, acting with all due diligence, obtained from various sources for the

---

[3] State Defendants' relocation of children formerly placed at WestCare was and is of great concern to Plaintiffs, and establishing contact with these children – though glossed over by State Defendants – is a particular focus of the Motion. Though in his affidavit, DeKalb DFCS Director Walker Solomon contends that the overstays problem "is not a lack of adequate placements" (Solomon Aff. ¶ 10), there is ample evidence belying this, including State Defendants' own interrogatory responses and internal documents produced by State Defendants reflecting overcrowding of existing foster care placements. (*See* Reply Ex. 4, State Defendants' Responses and Objections to Plaintiffs' Third Interrogatories, Response No. 7 & Ex. B; Reply Ex. 5, E-mail from Jane Cooper

first time in late October and early November, Respondents' assertion of delay is unfounded.[4]

State Defendants also contend that the Motion represents a violation of Local Rule 26.2B in that it "in reality constitutes a motion to extend the discovery period . . ." (State Defendants' Br. at 17). As Plaintiffs have emphasized, including in the opening pages of their moving brief, trial in this action will show that the harm that necessitated this Motion is representative of harm presently being inflicted on numerous Plaintiff foster children in Fulton DFCS's and DeKalb DFCS's custody, as a result of an ongoing drastic shortage of appropriate placements for foster children. As such, it is vital that trial in this action, already delayed several times, proceed as scheduled on February 14, 2005, and in no way are Plaintiffs seeking to extend or expand general discovery or to delay trial.

---

dated October 4, 2004.)

[4] Importantly, in this Motion, Plaintiffs are only seeking interviews with a limited number of Plaintiffs and a walk-through inspection and staff interviews in connection with the WestCare facilities, all to be conducted by a consulting expert, and interviews between Plaintiffs' attorneys and those Plaintiff foster children that wish to speak with them. State Defendants conflate the limited access to class members at issue on this Motion concerning the WestCare facilities with Plaintiffs' separate request for State Defendants' voluntary cooperation in accessing certain other defined groups of class members. (See Motion Ex. 25; State Defendants' Br. at 15-16.) Though it is anticipated that the Court's response to this Motion will guide the parties with respect to Plaintiffs' other requests to talk to class members in preparation for trial, this additional request for access, also entirely manageable within the current trial schedule, is *not* the subject of this Motion.

-7-

Plaintiffs submit they will proceed with the trial as scheduled if the Motion is granted, and no argument by Respondents supports any delay of trial. To the extent that grant of the Motion requires amendment of the Court's July 30 Order pursuant to Local Rule 26.2B, for all the reasons identified above, Plaintiffs respectfully submit that they have acted at all times with required diligence and that this is an appropriate case for exception pursuant to the Local Rules.

Finally, for reasons already addressed, there is no basis for State Defendants' contention that Plaintiffs' designation of a consulting expert to conduct the requested interviews and inspection is untimely pursuant to Local Rule 26.2C. (State Defendants' Br. at 17-18.) Unlike in *APA Excelsior III L.P. v. Windley*, 329 F. Supp. 1328, 1337-38 (N.D. Ga. 2004), the need for designation of a consulting expert in this case was not and could not have become apparent to Plaintiffs earlier in discovery. Again, the circumstances identified in Plaintiffs' moving papers plainly justify the relief sought, and the grant of the limited relief sought should not disturb the established pre-trial schedule.

## 2. Under the Facts Presented, Formal Discovery Requests Would Have Been Inappropriate and Unavailing and There Is No Basis For Requiring Them as a Prerequisite to this Motion

State Defendants and WestCare both characterize Plaintiffs' application as a "motion to compel" and then contend it is premature as it was not preceded by a formal

-8-

request for inspection pursuant to Fed. R. Civ. P. 34 (for State Defendants) or Fed. R. Civ. P. 45 inspection subpoena (for WestCare). This argument also fails for a number of independently sufficient reasons.

*First*, it was certainly Plaintiffs' hope that with the cooperation of State Defendants and WestCare the Court's involvement could be avoided, but absent such agreement, no formal discovery device available (or even combination of devices) could have provided Plaintiffs with the relief they seek. The totality of the relief requested – private interviews by an expert with class member children in the legal custody of a party and on property owned by a party, but in the physical custody of a third-party – are simply not *explicitly* available pursuant to Rules 34 and 45. In short, once State Defendants indicated their unwillingness to permit and affirmatively facilitate the interviews and inspection, it became abundantly clear that the Court's intervention was needed.[5]

*Second,* even if this were a situation in which traditional extra-judicial discovery mechanisms were feasible, Respondents' position overlooks the exigencies present.

---

[5] This is especially so given State Defendants' disclaimer of the "authority to authorize a private inspection of the facilities or interviews of children within those facilities" (Motion Ex. 14), a position conspicuously absent from the responsive papers, but one which at the time raised the specter of a "shell game" between State Defendants and WestCare with respect to which, if any, party could provide the requested access.

Given the increasingly chilling evidence of harm to children, the essential need to prepare for trial under the existing schedule, and the real possibility that in seeking to "clear out" the WestCare Assessment Center State Defendants have only exacerbated problems for the population of Plaintiff foster children they seem to believe at least partially responsible for the deterioration of conditions at the WestCare facilities, it was entirely proper for Plaintiffs to proceed with this Motion.

*Third*, State Defendants' objection to the relief requested on the grounds that a formal discovery notice was not served is an elevation of form over substance that has little to do with the manner in which the parties have been proceeding in this case, as recognized by the Court in its July 30, 2004 Order approving additional depositions of the parties without formal notice. State Defendants cannot dispute that they received full and fair written notice of the relief requested and, given the grave nature of the issues involved, should not be heard to complain about the technical form of the request. Moreover, case law (which Respondents failed to address) calls for flexibility from the Court in construing the discovery rules where the civil rights of children in state custody are at stake. (*See* Plaintiffs' Br. at 25-27 (*citing New York State Assoc. v. Casey*, 706 F.2d 956, 960-61 (2d Cir. 1983); *Morales v. Turman*, 59 F.R.D. 157, 158 (E.D. Tex. 1972).)

*Lastly*, WestCare's assertion that Plaintiffs did not seek to confer with its attorney in good faith prior to the filing of this Motion is factually inaccurate[6] and in any case not a valid basis for denying the relief requested given that, upon State Defendants' blanket refusal of the requested access, WestCare was simply not in a position to provide Plaintiffs with the relief they required.

3.   **State Defendants' Self-Serving Assertions That They Reacted Appropriately to Certain Concerns Involving WestCare Provide No Basis Whatsoever for Precluding Plaintiffs' <u>Requested Access to Class Members and the WestCare Facilities</u>**

State Defendants have submitted a trio of carefully-worded new affidavits that admit to much of the factual grounds for this Motion, but then go on to say, in essence, "trust us – we are taking appropriate action." While this basic contention is easily

---

[6] WestCare states it was first informed about the interviews and inspection in a November 15, 2004 voice-mail to its counsel. (WestCare Br. at 2, n.1.) In fact, during a telephone conference occurring on November 1, Plaintiffs' counsel indicated to WestCare that Plaintiffs were considering interviews and an inspection as an option given the developing record. Moreover, WestCare fails to relate that WestCare's attorney was away on vacation, and by his own account unreachable, during the entire week of November 8-12; that the voice-mail identified was actually left for him on Friday, November 12, the final day of his vacation; and that the express purpose of the message was to alert WestCare to Plaintiffs' intention to seek interviews and an inspection and to invite a productive exchange between WestCare and Plaintiffs immediately upon his return to the office in hopes of narrowing the issues that Plaintiffs would need to bring to the Court. A productive exchange did not occur prior to the filing of Plaintiffs' Motion on Wednesday, November 17, due in part to WestCare's own scheduling issues, but under the circumstances Plaintiffs' attorneys' good faith in

contradicted, as will be shown at trial, it is frivolous for State Defendants to argue that their own self-serving characterizations of their response to the events at WestCare should preclude Plaintiffs' request for *access* to class members and the facilities in which State Defendants placed them so that Plaintiffs can themselves determine the impact of State Defendants' conduct on the safety and well-being of class members.

## 4. The Procedures Proposed by Plaintiffs for Conduct of the Interviews/Inspection Are Appropriate

Plaintiffs' Motion should be granted in full notwithstanding Respondents' objections to certain of the requested procedures for consulting expert interviews, attorney-client discussions, and the walk-through inspection. As a threshold matter, State Defendants have invited the Court to perform an inspection of the WestCare facilities in lieu of Plaintiffs' consulting expert. While Plaintiffs certainly have no objection to the Court inspecting the facilities and/or conducting interviews with Plaintiff foster children or staff, the State Defendants' request – in additional to being an inefficient use of judicial resources – misses the principal point of the Motion. The purpose of any site visit to WestCare by Plaintiffs' consulting expert would be to piece together what has been, and is now, happening to foster children currently or recently placed at the WestCare facilities. The inspection – while important to Mr. Trzcinski's

conferring with WestCare cannot reasonably be questioned.

development of a holistic understanding of the facilities – would serve principally to provide context to the interviews, both of the children currently located in the WestCare facilities and of the children previously residing in the who have since been moved to other placements.[7]   While Plaintiffs' attorneys wish to make themselves available for discussions with those Plaintiff foster children who would like to speak with them about their experiences and this litigation, in the interest of maintaining the integrity of the interview process and in hopes of conducting the interviews in the most efficient, most child-sensitive, and least disruptive manner possible, Plaintiffs have opted to have the interviews themselves conducted by a social work expert with extensive experience interviewing high-needs children and expertise in the operation of institutional placements.[8]   State Defendants' proposal to have the Court conduct the site visit is thus fundamentally inconsistent with what is being proposed.

Respondents have stated a number of further objections to the proposed procedures, none of which justify narrowing the scope of the relief requested by

---

[7] Plaintiffs envision that any site visit would commence with a discussion between WestCare management staff and Plaintiffs' consulting expert regarding how to conduct the inspection and interviews in the least disruptive manner possible.

[8] *See* Motion Ex. 26.  Plaintiffs' attorneys are not seeking to be present in the room for any consulting expert interviews with children or staff, only to observe the walk-through inspection of the WestCare facilities and to be on site and available should Plaintiff foster children wish to meet with them.

Plaintiffs. Though State Defendants claim a right to have "representatives and counsel present at any interviews being conducted by Plaintiffs' counsel . . ." (State Defendants' Br. at 24), they plainly have no right to take part in privileged meetings between Plaintiff foster children – members of a certified class – and their attorneys.[9]   Nor have State Defendants proferred any legitimate reason for interrupting Plaintiffs' consulting expert's ability to gather information in the least intimidating and most child-friendly manner possible – one-on-one interviews with class members.

Additionally, and though Plaintiffs have no objection to State Defendants receiving advance notice of the inspection (and have in fact proposed in their submitted order that they receive 48 hour advance notice, where feasible, of any site visit), or to State Defendants and WestCare representatives observing a walk-through inspection and staff interviews (to the extent staff would not prefer to speak with Plaintiffs' expert in private), Plaintiffs believe that the integrity of the interview and inspection process would be severely undermined by requiring advance notice of the site visit to WestCare (or permitting such notice to WestCare by State Defendants).  Plaintiffs maintain their request for the same access to Plaintiff foster children and to the WestCare facilities that

---

[9] State Defendants' reliance on the Court's ruling giving them certain rights in connection with the shelter inspections is clearly misplaced, given that those proceedings occurred well in advance of class certification.

-14-

the State Defendants themselves enjoy and have recently used. *See McKesson v. Islamic Republic of Iran*, 185 F.R.D. 70, 75-78 (D.D.C. 1999) (where inspection of an Iranian dairy property had been performed by an expert retained by defendant, the interests of fairness required defendant to arrange like access to the property for plaintiffs' expert).[10]

### Conclusion

For the foregoing reasons, Plaintiffs request that the Court grant their motion for interviews and inspection, issue the Proposed Order, and grant such other and further relief as to the Court seems just and proper.

Respectfully submitted this 2nd day of December, 2004

<div style="margin-left: 40%;">

Marcia Robinson Lowry (*pro hac vice*)
Ira P. Lustbader (*pro hac vice*)
Douglas C. Gray (*pro hac vice*)
Erik S. Pitchal (*pro hac vice*)
Children's Rights
404 Park Avenue South, 11th Floor
New York, New York 10016
(212) 683-2210

</div>

---

[10] State Defendants' request for permission to retain a rebuttal expert is difficult to square with the many assurances they extend as a result of their internal investigation of the WestCare facilities. In any case, grant of the request should not be grounds for delaying trial.

Jeffrey D. Bramlett, Georgia Bar No. 075780
Gordon L. Hamrick, IV, Georgia Bar. No. 322075
BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA 30309
404-881-4100

Counsel for Plaintiffs

-16-

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document has been prepared in compliance with LR

5.1B, NDGa.  The document has been prepared in Times New Roman 14 point.

This 2nd day of December, 2004.

_____
Gordon L. Hamrick
Georgia Bar No. 322075

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing **REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR ORDER AUTHORIZING INTERVIEWS/INSPECTION** upon counsel of record via facsimile and U.S. Mail delivery as follows:

| | |
|---|---|
| Eddie Snelling, Jr., Esq.<br>Senior Assistant Attorney General<br>40 Capitol Square, S.W.<br>Atlanta, Georgia  30334 | Vivica M. Brown, Esq.<br>DeKalb County Law Department<br>The Maloof Center, 5th Floor<br>1300 Commerce Drive<br>Decatur, Georgia  30030 |
| Willie J. Lovett, Esq.<br>Supervising Attorney<br>Office of the County Attorney<br>141 Pryor Street, S.W., Suite 4038<br>Atlanta, Georgia  30303 | Jefferson James Davis, Esq.<br>Special Assistant Attorney General<br>Suite 921<br>315 West Ponce de Leon Avenue<br>Decatur, Georgia  30030 |
| Mark H. Cohen, Esq.<br>Special Assistant Attorney General<br>Troutman Sanders LLP<br>5200 Bank of America Plaza<br>600 Peachtree Street, N.E.<br>Atlanta, Georgia  30308 | James Timothy Mast, Esq.<br>McKenna Long & Aldridge LLP<br>303 Peachtree St., Suite 5300<br>Atlanta, GA 30308 |

This 2nd day of December, 2004.

Gordon L. Hamrick
Georgia Bar No. 322075

-18-