IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

```
-----------------------------------------x
KENNY A., by his next friend,        )
Linda Winn; et al.,                  )
                                     )
                    Plaintiffs,      )
                                     )
        vs.                          )      Civil Action No.  1: 02-CV- 1686-MHS
                                     )
SONNY PERDUE, in his official        )
capacity as Governor of the          )
State of Georgia; et al.             )
                                     )
                    Defendants.      )
-----------------------------------------x
```

## ORDER FOR FINAL APPROVAL OF CONSENT DECREES

The Plaintiff Class and Defendant Fulton County have jointly moved the Court to grant final approval of the settlement agreement embodied in the terms of the proposed Consent Decree attached to this Order as Exhibit 1 (the "Fulton Consent Decree"). Likewise, the Plaintiff Class and Defendant DeKalb County have jointly moved this Court to grant final approval of the settlement agreement embodied in the terms of the proposed Consent Decree attached to this Order as Exhibit 2 (the "DeKalb Consent Decree").

By Order dated February 14, 2006, this Court granted preliminary approval of the Fulton Consent Decree. By Order dated March 24, 2006, this Court granted

preliminary approval of the DeKalb Consent Decree.  The Court scheduled a

hearing on May 16, 2006 to consider whether each of these proposed settlements is

fair, reasonable, and adequate.  The Court, having conducted that hearing, now

makes the following Findings of Fact and Conclusions of Law in support of the

final approval of these Consent Decrees.

FINDINGS OF FACT

1.

The above-referenced action was initially filed by Plaintiffs in the Superior

Court of Fulton County asserting systemic deficiencies in foster care in Fulton and

DeKalb Counties and seeking declaratory and injunctive relief under federal and

state law.  All Defendants joined in removing the case to federal court.

2.

Plaintiffs' claims against Defendants Fulton County and DeKalb County (the

"County Defendants") centered on their allegation that the County Defendants had

failed to provide adequate and effective assistance of counsel to children in foster

care in Fulton and DeKalb Counties, and that these failures violated those

children's rights under the Georgia Constitution and statutes.[1]

---

[1] Plaintiffs also brought claims against the County Defendants relating to the
operation of emergency shelters in each county.  Those emergency shelters have
since been closed, and those claims are not at issue in these settlement agreements.

3.

Throughout this litigation, the County Defendants have denied Plaintiffs' factual allegations and have denied violating Plaintiffs' constitutional rights.

4.

During four years of litigation, the parties have conducted comprehensive discovery, motion practice, and trial preparation. The Court has ruled on numerous motions, including motions to dismiss, various motions related to discovery, and motions for summary judgment. The Court previously certified a class of "All children who have been, are, or will be alleged or adjudicated deprived who (1) are or will be in the custody of any of the State Defendants; and (2) have or will have an open case in Fulton County DFCS or DeKalb County DFCS."

5.

On October 25, 2004, the Court referred this case to mediation and appointed Hon. Dorothy T. Beasley to serve as mediator. Judge Beasley presided over a months-long series of confidential mediation sessions between counsel for Plaintiffs and counsel for each County. The efforts of counsel for Plaintiffs and for each County, with the assistance of Judge Beasley, produced the two settlement agreements attached hereto, which were executed by the parties in February and March 2006, respectively.

6.

Based on this Court's familiarity with the long history of this case and on interim reports on the progress of the mediation this Court received both from Judge Beasley and from the parties, this Court concludes that the proposed settlements are the result of arms-length, good faith and intense negotiation, and are not a product of either collusion or fraud.

7.

The Consent Decrees attached hereto will substantially benefit the Plaintiff Class by committing Fulton County and DeKalb County, respectively, to make dramatic improvements in the provision of legal counsel to class member children.

8.

The Fulton Consent Decree requires Fulton County immediately to hire additional Child Advocate Attorneys and support staff, bringing the total number of Child Advocate Attorneys in Fulton County to twelve, along with two investigators and three support staff members.  The Decree requires Fulton County to establish a Fulton County Child Advocate's Office that is substantively independent of the Fulton County Juvenile Court.  It requires the County to contract with an independent agency to undertake a study of the workloads of Fulton County Child Advocate Attorneys, and to implement the workload

4

standards recommended at the conclusion of the study.  This workload study will be conducted by the University of Georgia's Carl Vinson Institute of Government, under the direction of Karen Baynes, a former juvenile court judge with substantial experience representing children.  The Decree also requires Fulton County to adopt and implement a detailed set of performance guidelines setting out minimum standards for the provision of legal services to class member children.

9.

Under the terms of the Fulton Consent Decree, the Court will appoint an independent, highly-qualified former Juvenile Court Judge in whom both Plaintiffs and Fulton County have a high degree of trust and confidence, Judge William Jones of Charlotte, North Carolina, to serve as the Court's Accountability Agent. Judge Jones will be responsible for investigating, verifying, and reporting on Fulton County's performance under the terms of the Consent Decree.  These reports will be compiled and released every six months and will be available to the Court and to the public.  To satisfy the terms of the Consent Decree, Fulton County will be required to achieve and to sustain compliance with the Consent Decree for eighteen months.

10.

The DeKalb Consent Decree requires DeKalb County to hire five additional full-time Child Advocate Attorneys within 120 days, and to hire an additional two full-time Child Advocate Attorneys by March 31, 2007. The Decree requires DeKalb County to ensure that none of its Child Advocate Attorneys handle more than 130 cases at a time. The Decree also requires DeKalb County to adopt and implement a detailed set of performance guidelines for Child Advocate Attorneys and to ensure that its Child Advocate Attorneys meet a detailed list of required responsibilities.

11.

The DeKalb Consent Decree contemplates that the Court will appoint Karen Baynes, the Associate Director of the Carl Vinson Institute of Government and a highly-qualified former juvenile court judge in whom both Plaintiffs and DeKalb County have a high degree of trust and confidence, as the Court's Compliance Agent. Ms. Baynes will be responsible for investigating, verifying, and reporting on DeKalb County's performance under the terms of the Consent Decree. These reports will be compiled and released every six months and will be available to the Court and to the public. The DeKalb Consent Decree will remain in force for a minimum of eighteen months. The Decree contains detailed provisions describing

6

the standards DeKalb County must meet in order to terminate its obligations under the Consent Decree.

12.

In its February 14 and March 24 Orders preliminarily approving these settlement agreements, this Court directed Fulton and DeKalb Counties, respectively, to notify class members and other interested persons and entities of the proposed settlements and fairness hearing.  On March 7, 2006, Fulton County filed an affidavit certifying its compliance with the notice provisions of the February 14 Order.  On April 10, 2006, DeKalb County filed an affidavit certifying its compliance with the notice provisions of the March 24 Order.

13.

The notices mailed to class members and interested parties by Fulton and DeKalb Counties described the procedure by which interested persons could file comments or objections to the proposed settlements with the Court or could request time to speak at the fairness hearing.  This Court did not receive any written comments or objections to either settlement, and did not receive any requests to speak at the fairness hearing.

14.

The settlement agreements reached by the parties include amounts of attorneys fees and reimbursement of expenses of litigation to be paid by each county to Class Counsel.  The parties' agreements relating to attorneys fees expenses through the date of final approval of the proposed Consent Decrees were described in the notices to class members and interested persons sent out by each county in accordance with Fed. R. Civ. P. 23(h)(1).  No person has objected to the amount of attorneys fees and expense reimbursements set by the parties.

## CONCLUSIONS OF LAW

1.

The issue for the Court to decide is whether the proposed settlements, each taken as a whole, are "fair, reasonable and adequate" from the perspective of absent class members whose rights and interests are to be bound by their terms. Fed.R.Civ.P. 23(e)(1)(C).  *See generally Manual for Complex Litigation, Fourth* § 21.634-.635.

2.

"[I]n class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). [2]  The Court's responsibility in Rule 23 fairness determinations is to "scrutinize the settlement for the existence of any fraud or collusion." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 305 (N.D. Ga. 1993), *citing Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The proponents of a settlement bear the burden of establishing fairness. *In Re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312, *citing In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1126 (7th Cir. 1979); *Manual for Complex Litigation, Fourth* at § 21.634.

3.

Rule 23 specifies procedural requirements for determining whether this burden has been met.   First, the Court is required to direct notice of the proposed settlement terms to class members in accordance with Fed.R.Civ.P. 23(e)(1)(B). Second, the Court is required to conduct a hearing pursuant to Fed.R.Civ.P. 23(e)(1)(C) at which objectors to the settlement are given reasonable opportunity to raise their concerns with the Court.  Finally, even where there are few

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to September 30, 1981.

objections, the Court is well-advised to make a "sufficient record as to the basis and justification for the settlement" and "specific findings as to how the settlement meets or fails to meet" the requirements of Rule 23. *Id.,* at § 21.635.

4.

The Court finds that the proposed settlements here were the result of intensive litigation and arm's length mediation, and pass scrutiny for fraud and collusion.

5.

If a proposed Rule 23 settlement passes scrutiny for fraud and collusion, courts in the Eleventh Circuit generally conduct a fairness evaluation by looking to a series of six factors that include: (1) the stage of the proceedings at which settlement was achieved; (2) the likelihood of success at trial; (3) the range of possible relief; (4) the point on the range at which settlement is fair, adequate, and reasonable; (5) the complexity, expense, and duration of litigation; and (6) the substance and amount of opposition to settlement. *See Bennett v. Behring Corp.,* 737 F.2d at 986; *In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. at 305; *In re Motorsports Merchandise Antitrust Litig.,* 112 F. Supp.2d 1329, 1333 (N.D. Ga. 2000). Applying these factors to the proposed settlements in this case, the Court finds the settlements are fair, reasonable and adequate.

10

6.

<u>The stage of the proceedings at which settlement was achieved</u>

This case has progressed to a stage where the Court, counsel, and affected

parties have had an ample basis upon which to evaluate the settlements.  Over the

past three years, the Court has carefully managed the progress of the case, decided

dispositive motions to dismiss and for summary judgment, and ruled on a variety

of discovery disputes.  All of this information and the Court's rulings are matters

of public record.  The class notice provided class members, their representatives,

and all affected parties with the means to access this information.  No one has

raised any complaint with respect to the adequacy of the case record.  The Court

finds that the proceedings have advanced to allow a full and fair assessment of the

settlements, and this factor weighs in favor of approval of the proposed settlement.

7.

<u>The likelihood of success at trial</u>

In evaluating likelihood of success in a proposed Rule 23 settlement, the

Court "has neither the duty nor the right to reach any ultimate conclusions on the

issues of fact or law which underlie the merits of the dispute." *In Re Domestic Air*

*Transp. Antitrust Litig.,* 148 F.R.D at 315.  "The very uncertainty of outcome in

litigation, as well as the avoidance of wasteful litigation and expense, lay behind

11

Congressional infusion of a power to compromise. This is a recognition of the

policy of the law generally to encourage settlements. This could hardly be

achieved if the test on hearing for approval meant establishing success or failure to

a certainty." *In Re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th

Cir. 1981).

8.

Again, the Court's previous supervision of this litigation makes the Court

well-positioned to evaluate the strengths and weaknesses of each party's respective

position. Comparing the litigation risks facing the class to the scope, substance,

immediacy, and certainty of relief promised in the proposed Consent Decree, the

Court concludes that this factor weighs in favor of the proposed settlement.

9.

<u>The range of possible relief</u>

If Plaintiffs prevailed at a trial on liability issues, the parties and the Court

would then be facing a second phase of litigation to determine the proper scope of

injunctive relief. The Court would be vested with broad equitable discretion to

fashion a remedy within the "inherent limitation upon federal judicial authority"

that requires tailoring any remedy imposed against a governmental unit to the

nature and scope of the constitutional violation. *Milliken v. Bradley*, 433 U.S. 267,

12

282 (1977).  However, the task of tailoring a remedy to the specific violation in contested proceedings would impose significant burdens on the Court and the litigants and may well divert governmental resources and energy that could be better applied to the immediate delivery of services to class members.

10.

The relief obtained in each of these proposed settlements is comprehensive, detailed, and favorable to class members.  Although the terms of the Fulton Consent Decree and of the DeKalb Consent Decree differ in several respects, the Court finds that these differences reflect an appropriate regard both for the differences in the current operational structure and performance of Child Advocate Attorneys in each county and for local officials' determinations concerning the structure and operations of local government.  The Court finds that the terms of each Consent Decree are structured to achieve provision of constitutionally-adequate and effective legal counsel to children in foster care in these Counties. This factor weighs in favor of approval.

11.

<u>The point on the range at which settlement is fair, adequate and reasonable</u>

The Court finds that the proposed settlements under consideration are comprehensive and detailed, and that each will result in substantial improvements

13

in the provision of legal services to class member children.  Particularly in light of

the contentiousness of this litigation and the novelty of the legal issues faced by the

parties, the Court finds that the results achieved for class members in these

settlements are extraordinarily favorable.  This factor too weighs in favor of the

settlement.

12.

The complexity, expense and duration of the litigation

"[C]lass action suits have a well deserved reputation as being most

complex." *Cotton v. Hinton,* 559 F.2d at 1331.  This case is certainly no exception.

Discovery with respect to Plaintiffs' claims against the two counties alone involved

extensive document production and depositions of six deponents over the course of

several years.  The parties thoroughly briefed novel legal and factual issues,

including the scope of Georgia's statutory requirement that counties provide legal

representation to children appearing before the Juvenile Court in deprivation and

termination of parental rights proceedings, and the application of Georgia's

constitutional right to effective assistance of counsel in the unique context of

Juvenile Court deprivation proceedings.  Given the complexity of these issues and

the further complexity of fashioning an appropriate injunctive remedy if Plaintiffs

had prevailed on the merits at trial, the time and resources needed to try this case

14

would have been considerable. Further, given the novelty of several of the key legal questions, it is likely that a lengthy appeals process would have further delayed the ultimate resolution of this case.

13.

Weighing the litigation risks and what would be a significant delay in commencement of any relief which might be ordered by the Court against the certain and immediate terms of the proposed Consent Decrees, the proposed settlements are in the best interests of the class, and this factor weighs in favor of approval of the settlements.

14.

The substance and amount of opposition to the settlement

As noted above, this Court has received no objections to these proposed settlements, despite the fact that each county mailed out literally thousands of notices to class members and other interested parties. The lack of opposition to the settlements obviously weighs in favor of approval.

15.

Attorneys' fees

Finally, the Court concludes that the amount of attorneys fees to be paid by the counties to Class Counsel under each settlement for work performed and

15

expenses incurred through the date of final approval of the Consent Decrees is reasonable in light of the complexity of this litigation, the risk of nonpayment, the substantial work done by Class Counsel, the amounts of capital invested by Class Counsel to prosecute these claims, the results achieved for the Plaintiff Class, Class Counsel's willingness to accept these amounts as set forth in the Consent Decrees, and each County's willingness to pay these amounts as set forth in the Consent Decrees.

## ORDER

Accordingly, for the foregoing reasons, the Court GRANTS the Joint Motion of Plaintiffs and County Defendants for Final Approval of Consent Decrees and DIRECTS the Clerk to enter the Consent Decrees attached hereto as Exhibits 1 and 2 as Orders of this Court.

SO ORDERED this ____ day of _____, 2006.

_____
MARVIN H. SHOOB, Senior Judge
United States District Court
Northern District of Georgia

## FORM OF ORDER JOINTLY PROPOSED BY:

Marcia Robinson Lowry *(pro hac vice)*
Ira P. Lustbader *(pro hac vice)*
Douglas C. Gray *(pro hac vice)*
Children's Rights
330 Seventh Avenue, 4th Floor
New York, New York 10001
 (212) 683-2210

Erik S. Pitchal *(pro hac vice)*
Lincoln Square Legal Services
33 W. 60th Street, 3d Floor
New York, NY 10023
(646) 312-8763

Jeffrey O. Bramlett
Georgia Bar No. 075780
Corey F. Hirokawa
Georgia Bar No. 357087
BONDURANT, MIXSON &
ELMORE, LLP
3900 One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA 30309
(404) 881-4100

**COUNSEL FOR
PLAINTIFF CLASS**

Willie J. Lovett, Jr., Georgia Bar No. 459585
Rolesia Butler Dancy, Georgia Bar No. 099928
Office of the Fulton County Attorney
141 Pryor Street, N.W.
Suite 4038
Atlanta, Georgia 30303
(404) 730-7750

**COUNSEL FOR DEFENDANT
FULTON COUNTY**

William J. Linkous, III
Georgia Bar No. 453213
Stephen E. Whitted
DeKalb County Law Department
1300 Commerce Drive
Fifth Floor
Decatur, Georgia 30030
(404) 371-3011

William R. Turner
Randy Turner, Attorney at Law, LLC
2265 Roswell Road, Suite 100
Marietta, Georgia 30062

**COUNSEL FOR DEFENDANT
DEKALB COUNTY**