IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

---

KENNY A., by his next friend, )
Linda Winn; et al., )
        )
        Plaintiffs, )
        )
    vs. )   Civil Action No. 1: 02-CV- 1686-MHS
        )
SONNY PERDUE, in his official )
capacity as Governor of the )
State of Georgia; et al. )
        )
        Defendants. )

---

## CONSENT DECREE

### 1. INTRODUCTION

Plaintiffs brought this class action lawsuit by the filing of a complaint on June 6, 2002, in the Superior Court of Fulton County, seeking declaratory and prospective injunctive relief against Defendants based upon alleged violations of constitutional and statutory rights arising out of the operation of foster care systems in Fulton and DeKalb Counties. Plaintiffs alleged both federal and state law claims. As relates to Fulton County, plaintiffs alleged that the County failed to provide adequate and effective legal counsel to plaintiffs in all deprivation and termination of parental rights proceedings, and that this failure violated plaintiffs' rights under the Georgia Juvenile Code and the Georgia Constitution. All Defendants joined in removing the case to this Court, invoking the Court's federal question jurisdiction and denying that they violated any constitutional or statutory obligations.

In order to resolve all issues pending between these parties without the expense, risks, delays and uncertainties of a trial and any appeals that might follow such a trial, Plaintiffs and Defendant Fulton County agree to the terms of this Consent Decree as stated below. By entering into this Consent Decree, Defendant Fulton County does not admit to the truth or validity of any claim made against them by Plaintiffs.

1

All parties acknowledge that the Court has jurisdiction over this case and authority to enter this Consent Decree and to enforce its terms. The Court shall retain jurisdiction of this matter to enforce this Decree in accordance with its terms.

## 2. DEFINITIONS APPLICABLE TO CONSENT DECREE

For purposes of this Consent Decree, the following terms have the meaning indicated below.

- A. "Business days" mean every day except Saturdays, Sundays and legal holidays, pursuant to O.C.G.A. § 1-4-1.

- B. "Calendar days" mean every day including Saturdays, Sundays, and legal holidays.

- C. "Child" or "children" or "class member children" or "class members" shall mean a child or children who have been, are, or will be alleged or adjudicated deprived who (1) are or will be in the custody of any of the State Defendants; and (2) have or will have an open case in Fulton County DFCS.

- D. "Child Advocate Attorney" means any attorney employed, contracted, subcontracted, or engaged by Fulton County to provide legal representation to class member children.

- E. "Day" or "days" mean calendar days unless otherwise indicated.

- F. "Fulton" or "the County" means defendant Fulton County.

- G. "Fulton DFCS" means the Fulton County Department of Family and Children Services. Fulton DFCS is a division of the State of Georgia Division of Family and Child Services, which in turn is a division of the State of Georgia Department of Human Resources, and is not a division of the Fulton County government.

- H. "State Defendants" means Defendants Sonny Perdue (in his official capacity as Governor of Georgia), the Georgia Department of Human Resources, B.J. Walker (in her official capacity as Commissioner of the Georgia Department of Human Resources), Fulton County Department of Family and Children Services, Debra Keyes (in her official capacity as Administrator of Fulton DFCS), DeKalb County Division of Family and Children Services, and Walker Solomon (in his official capacity as Director of DeKalb DFCS).

**3.     PRINCIPLES**

The parties to this Consent Decree agree that the following principles guide the provision of adequate, effective and zealous legal representation to children in deprivation and termination of parental rights cases. These principles are not separately and independently enforceable under the terms of this Consent Decree.

1. Class member children are entitled to receive adequate, effective, and zealous legal representation at all stages of deprivation and termination of parental rights proceedings throughout the time they are subject to the jurisdiction of the Fulton County Juvenile Court.

2. Child advocate attorneys should perform the basic tasks any trial lawyer would, including obtaining all court filings, attending all court appearances, filing motions, and being an active participant in all hearings and settlement discussions.

3. Child advocate attorneys should establish an attorney-client relationship and maintain that relationship throughout the duration of the representation.

4. Child advocate attorneys should investigate all cases through formal and informal discovery and other means, including updated investigations before all review hearings and other stages of a deprivation case.

5. Child advocate attorneys should be aware of all staffings, administrative reviews, family team meetings, special education conferences, and all other non-deprivation proceedings involving the child and should attend such meetings to the extent that the child advocate attorney, in the exercise of considered professional judgment, deems necessary or desirable.

6. Child advocate attorneys should advocate for the service needs of their clients and their client's families to further their client's safety, permanency, and well-being.

7. Child advocate attorneys should monitor their clients' status between court appearances, including the implementation of Juvenile Court orders benefiting their clients, the case plan, and issues relating to clients' foster care placement.

8. Child advocate attorneys should raise issues of DFCS's non-compliance with court orders, or other issues of concern, with appropriate decision-makers, including if necessary the Juvenile Court through appropriate motion practice.

9. Child advocate attorneys should file appeals when necessary and participate in appeals filed by DFCS or parents.

    10. Child advocate attorneys should attend to the possibility of conflicts and resolve them.

### 4. **FULTON COUNTY CHILD ADVOCATE'S OFFICE**

No later than January 31, 2006, Fulton County will establish a Fulton County Child Advocate's Office, which will employ Fulton County's Child Advocate Attorneys and their support staff. The Fulton County Child Advocate's Office will be a division of the Fulton County government and its substantive operations will be independent from the Fulton County Juvenile Court. The Accountability Agent shall verify and report on Fulton County's compliance with this provision no later than March 1, 2006.

### 5. **PERFORMANCE STANDARDS**

A. In order to ensure that all class member children are provided adequate and effective legal representation, Fulton County will adopt, and will ensure that all Child Advocate Attorneys employed or engaged to represent children in deprivation and termination of parental rights cases in Fulton County abide by, the principles, standards, policies, and procedures set forth in the "Guidelines for Fulton County Child Advocate Attorneys," attached hereto as Appendix A, which the parties agree reflect the principles listed in § 3.

B. If the ability of Fulton County child advocates to perform their responsibilities under the Guidelines set forth in Appendix A is impaired by any ongoing failure on the part of State Defendants, DHR or DFCS to provide child advocates with information necessary and appropriate to the performance of their responsibilities, Fulton County shall give prompt notice of the specifics of the informational problem to Class Counsel.

### 6. **MEASURING AND ENSURING MANAGEABLE WORKLOADS**

A. The parties agree that Child Advocate Attorneys cannot provide adequate and effective legal representation to children if they have unmanageable workloads. The parties further agree that the workloads of Child Advocate Attorneys in Fulton County should be measured so as to ensure adequate and effective legal representation, and that the County should adopt appropriate standards for ensuring that the Child Advocate Attorneys' workloads remain manageable.

B. By January 31, 2006, Fulton County will employ at least twelve full-time Child Advocate Attorneys to represent children in deprivation and termination of parental rights proceedings in Fulton Juvenile Court. Also by that date, Fulton

4

will employ at least 2 full-time investigators and 3 full-time support staff members to assist the Child Advocate Attorneys. The Accountability Agent shall verify and report on Fulton County's compliance with this provision no later than March 1, 2006.

C.  A comprehensive review of the workloads of Fulton County Child Advocate Attorneys (the "Fulton Workload Study") will be performed by the Carl Vinson Institute of Government ("CVIG") at the University of Georgia, under the direction of Karen Baynes. The Accountability Agent shall be involved in the design and methodology of the Fulton Workload Study at his discretion and in cooperation with CVIG. CVIG will keep the Accountability Agent informed of the ongoing process of the Fulton Workload Study. The Fulton Workload Study shall make recommendations to the Court and the parties concerning the appropriate standard(s) by which the workloads of Fulton Child Advocate Attorneys should be measured, whether by caseload counts or by another mechanism. The Fulton County Workload Study will review case volume, types of cases and their levels of difficulty, the use of volunteer lawyers, attorney experience level, support staff, equipment, technology and other factors which will substantially affect the workload of Fulton County Child Advocate Attorneys. Fulton County will cooperate fully with those performing the Fulton Workload Study in providing access to all documents and information those performing the Fulton Workload Study request in connection with the workload study, and will pay the fees and expenses incurred in connection with the study. The Fulton Workload Study will be completed, and a final report issued, no later than 120 days after commencement of the Fulton Workload Study. If additional time is needed to complete the Fulton Workload Study, Karen Baynes will notify the parties and the Court in a timely manner.

D.  If any party objects to the findings of the Fulton Workload Study, that party will notify the other party and the Court in writing within 15 days after the report is issued. If no party objects to the findings of the Fulton Workload Study, the workload standards recommended therein will be incorporated into this Consent Decree, and Fulton County will comply with those workload standards no later than 180 days after the Fulton Workload Study is issued.

E.  If any party objects to the findings of the Fulton Workload Study pursuant to paragraph D, the parties will promptly engage in good-faith negotiations concerning the appropriate workload standards to be adopted by the County. If the parties reach an agreement concerning workload standards, they will jointly file a motion to amend this Consent Decree to incorporate those standards. If no agreement has been reached within thirty (30) days after the issuance of the Fulton Workload Study, either party may file a motion asking the Court to set appropriate workload standards. If such a motion is filed, the burden will be on the party objecting to the Fulton Workload Study to demonstrate that the

workload standards recommended therein do not reflect reasonable workload standards and should not be incorporated into this Consent Decree. Fulton County will comply with the Court's ruling on workload standards within 120 days of said ruling, unless the Court specifies an alternative date for compliance.

7. **ACCOUNTABILITY**

   A.  The Court hereby appoints Judge William Jones of Charlotte, North Carolina, as the Court's independent Accountability Agent. In addition to his involvement in the Fulton Workload Study as described in § 6(C) above, and in addition to conducting the independent verifications called for in § 4 and § 6(B) above, the Accountability Agent shall conduct the factual investigation and verification of data and documentation necessary to compile and to issue public record reports on Fulton County's performance under the terms of this Consent Decree. These reports will be filed with the Court and provided to the parties. These reports will be issued at six-month intervals after the completion of the Fulton County Workload Study.

   B.  Fulton County shall ensure that all actions required under this Consent Decree for Plaintiff class members are documented within the individual child advocate attorney case file of each class member on a timely and accurate basis.

   C.  Fulton County will provide the Accountability Agent with access to information the Accountability Agent deems necessary to evaluate Fulton's performance, including without limitation case files and other records kept by the Child Advocate Attorneys or the County, data compiled or maintained by the Child Advocate Attorneys or the County, and interviews with Fulton Child Advocate Attorneys and their investigators and staff. The Accountability Agent will conduct case record and other reviews to fulfill his duties under this Consent Decree.

   D.  Fulton County will cooperate in seeking access for the Accountability Agent to Juvenile Court proceedings, records, and transcripts, and interviews with Juvenile Court personnel, to the extent that the Accountability Agent requests. Fulton County will assist the Accountability Agent in arranging interviews with the Fulton Child Advocate Attorneys' clients, with the permission of the client and of the Department of Family and Children's Services, to the extent the Accountability Agent requests.

   E.  Fulton County will provide the Accountability Agent with the necessary resources to perform his duties, including payment of his reasonable fees and expenses.

8. **ENFORCEMENT**

    A.  If Class Counsel form a reasonable belief that Fulton County is in violation of this Consent Decree, Plaintiffs may give notice to Fulton County in writing, and if so shall state with specificity the alleged noncompliance. Upon Fulton County's receipt of such notice, the parties will promptly engage in good-faith negotiations concerning the alleged noncompliance and appropriate measures to cure the alleged noncompliance. If the parties reach an agreement on curative measures, the parties will jointly notify the Court of such curative measures. If the parties have not reached an agreement on curative measures within thirty (30) days after Plaintiffs' notice to Fulton County, Plaintiffs may seek an appropriate judicial remedy with respect to the alleged non-compliance. The parties may extend this time period by agreement.

    B.  Class Counsel and their clients shall not issue a noncompliance notice or seek a judicial remedy for the first eight months after entry of this Consent Decree, except with respect to sections 4 and 6.B. of this Consent Decree. Nothing in this Consent Decree shall authorize or enable Class or its Counsel to initiate discovery without order of the Court following the filing of a motion by Class Counsel as authorized by the Federal Rules of Civil Procedure and the local rules of the Court.

9. **DURATION OF DECREE**

    A.  This Consent Decree shall remain in effect until Fulton County has remained in substantial compliance with all of the provisions of this Consent Decree including the workload standards that are incorporated into this Consent Decree pursuant to § 6 for a continuous period of eighteen (18) months beginning with the date on which Fulton County successfully complies with the workload standards incorporated into this Consent Decree pursuant to § 6.

    B.  For the purposes of paragraph A., Fulton County may make a motion to terminate jurisdiction at any time beginning eighteen (18) months after the date on which Fulton County comes into compliance with the workload standards incorporated into this Consent Decree pursuant to § 6. Plaintiffs will not oppose such a motion unless (1) Plaintiffs have issued a noncompliance notice pursuant to § 8 within the past eighteen months; (2) negotiations or agreed curative actions pursuant to § 8 have been ongoing during the past eighteen months; (3) the Court has ordered curative action in response to an enforcement proceeding within the last eighteen (18) months; or (4) any noncompliance motion is pending before the Court.

    C.  The parties intend that Fulton County will not request termination of jurisdiction prior to the time all conditions in this section have been satisfied, and further

intend that Fulton County may only request termination of jurisdiction under the terms of § 9 of this Consent Decree.

10. **MISCELLANEOUS PROVISIONS**

   A. Each party agrees that it will perform its obligations under this Consent Decree in accordance with all applicable laws.

   B. Unless otherwise provided in this Consent Decree, all notices under this Consent Decree shall be deemed duly given upon delivery by hand, or three days after posting, if sent by registered mail, return receipt requested. All notices under this Decree shall be provided to the party at the address set forth as follows:

   As to Plaintiffs:

   Marcia Robinson Lowry, Esq.
   Ira Lustbader, Esq.
   Children's Rights, Inc.
   404 Park Avenue South, 11th Floor
   New York, NY 10016
   Phone: (212) 683-2210
   Facsimile: (212) 683-4015
   E-mail: mlowry@childrensrights.org; ilustbader@childrensrights.org

   Jeffrey O. Bramlett, Esq.
   Bondurant, Mixson & Elmore, L.L.P.
   3900 One Atlantic Center
   1201 West Peachtree Street
   Atlanta, Georgia 30309
   Phone: (404) 881-4100
   Facsimile: (404) 881-4111
   E-mail: Bramlett@bmelaw.com

   As to Defendant Fulton County:

   Overtis Hicks Brantley
   Fulton County Attorney
   141 Pryor Street, N.W.
   Suite 4038
   Atlanta, Georgia 30303
   Phone: (404) 730-7750
   Facsimile: (404) 730-6324
   E-mail: overtis.brantley@co.fulton.ga.us

> For information purposes only:
>
> Chief Judge
> Fulton County Juvenile Court
> Judge Romae T. Powell Juvenile Justice Center
> 395 Pryor Street, S.W.
> Atlanta, Georgia 30312

C.  This Consent Decree constitutes the entire agreement between the parties with regard to the subject matters contained therein, and hereby supersedes all prior agreements, representations, statements, negotiations, and undertakings.

D.  All parties to the Consent Decree have participated in its drafting and, consequently, any ambiguity shall not be construed either for or against any party.

E.  If, for any reason, the Court fails or refuses to enter this proposed Consent Decree as signed by the authorized signatories, or as altered in accordance with their consent freely given prior to entry, then the proposed Consent Decree itself, and any agreement or statement contained in the proposed Consent Decree, is null and void and may not be enforced.

F.  Fulton County shall bear all costs of notice prescribed by the Court pursuant to Fed. R. Civ. P. 23 in connection with the process for final Court approval of this Consent Decree.

## 11. RELIEF FOR NAMED PLAINTIFFS

The parties agree that Class Counsel may contact the Fulton County Child Advocate's Office as necessary concerning any of the named plaintiffs in this action who are in the custody of Fulton County DFCS. Class Counsel and the Fulton County Child Advocate's Office will cooperate in advocating for the best interests of those named plaintiffs.

## 12. ATTORNEYS' FEES AND EXPENSES OF LITIGATION

The parties agree that, in the event that the Court grants final approval to this Consent Decree, Fulton County shall pay Class Counsel the sum of $153,000 in attorneys' fees for work performed and to be performed through the date of anticipated final approval of settlement, and expenses of litigation, including a reserve for anticipated expenses, in an amount not to exceed $21,000, for a total payment not to exceed $174,000, solely as those fees, expenses and costs relate to work done in class counsel's prosecution of the claims against Fulton County. All fees

and expenses shall be paid on or before the fifth (5th) business day following the Court's final approval of this settlement on behalf of the Plaintiff Class.

CONSENTED TO:

**For the Plaintiffs:**

_Marcia Robinson Lowry_  2/10/06
Marcia Robinson Lowry, Esq.  Date
Co-Lead Counsel

_Jeffrey O. Bramlett_  2·10-06
Jeffrey O. Bramlett, Esq.  Date
Co-Lead Counsel


**For Defendant Fulton County:**

_Overtis Hicks Brantley_  2-10-06
Overtis Hicks Brantley, Esq.  Date
Fulton County Attorney

11

## Appendix A

## GUIDELINES FOR FULTON COUNTY
## CHILD ADVOCATE ATTORNEYS

The Fulton County Juvenile Court recognizes the important role child advocate attorneys play in ensuring that the child's best interests are protected in court proceedings involving child abuse and neglect. Children lack the capacity to speak for themselves in court proceedings and need someone else to speak and act on their behalf. For that reason, the Court is committed to ensuring that children have access to adequate and effective child advocate attorneys. The Court is dedicated to ensuring that child advocate attorneys are diligent and knowledgeable professionals and that they have adequate resources to carry out their responsibilities.

Currently, there are no uniform standards for attorneys representing children in Georgia. Georgia law has no special requirements regarding quality, training or qualifications for child advocate attorneys. These guidelines were developed by the Court with three goals in mind. First, to outline the role of Fulton County child advocate attorneys. Second, to promote guidelines for the adequate and effective representation of children. Third, to ensure that child advocate attorneys are sufficiently trained and educated in the field of child representation.

The Court recognizes that every case is unique and will present its own difficulties and challenges. In addition, each child will have different needs and require different levels of advocacy. As a result, these guidelines are by no means an exhaustive listing of the responsibilities of child advocate attorneys. Instead, they provide a framework that will assure adequate and effective legal representation for children involved in child abuse and neglect proceedings in Fulton County Juvenile Court.

### I.   QUALIFICATIONS AND TRAINING

All Fulton County child advocate attorneys shall be an active member and in good standing with the State Bar of Georgia. In addition, all Fulton County child advocate attorneys shall have sufficient training. Training is especially important for child advocates due to the unique needs of children. Child advocate attorneys shall receive a minimum of four (4) hours of training each year in one or more of the following areas:

• role and responsibilities of the child advocate

• applicable laws governing child abuse, neglect, deprivation, foster care and termination of parental rights

- child development
- child abuse and neglect
- foster care
- domestic violence
- mental health
- ethical considerations which are unique to child law practice
- school law
- substance abuse
- custody-visitation
- adoption
- cultural and ethnic awareness
- social services programs and availability of community resources
- any other topic which the child advocate may select as helpful to a given caseload

The training need not be Georgia Continuing Legal Education (CLE) training, and may instead include formal or informal training from organizations such as Court Appointed Special Advocates (CASA), local public schools systems, mental health programs, DFCS, youth centers, and other community based agencies.

A certification of attendance or some other form of evidence of attendance at training shall be placed in the child advocate attorney's personnel file.

All Child Advocate Attorneys will also receive and be familiar with the Fulton County Child Advocate Attorney Trial Notebook.

In addition to the training listed above, attorneys for children are encouraged to join and participate in at least one professional group or organization that will be a resource for needed information about child advocacy. Such groups may include, National Court Appointed Special Advocates (CASA), the National Association of Counsel for Children (NACC), the Georgia Association of Counsel for Children, and State Bar committees focusing on child law issues.

## II. THE ROLE OF THE FULTON COUNTY CHILD ADVOCATE ATTORNEY

Georgia state law does not fully define the role of attorneys who represent children. In Fulton County, child advocate attorneys represent the best interests of the child, while at the same time representing the child's expressed preferences. This model allows the child to explain what he or she believes is in his or her best interests. If the child advocate determines that the child's expressed preference would be seriously injurious to the child (as opposed to merely

being contrary to the lawyer's opinion of what would be in the child's interests), the child advocate attorney may request appointment of a separate guardian ad litem and continue to represent the child's expressed preference as the child's attorney, unless the child's position is prohibited by law or without any factual foundation.

### III. DUTIES OF THE CHILD ADVOCATE

Child advocate attorneys are expected to provide adequate and effective legal representation. The work performance of each child advocate attorney will be evaluated annually pursuant to Fulton County's Personnel Regulations.

**A.  Initial Responsibilities**

1. Determine the facts of the case by interviewing the child, family members, caseworker, CASA volunteers, and others as necessary and appropriate.

2. Where appropriate and necessary to the case, obtain and review the court files and agency records of the child and any siblings; school records; medical records; social services records; psychiatric, psychological, and drug and alcohol records; law enforcement records; photographs; audio/videotapes and other physical evidence.

3. Where appropriate and necessary to the case, contact the attorney(s) for the biological parents, and other persons who are respondents to the case.

4. Where appropriate and necessary to the case, contact other individuals involved with the child such as school personnel, foster parents, neighbors, relatives, medical and mental health providers, family friends and any other potential witnesses or sources of information.

5. Meet with, observe, and establish and maintain a relationship with the child. Assess the child's needs and wishes with regard to the representation and the issues in the case, and explain the proceedings to the child according to the child's ability to understand.

6. Maintain available information concerning the child's location and contact information for the child and other necessary parties or witnesses readily accessible in the child's file. Take reasonable steps to ensure that the placement and contact information in the child advocate attorney's file is current.

7. Conduct additional investigation as determined to be necessary and appropriate to the case, in the exercise of the child advocate attorney's professional judgment.

3

B.  **Preparation for and Representation at Hearings**
   1. Participate as an attorney at all hearings concerning the child.
   2. Make informed recommendations for specific and clear orders for evaluation, services, and treatment for the child and the child's family.
   3. File all necessary pleadings and papers.
   4. Ensure that relevant testimony and documentary and physical evidence is introduced to the court and, when necessary, subpoena witnesses.
   5. Monitor the implementation of court orders and determine whether services ordered by the court for the child or the child's family are being provided in a timely manner and are accomplishing their purpose. Where necessary and appropriate, take steps to ensure compliance.
   6. Promote a cooperative resolution of the matter.
   7. Consult with other persons knowledgeable about the child and the child's family to identify the child's interests, current and future placements that would be best for the child, and necessary services for the child.
   8. Where necessary and appropriate for legal representation, attend all meetings involving the child.
   9. When appropriate, collaborate with the CASA to provide the best possible representation for the child.
   10. Inform the court of the child's wishes.
   11. Adequately maintain case file.
   12. Explain to the child the disposition of his or her case.

C.  **Post Dispositional Representation**
   1. Inform the child of his or her right to appeal.
   2. Exercise child's right to appeal, if under the reasonable judgment of the attorney, an appeal is necessary.
   3. Where necessary and appropriate, represent the child's interests in an appeal filed by another party.
   4. Discuss the end of the legal representation with the child and determine what contacts, if any, the attorney and child will continue to have.

IV. **CONFLICTS OF INTEREST**

Child advocate attorneys should decline to represent children in conflict of interest situations, including in the following circumstances:

    i. The attorney, or other child advocate attorneys on staff in the Fulton Juvenile court, represents, or has represented, the biological parent in a deprivation proceeding.

    ii. Children in a sibling group have conflicting accounts of facts material to the deprivation or TPR determination.

    iii. Positions to be taken on behalf of children in a sibling group are mutually exclusive and conflict in a material way.