IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KENNY A., by his next friend, Linda : 
Winn, et al., :
  :
      Plaintiffs, :
  :
v. :     CIVIL ACTION FILE NO.
  :     1:02-CV-1686-MHS
SONNY PERDUE, in his official :
capacity as Governor of the State of :
Georgia, et al., :
  :
      Defendants. :
-----------------------------------------------:

## CONSENT DECREE BETWEEN PLAINTIFFS AND DEKALB COUNTY, GEORGIA

## 1.    INTRODUCTION.

This class action lawsuit began with the filing of a complaint on June 6, 2002, in the Superior Court of Fulton County. This case was removed to the United States District Court for the Northern District of Georgia. Generally, Plaintiffs have alleged that Defendants DeKalb County, Fulton County, and the State of Georgia are violating various constitutional and statutory rights of children in the custody of the respective Juvenile Courts of DeKalb and Fulton Counties and in the custody of the State of Georgia's foster care system. With respect to DeKalb County, specifically, Plaintiffs have alleged that DeKalb County is depriving such children of adequate and effective legal representation in violation of the Georgia Juvenile Code and the Georgia Constitution.

Defendant DeKalb County denies that it has violated the statutory or constitutional rights of any Class Member. Defendant DeKalb County does not admit liability under any theory by the execution of this Consent Decree, which is being entered in this case in order to compromise and resolve all issues pending between

Plaintiffs and Defendant DeKalb County and in order to avoid the time, expense, risks, delays and uncertainties of a trial.

## 2.     JURISDICTION.

The Parties acknowledge and agree that the Court has jurisdiction in this case and the authority to enter this Consent Decree.  The Court shall retain jurisdiction in this case to enforce this Consent Decree in accordance with its terms.

## 3.     DEFINITIONS.

For purposes of this Consent Decree, the following terms shall have the meaning indicated below:

**A.**     **"Case"** means, for caseload purposes, in accordance with Section 5, the open file of each Class Member.

**B.**     **"Class Member"** means, in accordance with the Court's Order, dated August 18, 2003, any child who has been, is, or will be alleged or adjudicated deprived who (i) is or will be in the custody of the State of Georgia, and (ii) has or will have an open case with the DeKalb County Department of Family and Children Services.

**C.**     **"Child Advocate Attorney"** means any licensed member of the State Bar of Georgia who is employed by, contracted with, or otherwise engaged, whether for pay or on a volunteer basis, by DeKalb County to provide legal representation to one or more Class Members.

**D.**     **"Compliance Report"** means the factual findings and report of the Compliance Agent.

**E.**     **"Day"** means a calendar day, including weekend days and legal holidays; provided, however, that any deadline created in accordance with this Consent Decree shall not end on a weekend day or legal holiday, but shall be extended to the next following day.

**F.**     **"DeKalb County"** means Defendant DeKalb County, Georgia, a political subdivision of the State of Georgia.

**G.** **"Reporting Period"** means the first six (6) months beginning 120 days after the date on which this Consent Decree is entered by the Court, and each six (6) month period thereafter until its termination in accordance with Section 11.

## 4.   BEST PRACTICES.

The Parties acknowledge that Class Members are entitled to adequate and effective legal representation at all stages of deprivation and termination of parental rights proceedings, as such proceedings are defined in accordance with the Georgia Juvenile Code, and throughout the time they are Class Members and subject to the jurisdiction of the Juvenile Court of DeKalb County. In order to provide Class Members with such representation, DeKalb County will adopt and implement the principles, standards, policies and procedures set forth in the following Best Practices documents:

1)   *Core Principles for Providing Quality Deprivation Representation Through DCCAC Advocacy Delivery Systems,* a copy of which is attached hereto as Appendix A;

2)   *DeKalb County Child Advocacy Center Performance Standards for Juvenile Advocacy Representation,* a copy of which is attached hereto as Appendix B; and

3)   *DeKalb County Child Advocacy Center Policies and Procedures,* a copy of which is attached hereto as Appendix C.

The Parties acknowledge and agree that the adoption and implementation of these Best Practices, along with the caseload standards to be implemented pursuant to Section 5, will provide the means for achieving Substantial Compliance with this Consent Decree. The Parties further acknowledge and agree, however, that DeKalb County shall be in Substantial Compliance with this Consent Decree when substantially in compliance with the obligations described at Sections 5 and 7.

## 5.   CASELOAD OBLIGATION.

**A.**   Within 120 days after the entry of this Consent Decree, DeKalb County shall ensure that no full-time Child Advocate Attorney is responsible for more than 130 cases at any given time. To the extent that DeKalb County engages less than full-

3

time attorneys, whether paid or on a volunteer basis, to provide representation to Class Members, the number of cases that such attorneys will be responsible for shall not exceed, on a proportionate basis, the maximum number of cases being handled by a full-time attorney. By way of example, a Child Advocate Attorney engaged to represent Class Members on a half-time basis will be responsible for no more than 65 cases at any given time.

**B.**     Within 120 days after the entry of this Consent Decree, DeKalb County will hire five (5) additional full-time Child Advocate Attorneys, so that the number of such full-time Child Advocate Attorneys, not including the Director, shall be nine (9). No later than March 31, 2007, DeKalb County will hire two (2) additional full-time Child Advocate Attorneys, so that the number of such full-time Child Advocate Attorneys, not including the Director, shall be eleven (11).

**C.**     The obligations contained in paragraphs A and B of this Section are separate and distinct obligations.

## 6.     **REPORTING REQUIREMENTS.**

DeKalb County shall provide to the Compliance Agent the following documents and information on the timetable set out below:

**A.**     A report showing (i) the number of Class Members then being represented by DeKalb County Child Advocate Attorneys, (ii) the number of Child Advocate Attorneys engaged full-time in such representation, (iii) the number of Child Advocate Attorneys engaged part-time in such representation, and (iv) the caseload of each Child Advocate Attorney. In addition, for each part-time Child Advocate Attorney, the report shall indicate whether the attorney is less than half-time, half-time, or more than half-time.

**B.**     Copies of all Child Advocate Attorney training and CLE records completed during the Reporting Period;

**C.**     Copies of all Child Advocate Attorney performance reviews and evaluations completed during the Reporting Period;

**D.**     Copies of any complaints alleging or appearing to allege inadequate and ineffective legal representation by a Child Advocate Attorney and documents

4

relating to any such complaint; and

**E.**     Copies of any updates or revisions to any of the documents attached hereto as Appendix A, B, or C adopted during the Reporting Period.

DeKalb County shall provide the Compliance Agent with the information in 6.A. above within 135 days after the entry of this Consent Decree.  Thereafter, DeKalb County shall provide the Compliance Agent with the above information for each Reporting Period not later than fifteen (15) days following the end of the Reporting Period.

In addition to the above reporting requirements, DeKalb County shall make additional documents and information available, at the Compliance Agent's request, in accordance with the terms of Section 8 of this Decree.

## 7.     RESPONSIBILITIES OF CHILD ADVOCATE ATTORNEYS.

Child Advocate Attorneys, in each instance of representing a Class Member, shall have the following responsibilities:

**1)**     To prepare for, attend and participate in all court-ordered, judicial hearings and proceedings; to stay as reasonably aware and informed as possible of the existence and outcome of non-judicial reviews, meetings and conferences; and to attend such non-judicial reviews, meetings, and conferences when necessary in the reasonable exercise of professional judgment.

**2)**     To prepare, make and/or file oral and/or written motions, and responses to same, when necessary in the reasonable exercise of professional judgment.

**3)**     To attend to the possibility and/or existence of professional conflicts of interest and the resolution of same.

**4)**     To investigate matters relevant to judicial proceedings affecting the legal interests of Class Member clients, including the formal process of propounding and responding to discovery, as well as informal investigation and discovery, and to conduct such investigation and discovery as is necessary in the reasonable exercise of professional judgment to adequately and effectively represent Class Member clients.

**5)**     To establish and maintain an attorney-client relationship with each Class Member client and to maintain such contacts with the client as are necessary in the reasonable exercise of professional judgment to ensure adequate and effective legal representation.

**6)**     To maintain contacts with social workers, service providers and family members, as reasonably possible, and as necessary to adequately and effectively represent Class Member clients.

**7)**     To monitor the implementation of Juvenile Court orders relating to the child, to raise issues of non-compliance, and to advocate the child's best interests with the Court and other judicial decision-makers, as necessary in the reasonable exercise of professional judgment.

**8)**     To participate in settlement negotiations as necessary in the reasonable exercise of professional judgment.

**9)**     To prepare, file and participate in appeals affecting the legal interests of Class Member clients as necessary in the reasonable exercise of professional judgment.

## 8.     **RESPONSIBILITIES OF THE COMPLIANCE AGENT.**

Karen Baynes shall serve as the Compliance Agent for this Consent Decree.  The Compliance Agent shall have the duties described in this Section 8.

**A.**     It shall be the responsibility of the Compliance Agent to (i) conduct an independent fact-finding review of the obligations described at Sections 5, 6 and 7, (ii) issue a Compliance Report of such factual findings, and (iii) review and report on curative plans as may be required in accordance with Section 9.

**B.**     Each Compliance Report shall be based on the contents of the Reporting Requirements described in Section 6, as well as whatever information and documents are otherwise obtained by the Compliance Agent in accordance with the terms and conditions of this Section.

**C.**     Each Compliance Report shall be issued simultaneously to counsel for the Class Members and counsel for DeKalb County.  Within 150 days after the entry of this Consent Decree, the Compliance Agent shall issue a Compliance Report addressing solely the caseload and staffing requirements of Section 5.  Thereafter, the Compliance Agent shall issue a Compliance Report not later than 90 days following the end of the immediately preceding Reporting Period.  DeKalb County and Class Counsel shall be jointly responsible for filing each Compliance Report with the Court within seven days of the Parties' receipt of the report.

**D.**     At all times during the Duration of this Consent Decree, DeKalb County shall ensure that the Compliance Agent is afforded the reasonable opportunity to review and obtain copies of such documents, including case file documents, as the Compliance Agent deems necessary to issue a Compliance Report in accordance with this Section 8.

**E.**     Notwithstanding other provisions of this Section 8,  DeKalb County will cooperate with the Compliance Agent, but shall not be responsible for ensuring the Compliance Agent's access to any Juvenile Court proceedings, transcripts, or other documents, and the County Attorney of DeKalb County shall not be prohibited from representing the Juvenile Court and any officials and employees thereof in any matter pertaining to the Compliance Agent's access to such proceedings, transcripts, or other documents.

**F.**     DeKalb County will cooperate with the Compliance Agent, but shall not be responsible for ensuring the Compliance Agent's interview of any person, including any Class Member.  In this regard, and as may be necessary on a case-by-case basis, DeKalb County will cooperate with the Compliance Agent to develop a protocol for the interview of Class Members, Child Advocate Attorneys and other officials and employees of DeKalb County; provided, however, that any and all such protocols shall ensure, at a minimum, (i) that the subject may refuse to be interviewed, and (ii) that the interview shall be only for the specific purpose of assessing DeKalb County's compliance with Sections 5 and 7 of this Consent Decree; provided, further, that in the case of any interview of any Child Advocate Attorney or other employee or official of DeKalb County, the Parties understand and agree than no such person may speak on behalf of DeKalb County.

**G.**     In addition to the responsibilities above, if the Compliance Agent forms a belief that the ability of DeKalb County Child Advocate Attorneys to perform their

responsibilities is being impaired by any ongoing failure of the State Defendants, DHR, or DFCS to provide child advocates with information necessary and appropriate to the performance of their responsibilities, the Compliance Agent shall describe the particulars of the perceived problem in her Compliance Report. Any such information in a Compliance Report shall be for information purposes only and shall not affect the measurement of DeKalb County's compliance with this Consent Decree.

## 9.   **ENFORCEMENT.**

**A.**    In the event that Class Counsel forms a reasonable belief that DeKalb County is not in Substantial Compliance with this Consent Decree, within ten (10) days thereafter, Class Counsel may give notice of an alleged violation to DeKalb County, in writing, to the DeKalb County Attorney, with copies to the Compliance Agent and the Director of the DeKalb County Child Advocacy Center, and shall state with specificity the acts and/or omissions involved in the alleged violation.

**B.**    When notice of an alleged violation is received, DeKalb County shall respond to Class Counsel, in writing, as soon as practicable, but not later than 30 days thereafter.  In its response, DeKalb County may (i) propose, without admitting the substance of the alleged violation, a curative plan to address and remedy the violation, or (ii) deny the existence of the alleged violation.

**C.**    If DeKalb County does not propose a curative plan, or if, after negotiation pursuant to paragraph D below, the Parties are unable to agree to a curative plan, Class Counsel may thereafter seek an appropriate judicial remedy; provided, however, that the County Attorney of DeKalb County and Class Counsel shall first meet, in person, and attempt to resolve the dispute and Class Counsel shall not seek a judicial remedy until (i) after such a meeting, or (ii) the 45th day following notice of the alleged violation.  In all cases where there is a dispute as to whether or not DeKalb County is in violation of this Consent Decree, the determinative measurement shall be Substantial Compliance with respect to the obligations described at Sections 5 and 7.

**D.**    If DeKalb County proposes a curative plan, Class Counsel shall either accept DeKalb County's proposal, or offer a counterproposal for a different or modified curative plan.  Any curative plan proposed or agreed to by the Parties must include a definite date by which the Compliance Agent will issue a Compliance Report of

factual findings relevant to showing the curative plan's effectiveness in curing the alleged violation; provided, further, that the term of the curative plan shall expire ten (10) days thereafter, unless Class Counsel shall have first notified DeKalb County, in writing, that the curative plan has not cured the violation, in which case the County Attorney of DeKalb County and Class Counsel shall meet, in person, and attempt to resolve the dispute regarding the effectiveness of the curative plan and Class Counsel shall not seek a judicial remedy until (i) after such a meeting, or (ii) the 15th day following the definite date for review of the curative plan. In all cases where there is a dispute as to whether or not a curative plan has succeeded in curing an alleged violation, the measurement shall be whether the curative plan has brought DeKalb County into Substantial Compliance with the obligations described at Sections 5 and 7.

**E.**     Unless the Parties explicitly agree otherwise, whenever the Parties may agree to the implementation of a curative plan, for purposes of the termination of this Consent Decree pursuant to Section 11, there shall be no presumption that DeKalb County was not in Substantial Compliance with Sections 5 and 7 at the time the curative plan was implemented; provided, further, with the implementation of any curative plan, the Parties may agree that the curative plan is not being implemented as a result of DeKalb County's failure to be in Substantial Compliance with Sections 5 and 7.

## 10.   **RELIEF FOR NAMED PLAINTIFFS.**

The Parties acknowledge and agree that Class Counsel may contact the Director of the DeKalb County Child Advocacy Center whenever Class Counsel deems necessary regarding any of the named Plaintiffs in this action, who are then in the custody of the DeKalb County Department of Family and Children Services. Class Counsel and DeKalb County will cooperate in advocating for the best interests of such named Plaintiffs.

## 11.   **DURATION OF CONSENT DECREE.**

**A.**     This Consent Decree shall terminate, and Class Counsel will not oppose its termination, when DeKalb County has been in Substantial Compliance with Sections 5 and 7 for three (3) consecutive Reporting Periods.

**B.**     At any time after the issuance of the Compliance Report for the third (3rd) Reporting Period, DeKalb County may move for the termination of this Consent Decree with respect to any or all of the obligations in Sections 5 and 7, even if DeKalb County has not been in Substantial Compliance with all provisions of Sections 5 and 7 for three (3) consecutive reporting periods.  In considering whether to grant DeKalb County's request, the Parties agree that the following factors shall be considered by the Court:

1)     The degree to which DeKalb County has achieved and sustained the delivery of adequate and effective legal representation to Class Members since the issuance of the Consent Decree;

2)     The potential impact of a partial termination on the delivery of legal services to Class Members;

3)     The demonstrated good faith of the Parties throughout the duration of the Consent Decree;

4)     Whether Class Counsel has complied with the notice requirement in Subsection 9(A);

5)     Whether any curative plan has been in effect during the previous eighteen (18) months, as well as the terms of any such plan and the efficacy of any such plan; and

6)     The Compliance Reports.

**C.**     In fashioning an order pursuant to a request under Subsection B, if the Court decides to continue the Consent Decree with respect to any or all of the obligations in Sections 5 and 7, the Parties agree that the Court may continue the Consent Decree for any specified period; provided, however, that nothing in this Subsection shall prevent an earlier termination of the Consent Decree pursuant to Subsection A or B.

## 12.     SUBSTANTIAL COMPLIANCE.

For purposes of any judicial proceeding to enforce or terminate this Consent Decree, the Parties recognize that the standards governing whether DeKalb County

has substantially complied with this Consent Decree are set out in *United States v. City of Miami*, 2 F.3d 1497 (11th Cir. 1993).  Applying that case, DeKalb County shall be considered to be in Substantial Compliance with this Consent Decree if (1) it has complied in good faith with the terms of the Consent Decree and (2) the basic purpose of the Consent Decree has been met.  For purposes of applying this standard, the Parties agree that the basic purpose of this Consent Decree is to ensure provision of adequate and effective legal representation to Class Member children throughout the time they have open cases before the DeKalb County Juvenile Court.  Furthermore, in determining whether DeKalb County has complied in "good faith" with the terms of this Consent Decree, whether the "basic purpose" of the Consent Decree has been met, and whether "adequate and effective legal representation" has been provided to Class Member Children, the Parties agree that the Court shall be guided by the reports and findings of fact of the Compliance Agent, Karen Baynes.

## 13.   **MISCELLANEOUS PROVISIONS.**

**A.**      This Consent Decree constitutes the entire agreement between the Parties and supersedes and replaces in their entirety all prior agreements, statements, representations, discussions and negotiations.

**B.**      Unless otherwise noted, all notices required or permitted under the terms and conditions of this Consent Decree shall be deemed given and received upon hand-delivery, confirmation of the receipt of a facsimile, or three (3) days after posting, if by U.S. Mail, return-receipt requested.  All notices shall be to the persons and addresses noted below:

**Class Counsel:**

Marcia Robinson Lowry, Esq.
Ira Lustbader, Esq.
Children's Rights, Inc.
330 Seventh Avenue
4th Floor
New York, New York 10001
212-683-2210
212-683-4015 (Facsimile)

Jeffrey O. Bramlett, Esq.
Bondurant, Mixson & Elmore, LLP
3900 One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia  30309
404-881-4100
404-881-4111 (Facsimile)

Erik S. Pitchal, Esq.
Lincoln Square Legal Services
33 W. 60th St., 3rd Floor
New York, NY 10023
646-312-8763
212-636-7349 (Facsimile)

**DeKalb County:**

County Attorney
DeKalb County Government
1300 Commerce Drive, 5th Floor
Decatur, Georgia  30030
404-371-3011
404-371-3024  (Facsimile)

Director
DeKalb County Child Advocacy Center
120 West Trinity Place
Decatur, Ga 30030
404-687-3705

**Compliance Agent:**

Karen Baynes
Carl Vinson Institute of Government
University of Georgia
201 North Milledge Ave.
Athens, GA 30602-5482

706-542-2736
706-542-9301 (facsimile)

**C.**    The Parties acknowledge and agree that all have participated in the drafting of this Consent Decree.  Accordingly, any ambiguity herein shall not be construed either for or against any Party.

**D.**    If, for any reason, the Court fails or refuses to enter this Consent Decree as signed by the Parties, or as altered by the Parties with their consent, then the Parties agree that this Consent Decree is null and void and shall not be enforced or used as evidence in any proceeding.

## 14.    COMPLIANCE AGENT COSTS AND EXPENSES.

DeKalb County shall pay the Compliance Agent $725.00 per day of work performed, up to a maximum charge of $37,500.00 per Reporting Period, for the services provided by the Compliance Agent.

## 15.    ATTORNEY FEES AND EXPENSES OF LITIGATION.

**A.**    The Parties agree that, in the event that the Court grants final approval to this Consent Decree, DeKalb County shall pay Class Counsel the sum of $175,000 in attorneys' fees, costs and expenses for work performed and to be performed through the date of anticipated final approval of settlement.  All fees and expenses shall be paid on or before the fifth (5th) business day following the Court's entry of this Consent Decree.

**B.**    DeKalb County will pay the costs of notice prescribed by the Court pursuant to Fed. R. Civ. P. 23 in connection with the process for final Court approval of this Consent Decree.

**C.**    DeKalb County will pay the mediator's fees and expenses associated with the mediation of this Consent Decree.

CONSENTED TO:

**For the Plaintiffs:**

_Marcia Robinson Lowry_                    3·22·06

Marcia Robinson Lowry, Esq.                 Date
Co-Lead Counsel


_Jeffrey O. Bramlett_                    3·22·06

Jeffrey O. Bramlett, Esq.                   Date
Co-Lead Counsel



**For Defendant DeKalb County:**

_William J. Linkous, III_                    3-23-06

William J. Linkous, III, Esq.               Date
County Attorney



14

## Appendix A

### CORE PRINCIPLES FOR PROVIDING QUALITY DEPRIVATION REPRESENTATION THROUGH DCCAC ADVOCACY DELIVERY SYSTEMS

1. The DCCAC Advocacy Delivery System Upholds a Juvenile's Right to Counsel Throughout the Deprivation Process and Recognizes the Need For Zealous Representation to Protect Children's Best Interest.

   A.  The DCCAC advocacy delivery system should ensure that child advocate attorneys are assigned at the earliest possible stage of deprivation proceedings.

   B.  The DCCAC advocacy delivery system recognizes that the deprivation process is adversarial and should provide children with continuous legal representation throughout the deprivation process including, but not limited to, adjudicatory hearing, pre-trial motions or hearings, disposition, post-disposition, review hearings, non-reunification hearings, termination of parental rights hearings, appeal, and sealing of records.

   C.  The DCCAC advocacy delivery system should include the active participation of the private bar or conflict office whenever a conflict of interest arises for the primary service provider.

2. The DCCAC Advocacy Delivery System Recognizes that Legal Representation of Children in Deprivation Matters is a Specialized Area of the Law

   A.  The DCCAC advocacy delivery system recognizes that representing children in deprivation proceedings is a complex specialty in the law and that it is different from, but equally as important as, the legal representation of adults.

   B.  The DCCAC advocacy delivery system model demonstrates that it respects its juvenile advocacy team members and that it values

1

the provision of quality, zealous and comprehensive deprivation representation services.

C. The DCCAC advocacy delivery system recognizes that deprivation representation is not a training assignment for new attorneys or future adult court advocates, and it requires effective attorneys to provide deprivation representation.

3.    The DCCAC Advocacy Delivery System Supports Quality Juvenile Deprivation Representation Through Personnel and Resource Parity

A.    The DCCAC advocacy delivery system encourages juvenile representation specialization without limiting attorney and support staff access to promotional progression, financial advancement, or personnel benefits.

B.    The DCCAC advocacy delivery system provides a professional work environment and adequate operational resources such as office space, furnishings, support staff, technology, confidential client interview areas, and current legal research tools.   The system includes juvenile representation resources in budgetary planning to ensure parity in the allocation of equipment and resources.

4.    The DCCAC Advocacy Delivery System Supervises Attorneys and Staff and Monitors Work and Caseloads

A.    The leadership of the DCCAC advocacy delivery system monitors advocacy counsel caseloads to permit the rendering of quality representation. The workload of DCCAC child advocate attorneys and support staff should never be so large as to interfere with the rendering of zealous advocacy or continuing client contact, nor should it lead to the breach of ethical obligations.

B.    Whenever it is deemed appropriate, the leadership of the DCCAC advocacy delivery system, in consultation with staff, may adjust attorney case assignments and resources to guarantee the continued delivery of quality child advocacy services in

2

deprivation matters.

5.   The DCCAC Advocacy Delivery System Supervises and Systematically Reviews Juvenile Advocacy Team Staff for Quality According to Appropriate Guidelines or Standards

A.   The DCCAC advocacy delivery system provides supervision and management direction for attorneys and all team members who provide deprivation representation services to children.

B.   The leadership of the DCCAC advocacy delivery system adopts guidelines and clearly defines the organization's vision as well as expectations for the delivery of quality legal representation.  These guidelines should be consistent with performance standards, measures or rules.

C.   The DCCAC advocacy delivery system provides administrative monitoring, coaching and systematic reviews for all attorneys and staff representing juveniles, whether contract advocates, assigned counsel or employees of advocacy offices.

6.   The DCCAC Advocacy System Provides and Supports Comprehensive, Ongoing Training and Education for All Attorneys and Support Staff involved in the Representation of Children.

A.   The DCCAC advocacy delivery system supports and encourages child advocacy team members through internal and external comprehensive training on topics, including, but not limited to, deprivation advocacy, litigation and trial skills, dispositional planning, post-dispositional practice, educational rights, appellate advocacy and administrative hearing representation.

B.   The DCCAC advocacy delivery system recognizes juvenile deprivation advocacy as a specialty that requires continuous training in unique areas of the law.  In addition to understanding the juvenile court process and systems and the laws and rules governing the deprivation process in Georgia, juvenile team members should be competent in the following areas:

3

1. State and federal child welfare laws, regulations, and entitlements
2. The *Kenny A.* Consent Decree between Plaintiffs and the State Defendants
3. Child and adolescent development
4. Communicating and building attorney-client relationships with children and adolescents
5. Community-based treatment resources and programs
6. Competency and capacity
7. Counsel's role in treatment and problem solving courts
8. Deprivation court/abuse and neglect court process, working knowledge of the Juvenile Justice system and the criminal justice system as applied to persons under the age of 21
9. Community-based services
10. DFCS's diversion or differential response system to CPS cases
11. Drug addiction and substance abuse
12. Ethical issues and considerations
13. Gender-specific programming
14. Immigration
15. Mental health, physical health and treatment
16. Racial, ethnic and cultural understanding
17. Role of parents/guardians
18. Sexual orientation and gender identity awareness
19. Special education
20. Zero tolerance, school suspension and expulsion policies

7. The DCCAC Advocacy Delivery System Must Promote Fairness and Equity For Children.

   A. The DCCAC advocacy delivery system should demonstrate strong support for the right to counsel and due process in court.

   B. The leadership of the DCCAC advocacy delivery system should advocate for positive change through legal advocacy, legislative improvements and systems reform on behalf of the children whom they serve.

4

C.     The leadership and staff of the DCCAC advocacy delivery system are active participants in the community to improve school, mental health and other treatment services and opportunities available to children and families involved in the child welfare system.

## Appendix B

## DEKALB COUNTY CHILD ADVOCACY CENTER PERFORMANCE STANDARDS FOR JUVENILE ADVOCACY REPRESENTATION

Practice in deprivation cases is unique and challenging, requiring specialized skills and knowledge to assure the best legal representation of clients.

The purpose of these standards is to provide child advocate attorneys with a general guide to appropriate and zealous advocacy on behalf of clients in juvenile court deprivation and termination of parental rights proceedings.

### Performance Standard 1: Obligations of the Child Advocate Attorney

The primary and most fundamental obligation of a child advocate attorney is to provide zealous and effective representation for his or her client's best interest at all stages of juvenile court deprivation proceedings. The advocate attorney's duty and responsibility is to promote and protect the child's best interest. If personal matters or conflicts in the dual role as Advocate and GAL make it impossible for the Advocate counsel to fulfill the duty of zealous representation, he or she has a duty to refrain from representing the client or to request that a separate Guardian ad Litem be appointed to represent the child's best interests.

Attorneys also have an obligation to uphold the ethical standards of the State Bar of Georgia and to act in accordance with applicable Court Rules.

Basic obligations of child advocate attorneys include:

a. Obtain copies of all pleadings, reports, motion papers, and other court filings.

b. Inform other parties and their counsel that you represent the child and expect reasonable notice before case conferences, changes of placement, and other changes of circumstances affecting the child and the child's family. The child's lawyer should be aware at all times of the placement location and contact information for the client, which should be displayed prominently and be easily accessible in the file.

1

c. Attend all court appearances.

d. Participate in settlement negotiations and otherwise attempt to expedite the court process so as to be sensitive to the child's sense of time and paramount goal of expediting permanency.

**Performance Standard 2: Training and Experience of Child Advocate Attorneys**

Commentary:

Child Advocate Attorney cases should not be taken on without the adequate experience and knowledge necessary to represent the client zealously.

2.1 Before practicing in juvenile court, child advocate attorneys (hereafter "counsel") should be proficient in applicable substantive and procedural Georgia juvenile law and should have appropriate experience, skills and training necessary to represent children.

a. At a minimum counsel should observe at least twenty hours of juvenile court, including every stage of a deprivation proceeding (including termination of parental rights proceedings) when such matters are available, and some observation of delinquency proceedings. Counsel should obtain appropriate formal and informal training in relevant areas of practice.

b. It is highly recommended that counsel work with a mentor before taking a case or have a mentor available to consult on a case.

2.2 Counsel should have a working knowledge of and seek ongoing training in the following areas:

a. pre-dispositional and dispositional services and programs available through the court, DFCS, and community-based social service agencies;

b. facilities available to serve children: on-site visits may be appropriate;

c. child and adolescent development;

d. the juvenile justice system;

2

e.  the child welfare system;
f.  the Department of Juvenile Justice policies and procedures (to the extent that such information is made available by that agency);
g.  the Division of Family and Children's Services policies and procedures (to the extent that such information is made available by that agency);
h.  substance abuse issues;
i.  mental health issues and common childhood diagnoses;
j.  special education laws, rights and remedies;
k.  competency and immaturity laws, issues and defenses;
l.  post dispositional advocacy;
m.  pathways to delinquency;
n.  cultural, racial, gender, and sexual orientation diversity;
o.  interviewing techniques for children;
p.  working with children and building rapport with the child or adolescent client;
q.  school related issues including school disciplinary procedures and zero tolerance policies;
r.  areas of abuse, its effects and treatments.

2.3   Counsel should note that various court practices and procedures may differ.

2.4   Counsel has a continuing obligation to stay abreast of changes and development in the law.

2.5   Before agreeing to act as counselor accepting appointment by a court, counsel has an obligation to make sure that counsel has available sufficient time, resources, knowledge and experience to offer effective representation to a child in a particular matter. If it later appears that counsel is unable to offer effective representation in the case, counsel should move to withdraw.

2.6   When a child advocate attorney's caseload is so large that he or she is unable to satisfactorily meet these performance standards, counsel shall inform the Director of the Child Advocacy Center and then, if necessary, the court or courts before whom counsel's cases are pending. If the Director of the Child Advocacy Center determines that the caseloads for her entire office are so large that an individual child advocate attorney is unable to satisfactorily meet these performance standards, the Director of the Child Advocate Office shall inform the court or courts before whom cases are pending.

## Performance Standard 3: The Role of the Child Advocate Attorney

3.1   Counsel's principal duty is to zealously advocate for the client's best interests. The lawyer's duty is to form a principled position of the child's best interests and advocate for that position. Nevertheless, the

child advocate attorney also has an obligation to inform the court of the child's desires, even when the child's wishes diverge from the attorney's determination of the child's best interests. The determination of a child's best interests must be formed by an explicit analysis of the actual available options.

3.2    In order to effectively advocate for the best interests of the client and to provide suggestions for appropriate dispositional options, counsel should take a holistic approach to juvenile advocacy, evaluating all factors which may have contributed to the existing circumstances.

## Performance Standard 4: Definition of the Client

4.1    The Attorney's client is the child. Counsel's principal duty is to represent the child's best interest.

4.2    Counsel should remember that, even though the client is a child, all attorney client privileges and obligations attach, except with regard to issues of confidentiality that may arise due to the dual role of attorney and Guardian ad Litem described in standards 1 and 3.1. In cases in which such issues may arise, counsel should keep the child client fully informed of the extent to which communications will be kept confidential.

## Performance Standard 5: Counsel's Relationship With Client

5.1    The initial interview and investigation should occur as soon after appointment as possible. In preparation for the interview, counsel should:
   a.    schedule the interview to allow for ample time to speak with the client;
   b.    collect any relevant information to bring.

5.2    At the interview, counsel should, in a developmentally appropriate manner:

   a.    explain to the client the role of counsel. It is important to clarify that counsel represents the legal and best interests of the child;
   b.    explain the allegations against the parents or guardian and possible disposition;
   c.    explain the juvenile court process, timelines and the role of all the parties involved, such as judge, counsel, client and parent;
   d.    obtain signed releases by the client and guardian, where appropriate, for medical and mental health records, school records, social service records, employment records, etc. Counsel should advise the client of the potential use of this information and the privileges that attach to this information;
   e.    counsel should obtain information from the client concerning

4

the facts of the matter, and any other relevant information, except where a forensic specialist is necessary so as not to re-traumatize the child.

f.   one focus of the initial interview and investigation will be to obtain information. Such information should generally include:

    i.   client's residence and length of time at that residence;

    ii.   client's legal custody (parent, relative or other guardian) and physical custody (person responsible to supervise client): names, addresses and phone numbers;

    iii.   health (mental and physical) and employment background;

    iv.   client's school placement, status, attendance and special education designation;

    v.   whether the client or his or her family has had previous contact with the juvenile court system, and/or child welfare system and the nature and status of that contact;

    vi.   possible adults willing to assume responsibility for the child;

    vii.   general circumstances of abuse and neglect, as well as specific information relating to the allegations in the deprivation petition. Such inquiry should be made of the child only so long as it is within the appropriate parameters of interviewing standards as it relates to victim interviews; and

    viii.   to observe the physical and mental well being of client and possible need for intervention.

5.3   The child advocate attorney should maintain a relationship with the child throughout the representation. Irrespective of age, the attorney should meet with the child-client prior to court hearings. The attorney or a designee appropriate in the circumstances in the attorney's reasonable professional judgment, should meet with the child-client when apprised of emergencies or significant events impacting on the child.

## Performance Standard 6: Investigation and Discovery

Child advocate attorneys have a duty to obtain all relevant information to deprivation cases, through formal and informal discovery mechanisms and through an independent investigation.

6.1   Counsel has a duty to conduct a prompt investigation and prompt discovery of each case. Counsel has a duty to continue to conduct an ongoing investigation, and serve new discovery requests as needed, prior to review hearings, termination of parental rights proceedings, non-reunification hearings, or any other hearing involving a child who has previously been adjudicated as deprived.

6.2   When conducting the investigation counsel should:

a.   If not done previously, conduct an in-depth interview of the client as described in Performance Standard Five, *supra*.

b.   Attempt to interview witnesses, favorable or adverse, obtain any relevant history of the witnesses, for example, as appropriate: school personnel, case workers (with the consent of counsel for the agency, if required), biological parents (with the consent of counsel), foster parents, neighbors, relatives, family friends/mentors/coaches/clergy, medical and mental health providers, law enforcement officers, and any other potential witnesses or sources of information.

c.   Examine the police reports and any other records, documents and statements, including the court files as needed.

d.   Counsel should ascertain whether any physical or photographic evidence exists and should make a prompt request to examine such evidence.

e.   Counsel should ascertain whether the assistance of an expert is needed in preparation of the child advocate's case (whether case-in-chief or rebuttal) or to understand or rebut DFCS's or the parents' case.

f.   Counsel should when available and appropriate, obtain and review:

  1.   Records from private foster care agencies or other private agencies providing services to the child or the child's family, including mental health and substance abuse treatment records.
  2.   School records.
  3.   Medical records.

## Performance Standard 7: Preparation for Adjudicatory Hearing

7.1   Counsel should develop a theory of the case.

7.2   Pretrial Motions:

a.   Counsel should review all statements, reports and other evidence to determine whether a motion is appropriate.

b.   Counsel should make oral or written motions as soon as possible due to the time constraints of juvenile court.

c.   Counsel should be aware of the burdens of proof, evidentiary principles and court procedures applying to the motions hearing.

d.   Counsel has the continuing duty to file pretrial motions as issues arise or new evidence is discovered.

7.3   Counsel should be fully informed as to the rules of evidence, court

rules, and the law relating to all stages of the hearing process, and should be familiar with legal and evidentiary issues that can reasonably be anticipated to arise in the adjudicatory hearing.

7.4   Counsel should be familiar with the substantive and procedural law regarding the preservation of legal error for appellate review.

7.5   Counsel should advise the client as to suitable courtroom dress and demeanor and circumstances under which he may be examined by the Court.

## Performance Standard 8: Attorney's Duty at Adjudicatory Hearing

8.1   Counsel should be aware that except for certain circumstances, juvenile proceedings are confidential. (See *O.C.G.A.* §§ 15-11-78 and -79).

8.2   Counsel should use the opening statement as an opportunity to educate the judge as to counsel's theory of the case. Counsel should consider the advantages and disadvantages of the disclosure of information during the opening statement.

8.3   Counsel should make motions and objections, on the record or in writing as necessary and in accordance with local court rules.

8.4   Counsel should participate in the litigation process, including direct examination of witnesses (lay and expert), documentary, and physical evidence. (However, where counsel is not petitioner, presentation need not be cumulative.)

8.5   Counsel should consider whether the child-client should testify, and if so:

>    1.   Be prepared to meet any challenges to the child's competency as a witness.
>
>    2.   Ensure that the child is adequately prepared by, among other things, familiarizing the child with the courtroom and court procedures.
>
>    3.   Request that the court put in place appropriate protections, if necessary, such as excluding non-parties from the courtroom; excluding non-lawyers from the courtroom; or conducting the examination *in camera*.

8.6   Counsel should cross-examine witnesses of other parties, including voir dire regarding documentary or physical evidence and

qualifications of experts.

8.7    Counsel should use the closing argument to summarize the evidence and testimony as it applies to the theory of the case.  Counsel should also make recommendations as to disposition of the case.

8.8    Counsel should review any written order entered on any matter of importance to the child's interests to verify that it matches the court's directive on the record and, when necessary, should take appropriate steps to ensure that the order accurately reflects the court's findings and directives.

## Performance Standard 9: Duty at the Disposition Hearing

Commentary:

The active participation of counsel at disposition is essential. In many cases, counsel's most valuable service to clients will be rendered at this stage of the proceeding. An important part of representation in a deprivation case is planning for disposition.

9.1    Preparation for Hearing:

a. Based on the child advocate attorney's investigation and knowledge of the case and the client's needs, the attorney should prepare a theory of disposition that will best meet the client's needs.  In consultation with the client and collateral contacts, the attorney should formulate a recommendation as to types of placement and service resources necessary to ensure the child's safety, permanency, and well-being.  Counsel should explain to the client the nature of the disposition hearing, the issues involved and the alternatives open to the court.

9.2    During the hearing:

a. Counsel should insist that proper procedure be followed throughout the disposition stage and that orders entered be based on adequate reliable evidence.

b. Counsel should subpoena witnesses and present evidence to support counsel's proposed disposition plan.

c. Counsel should fully cross examine adverse witnesses, and challenge the accuracy, credibility and weight of any reports, written statements or other evidence before the court.

d. Counsel should consider whether the client should make a statement to the court.

e. Counsel should advocate for a comprehensive dispositional order

8

that, at a minimum, includes provisions regarding placement
(including adequate consideration of available relative resources);
services for the child; services for the parents; and a visitation plan
as appropriate.

## Performance Standard 10: Child Advocate Attorney's Continuing Duty to Client

10.1   The child's attorney should ensure that the child understands the
court's order after the hearing is concluded.

10.2   The child's attorney should attempt to resolve any non-compliance
with the court's order as appropriate under the circumstances and the
rules of professional responsibility, and, if necessary, by requesting
court intervention through a motion to compel or for contempt of
court.

10.3   The Child Advocate Attorney continues to represent the child so long
as the Juvenile Court retains jurisdiction in the case.  In periods
between court hearings, if the child advocate attorney becomes aware
that the client or the client's family needs community or other
medical, psychiatric, psychological, social or legal services, he or she
should render all possible assistance in arranging for such services by
advocating with DFCS or by bringing an appropriate request or
motion to the Court.   The Advocate Attorney should review
placement orders granting legal custody to DFCS of any client in the
physical custody of DFCS and upon discovery that an order has
lapsed, take appropriate steps to ensure the continued protection of the
child's interests.

10.4   The child's lawyer should make all reasonable efforts to be aware at
all times of the placement location and contact information for the
client, which should be displayed prominently and be easily accessible
in the file. Whenever there is a move the Child Advocate Attorney
should monitor whether necessary services should continue.  The
child advocate attorney should always advocate that the child be
placed in the most appropriate, least restrictive environment consistent
with the child's needs.  If the child is placed in a placement which the
child advocate attorney deems inappropriate, this should be brought to

the attention of appropriate DFCS officials and, if necessary, the
Juvenile Court.

## Performance Standard 11:   Conflicts of Interest

11.1   At a minimum, child advocate attorneys should decline to represent
children in the following circumstances:

    i.   The attorney, or another attorney in the Child Advocate Office,
represents, or has represented, the Defendant parent or
guardian.

    ii.   Children in a sibling group have conflicting accounts of facts
material to the deprivation or TPR determination.

    iii.   Positions to be taken on behalf of children in a sibling group are
mutually exclusive and conflict in a material way.

11.2   Counsel must be alert to all potential and actual conflicts of interest
that would impair counsel's ability to represent a client. When
appropriate, counsel may be obliged to seek an advisory opinion on
any potential conflicts.

11.3   If a conflict develops during the course of representation, counsel has
a duty to notify the client and the court in accordance with the
Uniform Rules of Court and in accordance with the Disciplinary Rules
of the State Bar of Georgia.

11.4   When a conflict between or among siblings develops after
representation has begun, in general, the attorney should withdraw
from representing all siblings.

## Performance Standard 12:   Child's Right to an Appeal

Commentary:

Appeals from judgments in juvenile court are handled in the same manner as
appeals from superior court.

12.1   Counsel should inform the client, in a developmentally appropriate
manner, of his or her right to an appeal, the steps necessary to appeal

and the likelihood of success.  If after such consultation, the child wishes to appeal the order, and the appeal has merit, the lawyer should take all steps necessary to perfect the appeal and seek appropriate temporary orders or extraordinary writs necessary to protect the interests of the child during the pendency of the appeal.

12.2   The child's attorney should participate in an appeal filed by another party.

12.3   When the appeal decision is received, the child's attorney should explain the outcome of the case to the child.

12.4   Counsel should know the rules of both the Supreme Court and the Court of Appeals concerning the filing of appeals.

## Performance Standard 13:  Special Considerations

13.1   Time Limits:  Counsel should be aware of the time limits applicable in juvenile court and the unique circumstances of a deprivation case. The child advocate attorney should be sensitive to a child's sense of time and endeavor at all stages of a case to expedite the matter and urge the court to do so as well.

13.2   Confidentiality of Proceedings and Records:  Counsel should be aware that, except in certain circumstances, the general public is excluded from all juvenile court proceedings and that juvenile records are not available to the public.

13.3   Immigration Counsel should be aware of the collateral effects of a juvenile court proceeding on the client or client's family's immigration status and consult with an expert if necessary.

13.4   Special Education:  Counsel should be aware of any rights the client may have under special education laws.

13.5   Cessation of representation:  The child's attorney should discuss the end of the legal representation with the child, and determine what contacts, if any, they will continue to have.

**Appendix C**

## DEKALB COUNTY CHILD ADVOCACY CENTER
## POLICIES AND PROCEDURES

### Knowledge and Experience

Child Advocate Attorneys of the DCCAC must demonstrate the following experience and knowledge: A minimum of two (2) years of litigation experience; a strong commitment to children's issues and involvement in the juvenile justice, child welfare systems or related areas preferred; demonstrate a working knowledge of O.C.G.A. chapter 15 section 11, Child Abuse Prevention and Treatment Act of 2003 (CAPTA), and the Adoption Assistance and Child Welfare Act of 1980 as amended by the Adoption and Safe Families Act (ASFA) of 1997.

### Role of Child Advocate Attorney

The Child Advocate Attorney shall represent the best interest of children within DeKalb County, alleged to be abused and/or neglected so long as they are subject to the jurisdiction of the DeKalb County Juvenile Court System with regard to deprivation matters.

### Representation

Advocate-attorneys shall represent the best interest of child-clients in all deprivation hearings as long as child remains under the jurisdiction of the Court. Hearings shall include: 72 hours or Detentional hearings, Adjudicatory hearings, Dispositional hearings, Review hearings, Termination of Parental Rights hearings, 12 month post-TPR review hearings, Non-Reunification hearings, Parental Notification hearings and all other proceedings where the best-interest of the child-client is at issue.

Advocate-attorneys shall actively participate in the litigation process by filing all relevant pleadings, motion papers and responses. The Advocate-attorneys should take all necessary action to ensure the protection of a child alleged to be deprived under the law, including making referrals to the Child Protective Services unit of the Department of Family and Children Services for investigation as well as the filing of Complaints alleging deprivation to bring the matter under the jurisdiction of the Juvenile Court.

Advocate-attorneys shall refer and adhere to the 2005 Juvenile Court Deprivation Process and Procedure Training Manual in the representation of child-clients throughout the deprivation process.

## Training

Child Advocate Attorneys must obtain no less than six (6) hours annually of coursework focused specifically in the area of child advocacy, child welfare and/or deprivation law (related subject-matter). Advocate-attorneys must specifically complete the six (6) hour "Guardian ad Litem Representation in Juvenile Court" course sponsored by the Institute of Continuing Legal Education within one year of employment by the DCCAC. Additionally, Child Advocate Attorneys must participate in monthly DCCAC sponsored interagency child-welfare in-service trainings to increase knowledge of available services and resources. Child advocate attorneys must also be aware of the requirements of the Kenny A. Consent Decree between the Plaintiffs and the State Defendants.

## Attorney-Client Relationship

**Client Contact:**

• Advocate-attorneys shall maintain regular contact with clients, caretaker and providers.

• Child-clients should be seen and interviewed, if of verbal age, no more than 30 days prior to the first setting of all scheduled formal hearings;

• Child advocate attorneys (or investigators or social workers acting as the attorney's agent and under the supervision of the child advocate attorney) should see (and interview, if of a verbal age) their child clients in their living environments at least once per year, whether they are in a foster home, residential placement, or on a trial discharge to their home of origin.

• Child-clients should be seen, interviewed if of a verbal age, and case status updated regularly, but no less than quarterly so long as the child remains in care, and any time there is an emergency or other circumstance when, in the professional discretion of counsel, it is deemed necessary to ensure the safety and well being of the child.

• Advocate-attorneys shall establish and maintain a rapport with child-clients by participating in age and developmentally appropriate communication.

• Advocate-attorneys shall explain to child-clients the status of the case and potential outcomes to ensure that the child-client is well informed; and to allow the child-client to assist in the representation his/her best interest.

• Advocate-attorneys shall explain the role of the guardian-attorney to the child-client.

## Case Management

**Case Assignment:** Cases shall be assigned at the discretion of the DCCAC Director. Generally, staff attorneys will be assigned to represent cases according to courtroom calendars.

### Case Preparation:

**Discovery-** Staff attorneys shall follow the Juvenile Code Rules of Discovery. Exchange of documents may be sought informally through written request or by formal subpoena authorized through the court. Upon request, the advocate-attorney representing the interests of a child subject to an action in deprivation shall have access to the Court file for inspection, copying, or photographing including: a copy of the complaint, the petition, contact information of complaining party, relevant witnesses, transcription of hearings, reports, physical evidence and police and supplemental reports.

### Investigations -

• Investigative Cover Sheets: Immediately following assignment, the advocate-attorney shall prepare an ICS. The purpose of the ICS is to provide direction to the assisting investigative support staff. The ICS shall include a synopsis of the case, status of the case, and assignment of duties including witnesses to be interviewed, purpose of interviews, documents to be secured.

• Contact lawyers for other parties and the CASA on the case (if any) for background information.

• If consented to by their attorney, contact and meet with the biological parents or other persons who are defendants to the deprivation case.

• Interview and subpoena witnesses: All relevant and potential witnesses should be interviewed prior to formal hearings, including persons who have relevant information about the child's safety, permanency, well-being, and needs. If information is found to be relevant to the determination of deprivation, said witnesses should be subpoenaed to testify before the court.

• Subpoena and review all relevant reports & documents including but not limited to: medical records and reports, psychological/psychiatric evaluations, Comprehensive Child and Family Assessments (CCFAs), safety plans, witness statements, police reports, court records regarding prior histories of defendant-parents and families, education records, and records of other public or private social service agencies that have provided services to the family, etc.

• Review photographs, audio/videotapes, and any other physical evidence.

3

- Advocate-attorneys shall conference with investigative support no more than 48 hours prior to related hearing. The purpose of said conference is to determine results of investigations, to clarify and identify remaining issues, provide direction in investigative process. The 48 conference shall not preclude ongoing direction and monitoring of investigative process by advocate-attorneys.

- Advocate-attorneys shall review investigative reports prepared by investigative support and include or incorporate said information into Child Advocate Attorney Investigative Report.

**Witnesses-** Advocate-attorneys shall interview and, when necessary, subpoena all persons possessing information necessary for the determination of deprivation and/or disposition.

**Child Advocate Attorney Investigation Reports:** Advocate-attorneys shall prepare Investigation Reports to be submitted to the Court for consideration during the disposition phase of the case. Supplemental Investigation Reports shall be submitted where additional information is necessary to assist the Court so long as the child remains under the jurisdiction of the Court. The CAA Investigation Report shall contain information regarding the case status, case summary, contact information of relevant parties, medical and psychological information of parents and children, educational, placement, status of related criminal or civil actions, identification of persons interviewed and documents reviewed during case investigation and report preparation, and summary of child-client interviews and attorney-advocate recommendations.

**Case Staffings:** Whenever possible, attorney-advocates shall staff cases with DFCS case managers and the representing SAAG prior to hearings. Attorney-advocates shall regularly staff cases with Director or designee as to case status and strategies.

**Client Representation / Juvenile Court and Deprivation Process and Procedure:**

Advocate-attorneys shall refer to the 2005 Juvenile Court Deprivation Process and Procedure Training Manual in the representation of child-clients in deprivation matters. Advocate-attorneys shall fully participate in the litigation process by filing all necessary pleadings, motions and court papers, subpoena documentary evidence and witnesses, examining witnesses and submitting evidence required to ensure the protection of the child. The Child advocate attorney must consider whether the child-client should testify, and if so, should prepare to meet any competency challenges; ensure that the child is adequately prepared, by among other things, familiarizing the child with the courtroom and court procedures; and request that the court put in place appropriate protections.

Child advocate attorneys should make and/or file oral or written motions or other pleadings necessary to obtain relief.

Child advocate attorneys should review any written order entered on any matter of importance to the child's interests to verify that it matches the court's directive on the record. Any discrepancies should be brought to the court's and parties' attention immediately through motion or informal mechanism, as governed by local practice.

4

**Consent Agreements and Dismissals:** Attorney-advocates shall thoroughly review all relevant materials and independently investigate allegations prior to consenting to any consent agreement.  Attorney-advocates shall not consent to any case dismissal without having interviewed the child-client, if of verbal age; nor without having recommended and reviewed a safety plan consented to by DFCS and the defendant-parent/guardian, sufficient to ensure the protection of the child.

## Case Plans

Advocate-attorneys shall participate in the preparation of case plans prior to their submission to the Court.  Child advocate attorneys should advocate with DFCS to include in the case plans the provision of all services to the child and the child's family necessary to ensure the safety, permanency, and well-being of the child. The advocate-attorney shall ensure that case plans are prepared and submitted to the Court within the requisite time constraints according to the Georgia Code.  If the case plan does not include services that the child advocate attorney deems necessary to ensure the safety, permanency, and well-being of the child-client, the child advocate attorney should advocate with the Juvenile Court for an order directing the inclusion of such services in the case plan.

If an identified service need is not being provided to the child or the child's family, then the child advocate attorney should notify the Court and recommend the Court seek to enforce its order.

Case plans should provide accurate information as to the parties, case status, placement and all relevant facts.  Case plans must also identify reasonable process to adequately address all of the identified needs of the child in care.  Finally the case plan must clearly articulate goals to be addressed by the defendant-parent/guardian to promote reunification and must set out a visitation plan that provides adequate time for parent-child bonding. In the alternative, the case plan must address legal justifiable reasons why reunification goals are not to be pursued.

**Additional Advocacy:** Advocate-Attorneys shall represent and promote the best interest of child-clients, as needed, in non-judicial processes to ensure the protection, proper care and supervision so long as the child remains in care.  These matters may include but are not limited to: Family Team Meetings, permanency reviews, or other staffings; educational administrative and disciplinary proceedings and the securing of individualized educational plans; psychological and therapeutic advocacy; protection of the child-clients interest in the prosecution of defendant-parent/guardians in related acts against the child; medical, disability, health, reproductive rights and resources; substance abuse intervention; promotion of Independent Living resources to ensure that children who age out of the system have adequate support systems.  Should a child-client be arrested, upon request by defense counsel, the Child Advocate attorney will provide relevant information to the child's delinquency or defense attorney to assist in the

5

criminal defense and/or disposition/sentencing so long as the attorney-client privilege or the protection of the child's best interest is not compromised.

**Case Monitoring:** Advocate-attorneys shall continue to monitor assigned cases to ensure the protection of the child's best interest and that the child receives appropriate services, so long as the child-client remains under the jurisdiction of the Juvenile Court.  The child's attorney should attempt to resolve any non-compliance with the court's order as appropriate under the circumstances and the rules of professional responsibility, and, if necessary, by requesting court intervention through a motion to compel or for contempt of court.

**Case File Maintenance:** All relevant documents should be maintained in following categories:

- Complaints and Pleadings

- Orders

- Case Notes: CAA should promptly update case files providing detailed case notes of all hearings, party and witness interaction, attorneys' interaction and case communications.

- Reports: Including home evaluations and assessments; provider progress reports; psychological, psychiatric and medical reports; police initial and supplemental reports; reports and paperwork from related criminal and civil proceedings; GAL/CASA and CAA Investigation Reports.

**Case Reviews** – Advocate Attorneys shall schedule all case reviews as required by the Georgia code, shall review placement orders granting legal custody to DFCS of any client in the physical custody of DFCS, and, upon discovery that an order has lapsed, shall take appropriate steps to ensure the continued protection of the child's interests.

**Other Responsibilities:**

- Serve as DCCAC representative on at least one (1) inter-agency stakeholders committee annually.

- Assist with the continued development of the DCCAC.

- Participate in DCCAC sponsored projects as requested by Director.

- Make at least one (1) outreach presentation annually to promote public information with regard to deprivation and child welfare issues.

## Home Assessments

It is the policy of the DCCAC that this office does not have the resources, training, duty or mandate sufficient to conduct independent home evaluations upon which the Juvenile Court can make determinations for placement of a child outside of a DFCS approved placement. (This refers to placement with relatives, non-relatives, or return to the home). However, if the individual attorney-advocate finds that an assessment of proposed placement is necessary in order to adequately formulate a recommendation on disposition then the attorney-advocate or the investigator, as directed by the attorney-advocate, may conduct a home assessment. However, this office should not submit a recommendation evaluating the appropriateness of a placement, but may only report as to the generally observed circumstances of the household. This policy should be strictly adhered to. Additionally, in these circumstances, the child advocate attorney should urge DFCS to conduct a full evaluation, or should request that the Juvenile Court direct DFCS to do so.

It is the position of the DCCAC that DFCS has the mandate and sufficient resources, including access to state and federal databases regarding financial, resource assistance, criminal and social service histories that are necessary to formulate adequate and complete evaluations of the appropriateness of a non-agency monitored or maintained placement.

The distinction between an assessment and an evaluation is that while the DCCAC can assess what resources or deficiencies that a home has and report that to the court, this office CANNOT evaluate a home for appropriateness of placement, safety, custody transfers or recommendations. Home evaluations should be under the purview of DFCS. One exception, if specifically ordered by the court, home evaluations must be conducted. These exceptions must be staffed with the Director and approved.

## DCCAC Operational Policies

The DCCAC is a department structured under the Chief Executive division of the DeKalb County Government. As such, the administrative, operation and human resources policies and procedures of DeKalb County Government apply. All staff members of the DCCAC are employees of DeKalb County Government and are subject to comply with the policies and procedures of DeKalb County.

## DEPARTMENTAL PROCEDURES AND OPERATIONS
### Client Database Instructions

In order to maintain comprehensive information regarding the CAC caseloads, a database has been created. Each attorney and investigator will be required to input, update and maintain relevant information regarding all cases handled. Please review the following instructions regarding database maintenance.

1. A comprehensive client database (CAC Client Database) will be available for "read-only" access on the shared CA drive. This excel document will be edited and updated monthly by the Sr. Legal Secretary (SLS). The SLS will edit and merge "sub-databases" submitted each month by each attorney- investigator into the CAC Client Database.

2. The "sub-database" forms, available on the shared drive are titled "Nash-Client Database.(Attorney Initials).2004 and "Adams-Client Database.(Attorney Initials).2004". These forms have the same fields as the CAC Client Database. Each attorney and investigator is responsible for inputting information from all cases handled each month. These monthly "sub-databases", are to be emailed to the SLS no later than the second Monday of the following month so that they can be edited and merged into the CAC Client Database.

3. Each "sub-database" form will have tabs labeled by Month and year.

4. Information should be provided beginning August 13, 2004.

COMPLETING CLIENT DATABASE FORMS

a. Attorneys: For new cases input client information for each of the following fields: Client last, first names; file "@"number; Initials of child advocate; Original date of detentional hearing (do not include continuance dates); Original date of TPR hearings.

b. For the "Formal Date and Type" field you will need to create a "Comments" box by going into the "Insert" list on your tool bar and clicking on "Comments". You will then add the initial for the type hearing and date of that hearing in "( )". (ie — CX (9/2).

c. Any additional hearing for a child will be added to the comments section. (ie — CX(9/2); CMOD(10/3); etc.)

Investigators: It is the responsibility of the investigators to input the initials of the investigators that are assigned to each case.

## Procedural steps for Detentional Hearing Preparation

1 — Administrative Coordinator (AO) receives a copy of Intake's "Deprived Detentional Complaint Listing from Judicial Clerks. This is the list of deprivation complaints that Intake has processed within the last 24 hours.

2 — AO will post the copy of the "Deprived Detentional Complaint Listing in the Office Reception Area. This listing should be reviewed by all attorneys and reconciled with the attorney's detentional files received.

3 — The Record Room will provide all necessary paperwork for Detentional Hearings, via DCCAC mailbox.

4— Duty Attorney must check our mailbox and return court documents to DCCAC.

5 — Investigators will be responsible for determining whether there are detentional files needed for the 11:00 addendum calendars. The Investigator will be responsible for securing and providing a copy of the addendum calendar along with accompanying complaints and paperwork to the child advocate. The Investigator will be responsible for creating a temporary file for use during detentional hearing, which will be kept in department's remote office.

6 — After court, please submit all new add-on files to AO for preparation (form insertion, labeling, etc.). AO will return the completed file to the attorney within 24 hours.