EXHIBIT

5

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| KENNY A., by his next friend,<br>Linda Winn, et al., | : | CIVIL ACTION FILE NO.<br>1:02-cv-01686-MHS |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| NATHAN DEAL, et al., | : | |
| | : | |
| Defendants. | : | |

## DECLARATION OF PAUL D. CLEMENT

1.    I am a partner of the law firm Bancroft PLLC, which is based in Washington, DC.  Until April of this year, I was a partner at King & Spalding LLP ("K&S"), based in the firm's Washington, DC office.  While at K&S, I served as the head of its national appellate group.  In addition, I was one of the partners principally responsible for supervision of K&S's work on this case and was the partner responsible for supervision of Bancroft's work on the fees submission in this case.  I make this Declaration in support of the Plaintiffs' Motion for Reimbursement of Attorneys' Fees and Expenses incurred in defending the State's appeal in the United States Supreme Court and in preparing this application.

1

2.    I am a member of the Bars of Virginia, Washington, DC, and Wisconsin; the Bar of the United States Supreme Court; the Bars of the United States Courts of Appeals for the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, D.C., and Federal Circuits; and bars of other courts. I am a *magna cum laude* graduate of the Harvard Law School, where I was the Supreme Court editor of the *Harvard Law Review*. I served as law clerk to Associate Justice Antonin Scalia of the United States Supreme Court and to the Honorable Laurence H. Silberman of the United States Court of Appeals for the District of Columbia Circuit. I served as the 43rd Solicitor General of the United States from June 2005 until June 2008. Since November 2008, I have worked in private practice at the law firms of King & Spalding and Bancroft PLLC.

3.    My law practice is devoted substantially to appellate and Supreme Court litigation. I have argued more than 50 cases before the United States Supreme Court. I have received, among other awards, the Edmund Randolph Award, the U.S. Department of Justice's highest honor. I am one of only five attorneys singled out as star individuals in appellate litigation in the latest edition of Chambers USA. I frequently write and lecture for various continuing legal education programs on topics involving appellate and Supreme Court advocacy.

4.     In my experience leading a national appellate practice at K&S and, more recently, at Bancroft PLLC, I have become familiar with the economics of law practice, billing rates, billing practices, the cost and recovery of litigation support services and other expenses of litigation, and the setting and collection of legal fees in a variety of circumstances. I have derived this knowledge from personal experience negotiating fee agreements with sophisticated consumers of legal services, billing and collecting fees and expenses from clients and/or adverse parties in the legal marketplace, and regularly representing plaintiffs and defendants on an hourly rate basis. I have extensive experience related to billing practices for representation before the United States Supreme Court.

5.     I am familiar with the firm policies, practices, and procedures governing the recording and maintenance of time and expense records at both K&S and Bancroft PLLC. I am also familiar with both firms' standard hourly rates customarily charged for professional services delivered to clients: (a) who hire K&S or Bancroft for a particular case or matter on a purely hourly basis and generally pay their bills within a 30 to 60 day cycle; (b) who shoulder full responsibility for the expenses of their case and relieve K&S or Bancroft of the financial costs and risks associated with carrying case expenses for an indefinite period of time; (c) who agree to pay K&S or Bancroft a fee calculated on an hourly basis without regard to the ultimate result obtained in the case; and (d) for whom neither a premium billing

rate arrangement nor a discounted billing rate arrangement is appropriate or agreed to in advance.

6.     Along with Daryl Joseffer, I personally supervised the work done by the K&S attorneys and other K&S employees in this case.  I have also supervised the limited work done by Bancroft in the fees submission portion of this case.  In assigning attorneys and support staff to work on this case and working in coordination with my co-counsel from Bondurant Mixson & Elmore LLP ("BME") and Children's Rights ("CR"), I have endeavored to keep the number of personnel assigned to this case to the minimum reasonably necessary to efficiently serve the needs of the Plaintiff Class.  Likewise, I have endeavored to make work assignments appropriate to each attorney or paralegal's level of experience and expertise.

7.     Exhibit A to Daryl Joseffer's Declaration (the "Joseffer Declaration") contains summaries of: (a) the total billable hours performed by K&S & Bancroft lawyers on defending against the appeal in this case in the United States Supreme Court and in filing this fee application, priced at each firm's current standard hourly rates [Table 1]; (b) the total hours performed by K&S lawyers that were written off in the exercise of billing judgment [Table 2]; (c) an itemization of the total hours worked by K&S lawyers broken down by substantive category [Table

4

3]; and (d) case expenses advanced by K&S in connection with defending against the State's appeal in the United States Supreme Court [Table 4].

8.    The compilation of itemized time records on which the attorneys' fees portion of Exhibit A to the Joseffer Declaration is based, broken down into substantive categories based on the tasks accomplished, is attached as Exhibit B to the Joseffer Declaration.  A compilation of the K&S time records for hours that have been written off in an exercise of billing judgment, for which K&S seeks no reimbursement, is attached as Exhibit C to the Joseffer Declaration

9.    The hourly rates set forth in Exhibit B to the Joseffer Declaration correctly reflect hourly rates my former law firm, K&S, currently charges and collects from legally sophisticated clients who hire the firm to perform legal services on a Standard Hourly Rate basis.  In my case, it reflects my rate at the time I left the firm  The hourly rates set forth in Exhibit A to this declaration correctly reflect hourly rates Bancroft current charges and collects from legally sophisticated who hire us to perform legal services on a Standard Hourly Rate basis.  The compilations set forth in Exhibit B to this declaration were generated from a database of recorded time entries created in the ordinary course of Bancroft's business by persons with actual knowledge of the events recorded at or about the time of the events recorded, and which have been maintained in the ordinary

5

course of business. I, along with Daryl Joseffer, have reviewed the entries in Exhibits B and C to the Joseffer Declaration and reduced or written off charges in an exercise of billing judgment. These compilations of time and expense records, and the summary of them (attached as Exhibits B, C, and D to the Joseffer Declaration), constitute an accurate and reliable account of the hours reasonably expended and the expenses incurred by K&S and its personnel in this case in connection with the appeal in the United States Supreme Court. In addition, Exhibit B this Declaration constitutes an accurate and reliable account of the hours reasonably expended and the expenses incurred by Bancroft in its limited involvement in this case.

10.    One additional Bancroft attorney Conor B. Dugan, performed services for Plaintiffs. Plaintiffs seek reimbursement in this fee application for his work as well as for mine. Mr. Dugan is Counsel at Bancroft PLLC. He is a *cum laude* graduate of Dartmouth College and received his law degree, *magna cum laude*, from Notre Dame Law School. After law school, Mr. Dugan served as law clerk to the Hon. Samuel A. Alito, Jr., then of the United States Court of Appeals for the Third Circuit. Mr. Dugan then was hired through the Honors Program and served in the Appellate Section of the Civil Rights Division of the Department of Justice for six-and-a-half years prior to joining Bancroft. While in the Civil Rights Division, Mr. Dugan briefed numerous matters in the federal courts of appeals and

6

the Supreme Court of the United States and orally argued a dozen cases. Bancroft PLLC currently bills and collects the hourly rate of $600 for Mr. Dugan's work.

11.   The work required of K&S attorneys to defend against the State's appeal in the United States Supreme Court is detailed in Exhibit B to the Joseffer Declaration. A summary of the necessary work follows.

12.   During the course of the proceedings in the Supreme Court, Plaintiffs' Counsel acted reasonably in furtherance of the interests of the Class in defending the District Court's original fee award. K&S's activities fall into several categories, and the time entries compiled in Exhibit B to the Joseffer Declaration are sorted to reflect these categories:

   a.   ***Work on Merits***. I served as lead counsel before the United States Supreme Court. K&S attorneys participated in preparing the joint appendix; researching the law of attorney fees and enhancements, including Supreme Court and courts of appeals case law, the legislative history of 42 U.S.C. § 1988, and legislative attempts to amend § 1988; drafting respondents' brief on the merits; reviewing and analyzing petitioners' opening and reply briefs; and reviewing and analyzing opposing amicus briefs. It is important to note that Plaintiffs include within this category time spent reading and responding

to *opposing* amicus briefs. Work spent *recruiting* and *supporting* amicus briefs are treated separately below.

b.        ***Supporting Amicus Briefs.*** K&S attorneys also devoted time outside of the four corners of the litigation to find other ways to persuade the Supreme Court to preserve the civil rights enforcement mechanism of 42 U.S.C. § 1988. Daryl Joseffer, Jeff Bucholtz, and I recruited influential national organizations to participate as amici in support of the Plaintiffs' Class. To that end, K&S sought out representatives of NAACP Legal Defense and Education Fund, the Liberty Legal Institute, the American Center for Law and Justice, the Cato Institute, the James Madison Center for Free Speech, the Lawyers' Committee for Civil Rights Under Law, AARP, the American Civil Liberties Union, the Mexican American Legal Defense and Education Fund, Public Citizen, numerous state bar associations, and others to help attract supporting amicus participation in the Supreme Court. Over 30 entities and almost a dozen law and economics scholars filed merits-stage amicus briefs in support of the Plaintiffs' Class. K&S attorneys assisted amici in planning the subject matter of amicus briefing to prevent duplication of argument and to ensure that the Supreme Court received a full and complete presentation of Plaintiffs' position.

8

Amicus support is uniquely important in Supreme Court litigation. The Supreme Court grants certiorari in approximately 80 to 90 merits cases each year, primarily on issues of extreme national importance presenting close questions of law that have resulted in entrenched circuit splits. The Court's decisions determine law and policy for the entire Nation. Most cases set for oral argument attract broad interest from the legal community and many groups, organizations, companies, and other interested parties who file briefs as friends of the Court. The Court routinely cites amicus briefs in its opinions.

Because amicus participation is an integral part of Supreme Court litigation, failure to recruit amici would place a party at a distinct disadvantage and could give the appearance that the legal community disagreed with the party's position. Once amici have been successfully recruited, a coordinated approach becomes critical. Failure to strategize with amici would leave a party vulnerable to having its position diluted or undermined by uncoordinated arguments. Accordingly, it is essential for any party and its counsel to adopt an amicus strategy for Supreme Court litigation and to recruit and collaborate with potential amici. Indeed, State Defendants successfully recruited numerous amici in support of their position. The time spent by K&S attorneys were therefore reasonably

9

necessary to counter State Defendants' efforts to recruit amici and to defend against the State Defendants' appeal.

c.    ***Oral Argument Preparation / Delivery***.  I personally presented oral argument for the plaintiffs/respondents in the Supreme Court.  K&S attorneys assisted me in preparing for the oral arguments and attended the oral argument in the Supreme Court.  K&S attorneys organized and held multiple moot courts in New York City (where CR is located) and Washington, D.C.  Moot courts are an essential and commonly-used means of preparing for Supreme Court arguments.  The Supreme Court held oral argument on October 14, 2009.

d.    ***Seeking Attorneys' Fees***.  K&S and Bancroft attorneys engaged in the tasks necessary to seek attorneys' fees in connection with its work in the Supreme Court of the United States, which included preparing the necessary applications for fees.  On April 21, 2010, the Supreme Court handed down its decision.  *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1677 (2010). On September 2, 2010, the Eleventh Circuit vacated this Court's original fee award and remanded for further proceedings consistent with the Supreme Court's Opinion.  *Kenny A. v. Perdue*, 616 F.3d 1230 (11th Cir. 2010). Plaintiffs timely filed their preliminary motion seeking recovery of their

10

attorneys' fees and expenses incurred in the Supreme Court and a reply brief in support of that motion. On July 19, 2011, this Court granted Plaintiffs' motion and ordered Plaintiffs to supplement their motion with additional briefing and itemization by August 18, 2011. The instant fee request includes work on Plaintiffs' preliminary motion.

The quantity of time devoted to each of the tasks described above and detailed in this fee application was reasonably necessary to the appropriate and zealous representation of the Plaintiff Class in the United States Supreme Court and in applying for fees pursuant to 42 U.S.C. § 1988.

13. K&S's hourly rates reflected in Exhibit A to the Joseffer Declaration and Bancroft PLLC's hourly rates reflected in Exhibit A to this declaration are fair, reasonable, and consistent with hourly rates in the Washington, DC and Supreme Court litigation markets for the price of legal services of comparable quality rendered in cases demanding similar skill, judgment, and performance. Indeed, as noted above, the rates listed in Exhibit A to the Joseffer Declaration and Exhibit A to this declaration are those actually charged to and collected from legally sophisticated clients of the law firms for appellate work performed in the courts of appeals and the Supreme Court. The listed rates are fair, reasonable, and consistent with hourly rates charged in the national market for legal services of

11

comparable quality rendered in cases before the Supreme Court. This is the relevant market for K&S's timekeepers because K&S attorneys worked only on the proceedings before the Supreme Court—not the Eleventh Circuit or the district court proceedings—with only a small number of incidental hours in assisting BME and CR attorneys in preparing the subsequent fee application for that time.

14. As a point of comparison regarding reasonable hourly rates, attached as Exhibit E to the Joseffer Declaration is the *Fulton County Daily Report*'s March 7, 2011, article entitled "Going Rate," which lists the hourly rates numerous DC-area and national practitioners charged in 2010. According to this article, senior attorneys in the Washington, DC market in 2010 charged as much as $925 per hour. Attorneys that practice in the Supreme Court charged amounts commensurate with K&S's rates for the same work. As reflected on the Going Rate database at DailyReportOnline.com, Carter G. Phillips, a Sidley Austin partner who is known for his work in the Supreme Court, reportedly charged $925 per hour in 2009—the same rate K&S charged for my services in 2009. Thus, in comparison, the hourly rates requested by King & Spalding and Bancroft are reasonable and well within the normal market range, especially for attorneys with experience in the Office of the Solicitor General and with Supreme Court and other appellate clerkships. Please see the Declaration of Jeffrey O. Bramlett for additional evidence.

15.    The expenses reflected in Exhibit D to the Joseffer Declaration were actually expended to prosecute this action.  These expenses were reasonable and necessary to protect the interests of the class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of August, 2011.

_____
Paul D. Clement